1   MAYER BROWN LLP
    JOHN NADOLENCO (SBN 181128)
2   jnadolenco@mayerbrown.com
    JOSEPH W. GOODMAN (SBN 230161)
3   jgoodman@mayerbrown.com
    350 South Grand Avenue, 25th Floor
4   Los Angeles, CA  90071-1503
    Telephone:  (213) 229-9500
5   Facsimile:  (213) 625-0248

**FILED**

MAR 1 3 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**FAXED**

6   Attorneys for Defendants
    AT&T MOBILITY LLC; NEW CINGULAR WIRELESS
7   PCS LLC; NEW CINGULAR WIRELESS SERVICES,
    INC.

8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

**MEJ**

11  STEVEN MCARDLE, an individual,               **CV 09     1117**

12  behalf of himself, the general public and    Case No
    those similarly situated,
13                                               California State Court Case
                Plaintiff,                       No. CGC 09-484884
14
         v.                                      **DEFENDANTS' NOTICE OF**
15                                               **REMOVAL OF ACTION**
    AT&T MOBILITY LLC; NEW                       **PURSUANT TO 28 U.S.C. §§ 1332,**
16  CINGULAR WIRELESS PCS LLC;                   **1441 AND 1446**
    NEW CINGULAR WIRELESS
17  SERVICES, INC., AND DOES 1                   **(DIVERSITY JURISDICTION—**
    THROUGH 50,                                  **CLASS ACTION FAIRNESS ACT)**
18
19              Defendants.
20
21
22
23
24
25
26
27
28

                                                 NOTICE OF REMOVAL

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendants AT&T Mobility LLC, New Cingular Wireless PCS LLC, and New Cingular Wireless Services, Inc. (collectively, "ATTM") hereby remove to this Court the state-court action described below.[1]

## STATEMENT OF JURISDICTION

This is a civil action for which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one that may be removed to this Court by ATTM, pursuant to 28 U.S.C. §§ 1441 and 1332(d)(2)(A) for the reasons below.[2]

## BASES FOR DIVERSITY AND REMOVAL

1.   On February 10, 2009, Plaintiff Steven McArdle filed a purported class action in the Superior Court of the State of California for the City and County of San Francisco entitled: STEVEN MCARDLE, an individual, on behalf of himself, the general public and those similarly situated, Plaintiff v. AT&T MOBILITY LLC; NEW CINGULAR WIRELESS PCS LLC; NEW CINGULAR WIRELESS SERVICES, INC., AND DOES 1 THROUGH 50, Defendants; Case Number CGC-09-484884.

2.   ATTM's agent for service of process, Corporation Service Company, ("CSC"), was served with the Summons, Complaint, ADR Packet, Civil Case Cover Sheet, Civil Case Cover Sheet Addendum and Statement of Location, and Notice of Case Assignment on February 11, 2009. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon ATTM are attached to this Notice of Removal as Exhibit A.

---

[1]   New Cingular Wireless Services, Inc. (formerly known as AT&T Wireless Services, Inc.) and New Cingular Wireless PCS, LLC are wholly owned by AT&T Mobility LLC or its wholly-owned subsidiaries. AT&T Mobility LLC is owned by AT&T Inc., which is the only publicly-held corporation with a 10% or more ownership interest in AT&T Mobility LLC.

[2]   ATTM's relationships with its customers are governed by service contracts that contain agreements to arbitrate. ATTM hereby reserves its right to compel Plaintiff to arbitrate his claims in accordance with his arbitration agreement.

1

3.    This Notice has been filed timely pursuant to 28 U.S.C. § 1446(b).

4.    The California Superior Court for the County of San Francisco is located within the Northern District of California. 28 U.S.C. § 84(a). This Notice of Removal is therefore properly filed in this Court pursuant to 28 U.S.C. § 1441(a).

5.    The Court has jurisdiction over this action pursuant to Section 4 of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), which grants district courts original jurisdiction over putative class actions with more than 100 class members where the aggregate amount in controversy exceeds $5 million, and any member of the class of plaintiffs is a citizen of a state different from any defendant. As set forth below, this action satisfies each of the requirements of Section 1332(d)(2) for original jurisdiction under CAFA.

6.    **Covered Class Action**. This action meets CAFA's definition of a class action, which is "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure." 28 U.S.C. §§ 1332(d)(1)(B), 1435(a) & (b). Plaintiff alleges that this action is brought pursuant to the class mechanism in Section 382 of the California Code of Civil Procedure. *See* Complaint ¶ 41.

7.    **Class Action Consisting of More than 100 Members.** The Complaint alleges that the class size is estimated to be "composed of more than 1,000 persons." Complaint ¶ 43.

8.    **Diversity.**   Pursuant to 28 U.S.C. § 1332(d)(2)(A), each Plaintiff is a "citizen of a State different from any defendant." Plaintiff alleges he is a resident of San Francisco, California. Complaint ¶ 3. Defendant New Cingular Wireless Services, Inc. is, and was at the time of the filing of this action, a corporation incorporated under the laws of Delaware with its headquarters and principal place of business in Georgia (Complaint ¶ 6). Moreover, Defendant AT&T Mobility LLC is, and was at the time of the filing of this action, a limited liability company

2

organized and existing under the laws of Delaware with its headquarters and
principal place of business in Georgia (Complaint ¶ 4).  Defendant New Cingular
Wireless PCS, LLC is, and was at the time of the filing of this action, a limited
liability company organized and existing under the laws of Delaware with its
headquarters and principal place of business in Georgia (Complaint ¶ 5).
Accordingly, Plaintiff is a citizen of a state (California) different from a defendant
(Delaware and Georgia (*see* 28 U.S.C. §§ 1332(c), (d)(10)), thus satisfying the
diversity requirements of 28 U.S.C. § 1332(d)(2)(A).

9.    **Amount in Controversy.**  Under CAFA, the claims of the individual
class members are aggregated to determine if the amount in controversy exceeds
the required "sum or value of $5,000,000, exclusive of interest and costs." 28
U.S.C. §§ 1332(d)(2), (d)(6); *see also Lowdermilk v. US Bank Nat'l Ass'n*, 479
F.3d 994, 1004 (9th Cir. 2007).  While ATTM denies the claims alleged in
Plaintiff's Complaint and further denies that Plaintiff, or any putative class
member, is entitled to any monetary or injunctive relief, the amount in controversy
here satisfies the jurisdictional threshold, as explained below.

10.    **Amount in Controversy – Compensatory Damages.**  The
Complaint itself is silent as to the amount of damages sought, but given the size of
the putative class and the monetary relief sought, the amount in controversy
exceeds $5 million, exclusive of interest and costs.  This action is a putative class
action in which Plaintiff McArdle alleges that ATTM "does not . . . adequately
inform its customers that there will be, and its affirmative statements mislead
customers into thinking there will not be, international roaming charges for
incoming calls they do not accept, voicemails they do not retrieve and/or calls they
do not place while they are abroad." Complaint ¶ 24.  Plaintiff further alleges, "No
where . . . did Defendants disclose to their customers the existence or amount of
any additional 'data transfer' fees associated with sending text, video or picture
messages while abroad." Complaint ¶ 31.  Plaintiff defines the putative class as

3

1   "[a]ll California residents who, from February 10, 2005 through the present, paid

2   Defendants for (1) voicemails they did not retrieve, calls they did not answer

3   and/or calls they did not make while traveling abroad or (2) data transfer fees for

4   text, picture or video messages they sent while traveling abroad." Complaint ¶ 41.

5   Based on these underlying allegations, Plaintiff claims that ATTM violated the

6   California False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*), the

7   California Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*), the

8   California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*), and

9   engaged in fraud, deceit and/or misrepresentation. Complaint ¶¶ 50-91. Plaintiff

10   demands compensatory and punitive damages, restitution, injunctive relief, and

11   attorneys' fees and costs. Complaint pp. 20:25-28, 21:1-23.

12       11.    Based on the allegations contained in Plaintiff's complaint, the

13   amount in controversy with respect to compensatory damages *alone* exceeds $5

14   million. The Complaint alleges that membership of the class is estimated to be

15   "composed of more than 1,000 persons." Complaint ¶ 43.

16       12.    Approximately 60% (~5,617,756 as of January 2009) of California

17   postpaid[3] subscribers are enabled for international roaming/dialing. Declaration of

18   Pamela Papner ¶ 5. ATTM is able to estimate conservatively that, between

19   January 1, 2006 and January 31, 2009, the number of California postpaid

20   customers who incurred international roaming charges is over 10 million "unique

21   roamers"—a term of art used by ATTM to count the number of subscribers who

22   incurred international roaming charges in a given month:[4]

---

[3]   "Postpaid" customers have a term service commitment (i.e., one or two year agreement) and pay monthly bills. They are distinguished from "pre-paid" customers, who do not have a term service commitment. Declaration of Pamela Papner ¶ 4.

[4]   ATTM is able to estimate these amounts by compiling national end-of-month totals for "unique roamers." Papner Decl., ¶ 6. A "unique roamer" is a U.S. customer who travels internationally and incurs roaming charges in a particular foreign country in a particular month. *Id.* Once that person is counted as a "unique roamer," he or she will not be counted as a "unique roamer" again during a particular month unless he or she incurs international roaming charges in a different country. *Id.* ATTM is able to determine the ratio (or percentage) of California postpaid customers to national postpaid customers for each month. *Id.* Applying that ratio (or percentage) to the national "unique roamer" numbers yields the estimate of California "unique (cont'd)

4

| Year | Estimated Postpaid California Unique Roamers |
|---|---|
| 2006 | 2,721,922 |
| 2007 | 3,420,093 |
| 2008 | 3,880,469 |
| Jan. 2009 | 322,155 |
| **TOTAL** | 10,344,639 |

Papner Decl., ¶ 5.  Because these numbers do not go back to the start of the putative class period (*i.e.*, February 10, 2005) and do not extend to the end of that period (*i.e.*, "the present"), these numbers likely underestimate the number of California customers who traveled internationally and incurred related roaming charges.

13.    Although Plaintiff does not specify the amount of compensatory damages and restitution that he or each putative class member seeks, Plaintiff alleges that he was overcharged $3.87 for telephone calls he did not answer, voicemail he did not receive and/or calls he did not place.  Complaint ¶ 36.  If the allegedly similarly situated other putative class members incurred similar overcharges, compensatory damages or restitution for this part of the alleged class would be about $40,033,752.90 ($3.87 x 10,344,639).

14.    Plaintiff further alleges that he was overcharged $10.04 in undisclosed data transfer fees.  Complaint ¶ 37.  If the allegedly similarly situated other putative class members incurred similar data-transfer overcharges, compensatory damages or restitution for this part of the alleged class would be about $103,860,176 ($10.04 x 10,344,639).

15.    Indeed, these figures may underestimate the amount in controversy.  For example, according to the Complaint (¶ 39), some putative class members claim to have had $150 in overcharges.  If that figure is used, the amount in

roamers." *Id.*

5

NOTICE OF REMOVAL

1  controversy exceeds $1.5 billion ($150 x 10,344,639). In any event, even if each

2  putative class member paid as little as 48 cents in allegedly improper international

3  roaming charges, there would be over $5 million in controversy, thereby satisfying

4  CAFA.

5      16.    In short, while ATTM contends that neither Plaintiff nor putative class

6  members are entitled to any damages, the amount placed in controversy by

7  Plaintiff's complaint clearly exceeds $5 million.

8      17.    **Amount in Controversy – Punitive Damages.**  Plaintiff also seeks to

9  recover punitive damages. Complaint p. 21:15-16. In assessing the amount in

10 controversy, courts take punitive damages into account. *See Sanchez v. Wal-Mart*

11 *Stores, Inc.*, 2007 WL 1345706, at *2 (E.D. Cal. May 8, 2007) (*citing Gibson v.*

12 *Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001)). Plaintiff's Complaint does not

13 specify an amount of punitive damages. Nonetheless, for purposes of analyzing

14 the amount in controversy, California courts have upheld punitive-damage awards

15 of three- to four-times compensatory damages. *Wysinger v. Auto. Club of S. Cal.*,

16 69 Cal. Rptr. 3d 1, 13-14 (Ct. App. 2007) (punitive award of less than four times

17 compensatory award falls within range of multipliers commonly used to achieve

18 the goals of punitive damages). Again, while it is ATTM's position that no

19 damages, compensatory or punitive, should or will be awarded in this case, for

20 purposes of analyzing the amount in controversy, the Court should consider

21 Plaintiff's claim for punitive damages.

22     18.    **Amount in Controversy – Attorneys' Fees.**  Plaintiff also seeks

23 attorneys' fees under the California Legal Remedies Act and California Code of

24 Civil Procedure § 1021.5. Complaint p. 21:19-21. Thus, the Court should also

25 consider Plaintiff's attorneys' fees request in determining whether the amount in

26 controversy exceeds $5 million. *See Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479

27 F.3d 994, 1000 (9th Cir. 2007) (*citing Gibson*, 261 F.3d at 942-43).

28     19.    In accordance with 28 U.S.C. § 1446(d), ATTM is serving Plaintiff

6

1   with a copy of a Notice to Plaintiff of Filing of Notice of Removal of Action

2   Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  A true and correct copy of that

3   Notice to Plaintiff is attached hereto as Exhibit B and is incorporated by reference.

4         20.     Pursuant to 28 U.S.C. § 1446(d), ATTM is also filing in the Superior

5   Court of California for San Francisco County, and has served the same upon

6   Plaintiff, a Notice to Superior Court of Filing of Removal of Action Pursuant to 28

7   U.S.C. §§ 1332, 1441, and 1446.  A true and correct copy of that Notice to

8   Superior Court is attached hereto as Exhibit C and incorporated by reference.

9         21.     On March 10, 2009, ATTM filed a response to Plaintiff's complaint in

10  state court in accordance with California Code of Civil Procedure § 431.30(d).  A

11  true and correct copy of that response is attached hereto as Exhibit D.

12  Dated: March 12, 2009                          MAYER BROWN LLP
13                                                  JOHN NADOLENCO
                                                    JOSEPH W. GOODMAN
14

15                                                  By: John Nado
16
                                                    Attorneys for Defendants
17                                                  AT&T MOBILITY LLC; NEW
                                                    CINGULAR WIRELESS PCS LLC; and
18                                                  NEW CINGULAR WIRELESS
                                                    SERVICES, INC.
19

20

21

22

23

24

25

26

27

28

7

NOTICE OF REMOVAL