**EXHIBIT A**

02/10/2009          FIRST LEGAL                4156261331

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AT&T MOBILITY LLC; NEW CINGULAR WIRELESS PCS LLC; NEW
CINGULAR WIRELESS SERVICES, INC., AND DOES 1 THROUGH 50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

STEVEN MCARDLE, an individual, on behalf of himself, the general public and
those similarly situated

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*                    CASE NUMBER: **CGC - 09 - 484884**
San Francisco Superior Court, 400 McAllister Street, San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Seth A. Safier, Gutride Safier LLP, 835 Douglass Street, San Francisco, CA 94114

DATE:          GREGORY PARK LE
*(Fecha)* FEB 1 0 2009          Clerk, by _____CHRISTINA E. BAUTISTA_____, Deputy
                                    *(Secretario)*                                    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ]  as an individual defendant.
2. [ ]  as the person sued under the fictitious name of (specify):

3. [✓] on behalf of (specify): AT&T MOBILITY LLC.

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [✓] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other (specify):
4. [ ] by personal delivery on (date):

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.accesslaw.com

02.10/2009          FIRST LEGAL                    4156261331

1  GUTRIDE SAFIER LLP
   ADAM J. GUTRIDE (State Bar No. 181446)
2  SETH A. SAFIER (State Bar No. 197427)
   835 Douglass Street
3  San Francisco, California 94114
   Telephone: (415) 336-6545
4  Facsimile: (415) 449-6469

5
   Attorneys for Plaintiff
6

7            SUPERIOR COURT OF THE STATE OF CALIFORNIA

8            CITY AND COUNTY OF SAN FRANCISCO

9

10 STEVEN MCARDLE, an individual, on behalf of himself,    CASE NO.
   the general public and those similarly situated
11
                                                           UNLIMITED CIVIL CASE
12    Plaintiff,
                                                           CLASS ACTION COMPLAINT
13       v.                                                FOR FALSE ADVERTISING;
                                                           VIOLATION OF THE CALI-
14 AT&T MOBILITY LLC; NEW CINGULAR WIRELESS               FORNIA CONSUMERS LE-
   PCS LLC; NEW CINGULAR WIRELESS SERVICES,               GAL REMEDIES ACT;
15 INC., AND DOES 1 THROUGH 50                            FRAUD, DECEIT AND/OR
                                                           MISREPRESENTATION; AND
16    Defendants                                           UNFAIR BUSINESS PRAC-
                                                           TICES
17

18                                                         JURY TRIAL DEMANDED

19

20

21

22

23

24

25

26

27

28

Class Action Complaint

1   Steven McArdle, by and through his counsel, brings this Class Action Complaint against

2   Defendants, on behalf of himself and those similarly situated, for violations of sections 17200 and

3   17500 *et seq.* of the California Business and Professions Code; violation of the California

4   Consumers Legal Remedies Act; and fraud, deceit and/or misrepresentation. The following

5   allegations are based upon information and belief, including the investigation of Plaintiff's

6   counsel, unless stated otherwise.

7   ## INTRODUCTION

8       1.    This case is about how Defendants unfairly, unlawfully and deceptively charge

9   customers exorbitant, international roaming fees for (1) calls that they do not answer,

10  (2) voicemail they do not check and (3) calls they do not place, while traveling abroad.  Not only

11  do Defendants unfairly, unlawfully and deceptively impose such charges, unlike other mobile

12  phone companies, they affirmatively hide from their customers how they can avoid such charges.

13  Thereby, Defendants effectively force customers into incurring these unfair, unlawful and

14  deceptive fees and charges.

15      2.    Defendants also unfairly, unlawfully and deceptively charge customers additional,

16  undisclosed "data transfer" fees for text, video and pictures messages they send while traveling

17  abroad.

18  ## PARTIES

19      3.    Steven McArdle ("Plaintiff") is, and at all times alleged in this Class Action

20  Complaint was, an individual and a resident of the City of San Francisco in San Francisco

21  County, California.

22      4.    Defendant AT&T Mobility LLC is a limited liability company under the laws of

23  the state of Delaware, having its principal place of business in Atlanta, Georgia.

24      5.    Defendant New Cingular Wireless PCS, LLC is a limited liability company under

25  the laws of the state of Delaware, having its principal place of business in Atlanta, Georgia.

26      6.    Defendant New Cingular Wireless Services, Inc. is a corporation incorporated

27  under the laws of the state of Delaware, having its principal place of business in Atlanta, Georgia.

28      7.    Defendants New Cingular Wireless PCS, LLC and New Cingular Wireless

-1-

1   Services, Inc. are referred to herein as "Cingular" or "Cingular Wireless." In 2006, AT&T

2   purchased Cingular. Shortly thereafter, Cingular was renamed and rebranded as AT&T Wireless.

3   As used herein, "AT&T" refers collectively to AT&T Mobility LLC, its predecessors including

4   Cingular, and the brands Cingular Wireless and AT&T Wireless.

5         8.    The true names and capacities of Defendants sued as Does 1 through 50 inclusive

6   are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names pursuant to

7   section 474 of the California Code of Civil Procedure. Plaintiff will seek leave of Court to amend

8   this Class Action Complaint when said true names and capacities have been ascertained.

9         9.    The Parties identified in paragraphs 4 through 8 of this Class Action Complaint are

10  collectively referred to hereafter as "Defendants" or "AT&T."

11        10.    At all times herein mentioned, each of the Defendants was the agent, servant,

12  representative, officer, director, partner or employee of the other Defendants and, in doing the

13  things herein alleged, was acting within the scope and course of his/her/its authority as such

14  agent, servant, representative, officer, director, partner or employee, and with the permission and

15  consent of each Defendant.

16        11.    At all times herein mentioned, Defendants, and each of them, were members of,

17  and engaged in, a joint venture, partnership and common enterprise, and acting within the course

18  and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

19        12.    At all times herein mentioned, the acts and omissions of Defendants, and each of

20  them, concurred and contributed to the various acts and omissions of each and all of the other

21  Defendants in proximately causing the injuries and damages as herein alleged.

22        13.    At all times herein mentioned, Defendants, and each of them, ratified each and

23  every act or omission complained of herein. At all times herein mentioned, the Defendants, and

24  each of them, aided and abetted the acts and omissions of each and all of the other Defendants in

25  proximately causing the damages, and other injuries, as herein alleged.

26                  **JURISDICTION AND VENUE**

27        14.    This action is brought by Plaintiff pursuant, *inter alia*, to the California Business

28  and Professions Code, section 17200, *et. seq*. Plaintiff and Defendants are "persons" within the

1   meaning of the California Business and Professions Code, section 17201.

2       15.     The injuries, damages and/or harm upon which this action is based, occurred or

3   arose out of activities engaged in by Defendants within, and affecting, the State of California.

4       16.     Defendants have engaged, and continue to engage, in substantial and continuous

5   business practices in the State of California, including in the City and County of San Francisco.

6       17.     Accordingly, Plaintiff alleges that jurisdiction and venue are proper in this Court.

7                         **SUBSTANTIVE ALLEGATIONS**

8   **Defendants Market, Advertise and Sell Nationwide Wireless Phones And Related Services**

9       18.     AT&T is a leading provider of mobile telephone products and services.

10      19.     AT&T represents that all of its rate plans include basic voicemail and visual

11  voicemail at no extra charge.  Customers are not charged for receiving voicemail, for calls they

12  do not answer, or for receiving visual notifications that a call was missed or that a voicemail was

13  left.

14      20.     AT&T markets and advertises the international functionality of its mobile phones

15  and service plans.  For example, AT&T markets and advertises, without limitation, the following:

16      More wireless AT&T phones work in more places around the world than any other U.S.
        carrier — over 200 countries. Stay connected while traveling to over 200 countries, plus
17      get discounted rates in over 85 of those countries when you sign up for AT&T World
        Traveler.

18      Going on a trip outside the U.S.? See if you have coverage based on your device and
19      itinerary.

20      Next time you travel overseas, why not take your AT&T service with you?

21      21.     For customers who wish to use their AT&T-enabled mobile telephones outside the

22  United States, AT&T offers on its website a "Wireless Travel Guide."  By using the Wireless

23  Travel Guide, customers can determine, based on their mobile phone device and itinerary,

24  whether they will have coverage in a certain country and what rates that they will pay (in each

25  country) for telephones calls that they make or receive and for sending text, picture and/or video

26  messages.  For example, the Wireless Travel Guide informs AT&T customers traveling to Italy

27

28

1   that for calls placed and received in Italy they will be charged $1.29 per minute,[1] $.50 per sent

2   text message, and $1.30 per sent picture or video message. The Wireless Travel Guide further

3   informs customers that receiving text messages is free.[2]

4         22.     On its website, AT&T also informs customers that there are additional

5   international roaming charges for data transfer, such as sending/receiving email or surfing the

6   Internet. AT&T warns customers who have data-enabled mobile phones that, if they wish to

7   avoid these charges, they should turn their data roaming feature to "off" so that the phones will

8   not automatically check for emails or retrieve other data.

9         23.     AT&T customers are provided with identical information when they telephone

10  AT&T with questions concerning international use of their phone and/or to activate their phones

11  for international use.

12        24.     AT&T does not, however, adequately inform its customers that there will be, and

13  its affirmative statements mislead customers into thinking there will not be, international roaming

14  charges for incoming calls they do not accept, voicemails they do not retrieve and/or calls they do

15  not place while they are abroad.

16        25.     For example, AT&T trains its representatives that, if customers inquire about

17  international usage, the representatives should inform them that they will incur charges for

18  sending international text messages and for making and receiving calls. AT&T does not train its

19  representatives to state, and the representatives do not state, that customers will incur charges for

20  (1) calls that they do not answer, (2) voicemail they do not check and/or (3) calls they do not

21  place while they are traveling abroad.

22        26.     Similarly, when a customer arrives in a foreign country and turns on their phone,

23  they typically receive from AT&T a text message welcoming them to that country and informing

24  them that will incur charges for international text messages and phone usage. The text messages

25  also typically inform customers to turn off international data roaming. AT&T, however,

26  intentionally omits from the text message the fact that customers will incur charges for (1) calls

27  ---

[1] The $1.29 per minute is the standard international rate in Italy. For customers that purchase the
28  "AT&T World Traveler" plan, the rate for telephone calls is reduced to $.99 per minute.
[2] The international roaming fees and charges vary by country and mobile phone device.

-4-

1   that they do not answer, (2) voicemail they do not check and/or (3) calls they do not place while

2   they are traveling abroad.  AT&T's intentional omissions deceive reasonable customers into

3   believing that they will not incur additional charges for (1) calls that they do not answer, (2)

4   voicemail they do not check and/or (3) calls they do not place while they are traveling abroad.

5        27.    Nor does AT&T adequately inform customers, either on its website, in a text

6   message, or verbally when they call a customer service representative, how they can avoid

7   incurring charges for (1) calls that they do not answer, (2) voicemail they do not check and/or (3)

8   calls they do not place while traveling abroad.  With respect to AT&T's website, the information

9   does not appear in the Wireless Travel Guide nor on numerous other pages dealing with

10  international services and international roaming charges and other fees.  AT&T's intentional

11  failure to provide such information only compounds the deception because other mobile phone

12  carriers provide such information to its customers.

13       28.    The only source of information about these additional charges that will be imposed

14  on international travelers is on a single "Frequently Asked Question" page buried deep in

15  AT&T's website.  To navigate to this page, a customer would have to specifically click on

16  "Frequently Asked Questions" even though he or she has already seen detailed information about

17  international roaming charges and other fees that provides no indication of the additional

18  voicemail and unanswered call related charges.  The Frequently Asked Question states as follows:

19       Q. How am I charged for Voicemail calls while roaming internationally?

20       A. Voicemail calls are charged as follows:

21       When your device is on:

22         * Calls that you do not answer that are routed to the AT&T voicemail system will be
           charged as an international roaming incoming call to your device.

23         * In addition, the foreign carrier's routing of that call to the AT&T voicemail system
24         may generate an outgoing call charge from your device's location to the U.S.

25         * These charges apply even if the caller disconnects from the voice mail system without
           leaving a message.

26       If your device is turned off or in flight mode and the wireless network is off:

27         * When someone tries to call you, the call will go directly to your personal voicemail
28         greeting.

-5-

Class Action Complaint

* Since the network does not try to deliver the call to you in a foreign country, there are no international roaming charges.

When receiving Visual Voicemail messages on your iPhone:

* Visual Voicemail messages received when roaming outside of the U.S. will be charged at International roaming data rates, either at the International pay-per-use data rate or against your iPhone International data package.

29.    AT&T does not require customers to view the Frequently Asked Questions page before using their phones internationally, nor does it make it likely that users will view this page, as it is buried deep on AT&T's website, and customer service representatives are not trained to tell customers who call AT&T to look at this page.  Nor are customer service representatives trained to provide this information.  To the contrary, they are trained not to provide this information unless a customer specifically requests it—i.e., asks if they will be charged for unanswered calls or voicemail that they receive but do not check.

30.    Defendants effectively force customers to incur these additional charges if they wish to use their telephones while traveling abroad.  For example, if a customer wishes to be able to send and receive text messages, there is (often) no way to configure the phone so as to avoid the charges for incoming calls and voicemail notifications, even if the calls are not answered and the voicemails are not checked.  Otherwise put, in order to use other functions that AT&T advertises, and for which they are told how much they will be charged, customers are forced to incur additional inadequately or undisclosed charges and fees.

31.    Finally, even though, as set forth above, Defendants disclose to customers that, while traveling abroad, they will be charged additional amounts for text, video or pictures messages, Defendants, in fact, charge approximately double the disclosed amount.  Specifically, as disclosed, Defendants charge customers for sending text, video and/or picture messages.  However, Defendants charge an additional data transfer fee, presumably for the "data" transfer that was associated with sending the text, video or picture message.  No where, however, did Defendants disclose to their customers the existence or amount of any additional "data transfer" fees associated with sending text, video or picture messages while abroad.

**Plaintiff Was Charged International Roaming Rates for Calls He Did Not Answer, Voicemail He Did Not Check And Calls He Did Not Place.  Plaintiff Was Also Charged**

-6-

1        • Since the network does not try to deliver the call to you in a foreign country, there are no international roaming charges.

2      When receiving Visual Voicemail messages on your iPhone:

3        • Visual Voicemail messages received when roaming outside of the U.S. will be
4     charged at International roaming data rates, either at the International pay-per-use data rate or against your iPhone International data package.

5

6      29.    AT&T does not require customers to view the Frequently Asked Questions page

7 before using their phones internationally, nor does it make it likely that users will view this page,

8 as it is buried deep on AT&T's website, and customer service representatives are not trained to

9 tell customers who call AT&T to look at this page. Nor are customer service representatives

10 trained to provide this information. To the contrary, they are trained not to provide this

11 information unless a customer specifically requests it—i.e., asks if they will be charged for

12 unanswered calls or voicemail that they receive but do not check.

13      30.    Defendants effectively force customers to incur these additional charges if they

14 wish to use their telephones while traveling abroad. For example, if a customer wishes to be able

15 to send and receive text messages, there is (often) no way to configure the phone so as to avoid

16 the charges for incoming calls and voicemail notifications, even if the calls are not answered and

17 the voicemails are not checked. Otherwise put, in order to use other functions that AT&T

18 advertises, and for which they are told how much they will be charged, customers are forced to

19 incur additional inadequately or undisclosed charges and fees.

20      31.    Finally, even though, as set forth above, Defendants disclose to customers that,

21 while traveling abroad, they will be charged additional amounts for text, video or pictures

22 messages, Defendants, in fact, charge approximately double the disclosed amount. Specifically,

23 as disclosed, Defendants charge customers for sending text, video and/or picture messages.

24 However, Defendants charge an additional data transfer fee, presumably for the "data" transfer

25 that was associated with sending the text, video or picture message. No where, however, did

26 Defendants disclose to their customers the existence or amount of any additional "data transfer"

27 fees associated with sending text, video or picture messages while abroad.

28     **Plaintiff Was Charged International Roaming Rates for Calls He Did Not Answer,
Voicemail He Did Not Check And Calls He Did Not Place. Plaintiff Was Also Charged**

## Undisclosed Data Transfer Fees For the Text Messages That He Sent.

32.   Plaintiff has been a mobile telephone customer of AT&T since the summer of 2004.   Plaintiff had an LG mobile (flip) phone until recently when he purchased a BlackBerry Pearl mobile phone.

33.   Between March 20 and March 30, 2008, Plaintiff traveled to Italy.  Prior to departing, Plaintiff looked at Defendants' website to gather information concerning international use of his wireless phone.  Plaintiff noticed on Defendants' website that he would be charged additional amounts to place and receive calls and send text messages.  Plaintiff was not, however, informed that he would be charged for voicemail that he did not check, calls that he did not answer and/or calls that he did not make while traveling abroad.

34.   On or about March 20, 2008, Plaintiff telephoned Defendants' customer service department in order to discuss his need for international text messaging.   At that time, Plaintiff purchased the 100INT'LTEXTMSGS Plan for an additional $9.99 per month.[3]   It was Plaintiff's understanding that without this plan, he could not send text messages while traveling abroad.[4]   Defendants' customer service agent informed Plaintiff that while traveling internationally, he would be charged additional amounts to place and receive calls and send text messages.  The agent did not state, however, that Plaintiff would be charged for voicemail that he did not check, calls that he did not answer and/or calls that he did not make while traveling abroad.

35.   When he arrived in Germany (on a layover), Plaintiff received from AT&T a welcome text message.  That text message informed Plaintiff that he would be charged additional amounts to place and receive calls and send text messages.  Plaintiff was not, however, informed in the text message that he would be charged for voicemail that he did not check, calls that he did not answer and/or calls that he did not make while traveling abroad.  Plaintiff received a similar text message when he arrived in Italy.

36.   Despite the fact that Plaintiff did not place or answer any telephone calls while in

---

[3] The first month was pro-rated—i.e., Plaintiff paid $2.00 for 3/20/08 – 3/25/08.
[4] Defendants' customer service agent may have misinformed Plaintiff about the utility of the 100INT'LTEXTMSGS Plan.  In fact, it may have been $9.99 for Plaintiff to send 100 text messages from the US to an international phone number, a service that Plaintiff did not want or need.

1 Italy, he was still charged a total of $3.87 for telephone calls that he did not answer, voicemail he

2 did not receive and/or calls he did not place.  Had he known he would be charged for the call

3 irrespective of whether or not he answered, he would have kept his phone off or informed friends,

4 family and business associates not to call but rather to text or email.

5      37.    Though Plaintiff was informed that sending text messages from abroad would cost

6 $.50 per text message, Plaintiff was never informed that there would be an additional "data

7 transfer" fee associated with sending text messages.  Nonetheless, Defendants charged Plaintiff

8 $.50 for each text message that he sent while traveling abroad and an additional $10.04 in

9 (undisclosed) "data transfer" fees for sending those text messages.   Plaintiff's mobile phone was

10 not, however, data enabled—i.e., he could not send or receive email on his phone.  Nor could he

11 access the Internet.

12      38.    Plaintiff's experience was not an isolated incident.  Rather, many other customers

13 have been charged for voicemail that they did not check, calls that they did not answer and/or

14 calls they did not place while traveling abroad.

15      39.    For example, one customer posted this statement on an Internet complaint forum:

16      AT&T Roaming Charges.. on VOICEMAIL??

17      AAGH!

18      I need your help/input guys. I went to the caribbean for a week in June and I get a

19      bill for $150 of roaming fees. The problem is, I only made *2* calls. Before I
     went, I specifically asked an AT&T retail employee if I can carry my phone in the

20      caribbean without penalty. I was told specifically that if I turn off my data roaming
     then I will only get charged for the calls that I make. That will be the only over-

21      ages.

22      They are charging me $2.99/minute for every single voicemail call I receive while

23      there. I racked up about $150 in overages!!
     HUH??? :befuddled

24

25      Has anyone else experienced this? I am especially upset because I did my due dili-
     gence and still got screwed. They offered to refund 1/2 the roaming charges as a

26      one time "courtesy"..

27      Uhm... No, they need to remove the whole thing. I am currently awaiting a call
     back from a higher power that for some reason, takes 24-72 hours.

28

1         They must be busy with complaints.

2 http://www.howardforums.com/printthread.php?t=1401697, last visited January 30, 2009.

3       40.    Another customer wrote:

4         Can an ATT employee PLEASE comment on the problems with voicemail while roaming internationally? I just received a statement containing $20 in charges for
5         unsuccessful attempts to leave me voicemail. For every attempt, there's $1.29 for an incoming call, and on the next line $1.29 for forwarding it to a number in the
6         646 area code that turns out to be generic voicemail access.

7

        Had callers known what to do, they could have re-entered my phone number and
8         left me a message, but, unsuprisingly (sic), none of them guessed this. I didn't re-
9         ceive any messages at all for the entire trip. Just charges.

10         In a tiny footnote, the ATTWS website does admit the double roaming charges for voicemail, but nowhere does it disclose the near impossibility that you will ever
11         receive a message. Are there ANY plans to address, or even ackowledge (sic), this issue
12

http://forums.wireless.att.com/cng/board/message?board.id=gsmgprs&thread.id=3395, last visited
13 January 30, 2009.

14                   **CLASS ALLEGATIONS**

15       41.    Plaintiff brings this action against Defendants on behalf of himself and all others
16 similarly situated, as a class action pursuant to section 382 of the California Code of Civil
17 Procedure and section 1781 of the California Civil Code.  Plaintiff seeks to represent a group of
18 similarly situated persons.  The group is defined as follows:

19         All California residents who, from February 10, 2005 through the present,
20         paid Defendants for (1) voicemails they did not retrieve, calls they did not an-
        swer and/or calls they did not make while traveling abroad or (2) data transfer
21         fees for text, picture or video messages they sent while traveling abroad.

22       42.    This action has been brought and may properly be maintained as a class action
23 against the Defendants pursuant to the provisions of California Code of Civil Procedure section
24 382 because there is a well-defined community of interest in the litigation and the proposed class
25 is easily ascertainable.

26       43.    Numerosity: Plaintiff does not know the exact size of the class, but it is estimated
27 that it is composed of more than 1,000 persons.  The persons in the class are so numerous that the
28 joinder of all such persons is impracticable and the disposition of their claims in a class action

-9-

1  rather than in individual actions will benefit the parties and the courts.

2      44.    Common Questions Predominate: This action involves common questions of law

3  and fact to the potential class because each Class Member's claim derives from the deceptive,

4  unlawful and/or unfair statements and omissions that led customers to believe that they would not

5  be charged, and failure to inform customers that they would be charged, for (1) calls that they did

6  not answer, (2) voicemail they did not check and/or (3) calls they did not place while traveling

7  abroad.  Class Member claims also derive from common questions of law and fact related to the

8  undisclosed data transfer fees that Defendants assessed for text, video and picture messages that

9  customers sent while traveling abroad. The common questions of law and fact predominate over

10  individual questions, as proof of a common or single set of facts will establish the right of each

11  member of the Class to recover.  Among the questions of law and fact common to the class are:

12      a)    Whether Defendants unfairly, unlawfully and/or deceptively charged Class

13  Members for (1) calls that they did not answer, (2) voicemail they did not check and/or (3) calls

14  they did not place while traveling abroad;

15      b)    Whether Defendants adequately disclosed to Class Members that they

16  would be charged for (1) calls that they did not answer, (2) voicemail they did not check and/or

17  (3) calls they did not place while they were traveling abroad;

18      c)    Whether Defendants unfairly, unlawfully and/or deceptively led Class

19  Members to believe that they would not be charged for (1) calls that they did not answer, (2)

20  voicemail they did not check and/or (3) calls they did not place while they were traveling abroad;

21      d)    Whether Defendants unfairly, unlawfully and/or deceptively charged Class

22  Members data transfer fees for text, picture and/or video messages that they sent while traveling

23  abroad;

24      e)    Whether Defendants' advertising and marketing regarding their

25  international telephone service and mobile phones was likely to deceive Class Members or was

26  unfair;

27      f)    Whether Defendants engaged in the alleged conduct knowingly, recklessly,

28  or negligently;

g)     The amount of revenues and profits Defendants received and/or the amount of monies or other obligations lost by Class Members as a result of such wrongdoing;

h)     Whether Class Members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

i)     Whether Class Members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

45.     Typicality: Plaintiff's claims are typical of the class because Plaintiff was charged for (1) calls that he did not answer, (2) voicemail he did not check and/or (3) calls he did not place while he was traveling abroad.  Plaintiff was also charged undisclosed data transfer fees for text messages he sent while traveling abroad.  Thus, Plaintiff and Class Members sustained the same injuries and damages arising out of Defendants' conduct in violation of the law.  The injuries and damages of each Class Member were caused directly by Defendants' wrongful conduct in violation of law as alleged.

46.     Adequacy: Plaintiff will fairly and adequately protect the interests of all Class Members because it is in his best interests to prosecute the claims alleged herein to obtain full compensation due to him for the unfair and illegal conduct of which he complains.  Plaintiff also has no interests that are in conflict with or antagonistic to the interests of Class Members. Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and that of the class.  No conflict of interest exists between Plaintiff and Class Members hereby, because all questions of law and fact regarding liability of Defendants are common to Class Members and predominate over any individual issues that may exist, such that by prevailing on his own claim, Plaintiff necessarily will establish Defendants' liability to all Class Members. Plaintiff and his counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class Members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class Members.

47.     Superiority: There is no plain, speedy, or adequate remedy other than by

1  maintenance of this class action.  The prosecution of individual remedies by members of the class

2  will tend to establish inconsistent standards of conduct for the Defendants and result in the

3  impairment of Class Members' rights and the disposition of their interests through actions to

4  which they were not parties.  Class action treatment will permit a large number of similarly

5  situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

6  and without the unnecessary duplication of effort and expense that numerous individual actions

7  world engender.  Furthermore, as the damages suffered by each individual member of the class

8  may be relatively small, the expenses and burden of individual litigation would make it difficult

9  or impossible for individual members of the class to redress the wrongs done to them, while an

10  important public interest will be served by addressing the matter as a class action.

11       48.     Nexus to California.  The State of California has a special interest in regulating the

12  affairs of corporations that do business here and persons who live here.  Defendants have more

13  mobile telephone customers in California than in any other state.  Accordingly, there is a

14  substantial nexus between Defendants' unlawful behavior and California such that the California

15  courts should take cognizance of this action on behalf of a class of individuals who reside in

16  California.

17       49.     Plaintiff is unaware of any difficulties that are likely to be encountered in the

18  management of this action that would preclude its maintenance as a class action.

19                                    **CAUSES OF ACTION**

20                            **PLAINTIFF'S FIRST CAUSE OF ACTION**
                     **(False Advertising, Business and Professions Code § 17500, et seq.)**
21                              **On Behalf Of Himself and the Class**

22       50.     Plaintiff realleges and incorporates by reference the paragraphs of this Class

23  Action Complaint as if set forth herein.

24       51.     Beginning at an exact date unknown to Plaintiff, but within three (3) years

25  preceding the filing of the Class Action Complaint, Defendants have made untrue, false,

26  deceptive and/or misleading statements in connection with the advertising and marketing of their

27  wireless services and mobile phones throughout the State of California, including in the City and

28  County of San Francisco.

52. Defendants have made representations and statements that lead reasonable customers to believe that they will not incur charges when using their phones abroad. Defendants inform customers that, when using their phones in the United States, they will not incur charges for (1) calls that they do not answer, (2) voicemail they do not check and/or (3) calls they do not place. Defendants also inform customers that, while using their phones in the United States, they will not incur data transfer charges for text, video and/or picture messages that they send. Defendants inform customers that, when using their phones abroad, they will incur additional charges for making or receiving calls, sending text messages and sending picture or video messages. Defendants, however, deceptively did (and do) not adequately inform customers that, when traveling abroad, they will incur charges for (1) calls that they do not answer, (2) voicemail they do not check and/or (3) calls they do not place. Defendants also deceptively do not inform customers that, when traveling abroad, they will incur data transfer fees for text, video and/or picture messages that they send.

53. Plaintiff and those similarly situated relied to their detriment on Defendants' false, misleading and deceptive advertising and marketing practices. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, (1) keeping their phones off, (2) forwarding all calls, and/or (3) informing friends, family and business associates not to call them while they were traveling. They would also have sent fewer or no text, video and/or picture messages.

54. Defendants engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendants have engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

55. The aforementioned practices, which Defendants have used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

56. Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from

1 | Plaintiff, the general public, or those similarly situated by means of the false, misleading and

2 | deceptive advertising and marketing practices complained of herein, plus interest thereon.

3 |     57.    Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit

4 | Defendants from continuing to engage in the false, misleading and deceptive advertising and

5 | marketing practices complained of herein. The acts complained of herein occurred, at least in

6 | part, within three (3) years preceding the filing of this Class Action Complaint.

7 |     58.    Plaintiff and those similarly situated are further entitled to and do seek both a

8 | declaration that the above-described practices constitute false, misleading and deceptive

9 | advertising, and injunctive relief restraining Defendants from engaging in any such advertising

10 | and marketing practices in the future. Such misconduct by Defendants, unless and until enjoined

11 | and restrained by order of this Court, will continue to cause injury in fact to the general public

12 | and the loss of money and property in that the Defendants will continue to violate the laws of

13 | California, unless specifically ordered to comply with the same. This expectation of future

14 | violations will require current and future customers to repeatedly and continuously seek legal

15 | redress in order to recover monies paid to Defendants to which Defendants are not entitled.

16 | Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate

17 | remedy at law to ensure future compliance with the California Business and Professions Code

18 | alleged to have been violated herein.

19 |     59.    As a direct and proximate result of such actions, Plaintiff and the other members of

20 | the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property

21 | as a result of such false, deceptive and misleading advertising in an amount which will be proven

22 | at trial, but which is in excess of the jurisdictional minimum of this Court.

23 |     60.    As a direct and proximate result of such actions, Defendants have enjoyed, and

24 | continue to enjoy, significant financial gain in an amount which will be proven at trial, but which

25 | is in excess of the jurisdictional minimum of this Court.

26 | **PLAINTIFF'S SECOND CAUSE OF ACTION**

27 | **(Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)**<br>**On Behalf of Himself and the Class**

28 |     61.    Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint

-14-

Class Action Complaint

1  as if set forth herein.

2        62.    This cause of action is brought pursuant to the California Consumers Legal

3  Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA").

4        63.    Defendants' actions, representations and conduct have violated, and continue to

5  violate the CLRA, because they extend to transactions that are intended to result, or which have

6  resulted, in the sale or lease of goods or services to consumers.

7        64.    Plaintiff and other Class Members are "consumers" as that term is defined by the

8  CLRA in California Civil Code § 1761(d).

9        65.    The provision of mobile telephone services that Plaintiff (and others similarly

10  situated Class Members) purchased from Defendants were "services" within the meaning of

11  California Civil Code § 1761.

12        66.    By engaging in the actions, representations and conduct set forth in this Class

13  Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(5) and

14  § 1770(a)(7) of the CLRA.  In violation of California Civil Code §1770(a)(5), Defendants' acts

15  and practices constitute improper representations that the goods or services that they sell have

16  sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not

17  have.  In violation of California Civil Code §1770(a)(7), Defendants' acts and practices constitute

18  improper representations that the goods or services that they sell are of a particular standard,

19  quality, or grade, or that goods are of a particular style or model, when they were not.

20  Specifically, Defendants acts and practices lead customers to believe that there is no charge,

21  while traveling internationally, for (1) calls that they did not answer, (2) voicemail they did not

22  check and/or (3) calls they did not place, when in fact there are such charges.  Similarly,

23  Defendants acts and practices lead customers to believe that they would only incur a single charge

24  for text, video and/or picture messages that they sent while traveling abroad and that there would

25  be no additional charges for data transfer.

26        67.    Plaintiff requests that this Court enjoin Defendants from continuing to employ the

27  unlawful methods, acts and practices alleged herein pursuant to California Civil Code

28  § 1780(a)(2).  If Defendants are not restrained from engaging in these types of practices in the

1   future, Plaintiff and the other members of the Class will continue to suffer harm.

2       68.   CLRA § 1782 NOTICE. Irrespective of any representations to the contrary in

3   this Class Action Complaint, Plaintiff specifically disclaims, at this time, any request for

4   damages under any provision of the CLRA. Plaintiff, however, hereby provides Defendants

5   with notice and demand that within thirty (30) days from that date, Defendants correct, repair,

6   replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of

7   herein. Defendants' failure to do so will result in Plaintiff amending this Class Action Complaint

8   to seek, pursuant to California Civil Code § 1780(a)(3), on behalf of himself and those similarly

9   situated Class Members, compensatory damages, punitive damages and restitution of any ill-

10  gotten gains due to Defendants' acts and practices.

11      69.   Plaintiff also requests that this Court award him his costs and reasonable attorneys'

12  fees pursuant to California Civil Code § 1780(d).

13              **PLAINTIFF'S THIRD CAUSE OF ACTION**
                     **(Fraud, Deceit and/or Misrepresentation)**
14                    **On Behalf of Himself and The Class**

15      70.   Plaintiff realleges and incorporates by reference the paragraphs of this Class

16  Action Complaint as if set forth herein.

17      71.   On or about March 20, 2008, Defendants fraudulently and deceptively failed to

18  inform Plaintiff that (1) calls that he did not answer, (2) voicemail he did not check and/or (3)

19  calls he did not place while he was abroad would be charged at $1.29 per minute. Defendants

20  also fraudulently and deceptively failed to inform him that he would be charged additional data

21  transfer fees for text, video and/or picture messages that he sent while traveling abroad.

22      72.   These omissions were material at the time they were made. They concerned

23  material facts that were essential to the analysis undertaken by Plaintiff as to whether and how to

24  use his mobile phone while traveling abroad.

25      73.   At the time of his purchase of mobile phone services, activation of international

26  phone services and his arrival abroad, Defendants omitted to inform Plaintiff that (1) calls that he

27  did not answer, (2) voicemail he did not check and/or (3) calls he did not place while he was

28  abroad would be charged at $1.29 per minute. Defendants also failed to inform Plaintiff that he

1 would be charged additional data transfer fees for text, video and/or picture messages that he sent

2 while traveling abroad. Defendants had a fiduciary duty to provide this information.

3      74.      In not so informing Plaintiff, Defendants breached their duty to him. Defendants

4 also gained financially from, and as a result of, their breach.

5      75.      Plaintiff and those similarly situated relied to their detriment on Defendants'

6 fraudulent omissions. Had Plaintiff and those similarly situated been adequately informed and

7 not intentionally deceived by Defendants, they would have acted differently by, without

8 limitation, (1) keeping their phones off, (2) forwarding all calls, and/or (3) informing friends,

9 family and business associates not to call them while they were traveling abroad. They would

10 have also sent fewer (or no) text, video and/or picture messages while they were traveling abroad.

11      76.      Defendants had a fiduciary duty to inform Class Members at the time of their

12 purchase of mobile phone services, activation of international phone services and their arrival

13 abroad, of the additional charges that would be imposed on (1) calls that they did not answer, (2)

14 voicemail they did not check and/or (3) calls they did not place while they were abroad.

15 Defendants omitted to provide this information to Class Members. Class Members relied to their

16 detriment on Defendants' omissions. These omissions were material to the decisions of the Class

17 Members to use their phones while traveling abroad. In making these omissions, Defendants

18 breached their duty to Class Members. Defendants also gained financially from, and as a result

19 of, their breach.

20      77.      Defendants had a fiduciary duty to inform Class Members at the time of their

21 purchase of mobile phone services, activation of international phone services and their arrival

22 abroad, of the additional data transfer charges that would be imposed on text, video and/or picture

23 messages they sent when they were abroad. Defendants omitted to provide this information to

24 Class Members. Class Members relied to their detriment on Defendants' omissions. These

25 omissions were material to the decisions of the Class Members to use their phones while traveling

26 abroad. In making these omissions, Defendants breached their duty to Class Members.

27 Defendants also gained financially from, and as a result of, their breach.

28      78.      By and through such fraud, deceit, misrepresentations and/or omissions,

1   Defendants intended to induce Plaintiff and those similarly situated to alter their position to their

2   detriment. Specifically, Defendants fraudulently and deceptively induced Plaintiff and those

3   similarly situated to, without limitation, to make use or (additional use) of their mobile phones

4   while traveling abroad.

5        79.    Plaintiff and those similarly situated justifiably and reasonably relied on

6   Defendants' omissions, and, accordingly, were damaged by the Defendants.

7        80.    As a direct and proximate result of Defendants' misrepresentations, Plaintiff and

8   those similarly situated have suffered damages in an amount equal to the amount that Defendants

9   billed them for calls that they did not answer, voicemail they did not check, calls they did not

10  place and data transfer fees for text, video and picture messages they sent while they were abroad.

11       81.    Defendants' conduct as described herein was willful and malicious and was

12  designed to maximize Defendants' profits even though Defendants knew that it would cause loss

13  and harm to Plaintiff and those similarly situated.

14                        **PLAINTIFF'S FOURTH CAUSE OF ACTION**

15       **(Unfair, Unlawful and Deceptive Trade Practices, Business and Professions Code § 17200,**
                                        **et seq.)**
                              **On Behalf of Himself and the Class**

16

17       82.    Plaintiff realleges and incorporates by reference tparagraghs of this Class Action

18  Complaint as if set forth herein.

19       83.    Within four (4) years preceding the filing of this Class Action Complaint, and at

20  all times mentioned herein, Defendants have engaged, and continue to engage, in unfair, unlawful

21  and deceptive trade practices in California by engaging in the unfair, deceptive and unlawful

22  business practices outlined in this Class Action Complaint.  In particular, Defendants have

23  engaged, and continue to engage, in unfair, unlawful and deceptive trade practices by without

24  limitation

25          a.  failing to properly inform their customers that they would be charged for (1) calls

26              that they did not answer, (2) voicemail they did not check and/or (3) calls they did

27              not place while traveling abroad;

28          b.  affirmatively deceiving their customers into believing that they would not be

                                           -18-

1    charged for (1) calls that they did not answer, (2) voicemail they did not check

2    and/or (3) calls they did not place while traveling abroad;

3    c.   marketing, advertising and selling international wireless services and mobile

4    phones without disclosing to customers the true costs associated with such

5    international services and phone usage;

6    d.   failing to properly inform their customers how they can use abroad their mobile

7    phones without incurring charges for (1) calls that they did not answer, (2)

8    voicemail they did not check and/or (3) calls they did not place; and

9    e.   assessing undisclosed "data transfer" fees for sending text, picture and/or video

10   messages while traveling abroad.

11   84.   Plaintiff and those similarly situated relied to their detriment on Defendants'

12   unfair, deceptive and unlawful business practices.  Had Plaintiff and those similarly situated been

13   adequately informed and not intentionally deceived by Defendants, they would have acted

14   differently by, without limitation, (1) keeping their phones off, (2) forwarding all calls, and/or (3)

15   informing friends, family and business associates not to call them while they were traveling

16   abroad.  They would have also sent fewer (or not) text, video and picture message while they

17   were traveling abroad.

18   85.   Defendants engage in these unfair practices to increase their profits.  Accordingly,

19   Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200,

20   et seq. of the California Business and Professions Code.

21   86.   The aforementioned practices, which Defendants have used, and continue to use,

22   to their significant financial gain, also constitute unlawful competition and provide an unlawful

23   advantage over Defendants' competitors as well as injury to the general public.

24   87.   Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as

25   necessary and according to proof, to restore any and all monies acquired by Defendants from

26   Plaintiff, the general public, or those similarly situated by means of the unfair and/or deceptive

27   trade practices complained of herein, plus interest thereon.

28   88.   Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit

-19-

1    Defendants from continuing to engage in the unfair trade practices complained of herein. The

2    acts complained of herein occurred, at least in part, within four (4) years preceding the filing of

3    this Class Action Complaint.

4         89.    Plaintiff and those similarly situated are further entitled to and do seek both a

5    declaration that the above-described trade practices are unfair, unlawful and/or fraudulent and

6    injunctive relief restraining Defendants from engaging in any of such deceptive, unfair and/or

7    unlawful trade practices in the future.  Such misconduct by Defendants, unless and until enjoined

8    and restrained by order of this Court, will continue to cause injury in fact to the general public

9    and the loss of money and property in that the Defendants will continue to violate the laws of

10   California, unless specifically ordered to comply with the same.  This expectation of future

11   violations will require current and future customers to repeatedly and continuously seek legal

12   redress in order to recover monies paid to Defendants to which Defendants are not entitled.

13   Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate

14   remedy at law to ensure future compliance with the California Business and Professions Code

15   alleged to have been violated herein.

16        90.    As a direct and proximate result of such actions, Plaintiff and the other members of

17   the Class have suffered and continue to suffer injury in fact and have lost money and/or property

18   as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an

19   amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this

20   Court.

21        91.    As a direct and proximate result of such actions, Defendants have enjoyed, and

22   continue to enjoy, significant financial gain in an amount which will be proven at trial, but which

23   is in excess of the jurisdictional minimum of this Court.

### PRAYER FOR RELIEF

25        WHEREFORE, Plaintiff prays for judgment as follows:

26        A.    On Causes of Action Numbers 1 and 4 against Defendants and in favor of

27             Plaintiff and the other members of the Class:

28                  1. For restitution pursuant to, without limitation, the California Busi-

-20-

ness & Professions Code §§ 17200, et seq. and 17500, et seq;

    2.   For injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq and 17500, et seq; and

B.   On Cause of Action Number 2 against Defendants and in favor of Plaintiff and the other members of the Class:

    1.   For restitution and injunctive relief pursuant to California Civil Code section 1780;

    2   [Reserved]; and

    3   [Reserved]

C.   On Cause of Action Number 3 against Defendants and in favor of Plaintiff and the other members of the Class:

    1.   An award of compensatory damages, the amount of which is to be determined at trial; and

    2.   An award of punitive damages, the amount of which is to be determined at trial; and

D.   On all causes of action against Defendants and in favor of Plaintiff, class members and the general public:

    1.   For reasonable attorneys' fees according to proof pursuant to, without limitation, the California Legal Remedies Act and California Code of Civil Procedure § 1021.5;

    2.   For costs of suit incurred; and

    3.   For such further relief as this Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 10, 2009

**GUTRIDE SAFIER LLP**

-2-

Class Acti-

1

2                      Adam J. Gutride, Esq.

3                      Seth A. Safier, Esq.
835 Douglass Street
San Francisco, California 94114

4

5                      Attorneys for Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-22-

Class Action Complaint

02/09/2009                    FIRST LEGAL                    415626 1331

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Seth A. Safier (SBN 197427)<br>Gutride Safier LLP, 835 Douglass Street<br>San Francisco, CA 94114 | **ENDORSED**<br>**FILED**<br>Superior Court of California<br>County of San Francisco<br><br>FEB 1 0 2009<br><br>GORDON PARK-LI, Clerk<br>BY: CRISTINA BAUTISTA<br>Deputy Clerk |
| TELEPHONE NO.: 415-336-6545    FAX NO.: 415-449-6469 | |
| ATTORNEY FOR *(Name):* Plaintiff, McArdle | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO | |
| STREET ADDRESS: 400 McAllister | |
| MAILING ADDRESS: 400 McAllister | |
| CITY AND ZIP CODE: San Francisco, CA 94102 | |
| BRANCH NAME: San Francisco Superior Court | |

| CASE NAME:<br>McArdle v. AT&T Mobility LLC, et al | |
|---|---|

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CGC- 09-484884<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| Other PI/PD/WD (Personal Injury/Property | [ ] Other collections (09) | [ ] Mass tort (40) |
| Damage/Wrongful Death) Tort | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Product liability (24) | Real Property | [ ] Insurance coverage claims arising from the |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | above listed provisionally complex case |
| [ ] Other PI/PD/WD (23) | condemnation (14) | types (41) |
| Non-PI/PD/WD (Other) Tort | [ ] Wrongful eviction (33) | Enforcement of Judgment |
| [✓] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | Unlawful Detainer | Miscellaneous Civil Complaint |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | Miscellaneous Civil Petition |
| [ ] Professional negligence (25) | Judicial Review | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| Employment | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

**2. This case** [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:

- a. [ ] Large number of separately represented parties
- b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
- c. [ ] Substantial amount of documentary evidence
- d. [ ] Large number of witnesses
- e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
- f. [ ] Substantial postjudgment judicial supervision

**3. Remedies sought** *(check all that apply):* a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive

**4. Number of causes of action** *(specify):* four (4)

**5. This case** [✓] is [ ] is not a class action suit.

**6.** If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 2/10/09

Seth A. Safier
*(TYPE OR PRINT NAME)*                    ► *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov<br>www.accesslaw.com |
|---|---|---|

CASE NUMBER: CGC-09-484884  STEVE MCARDE VS. AT & T MOBILITY et al

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

| | | |
|---|---|---|
| **DATE:** | **JUL-10-2009** | |
| **TIME:** | **9:00AM** | |
| **PLACE:** | **Department 212** | |
| | **400 McAllister Street** | |
| | **San Francisco, CA  94102-3680** | |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order without an appearance at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

## ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL. (SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges

# Alternative Dispute Resolution (ADR) Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package on each defendant along with the complaint. (CRC 3.221(c))



**Superior Court of California
County of San Francisco**

ADR-1  09/08 (ja)

# Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

# Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

1) Judicial Arbitration
2) Mediation
3) The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called judicial arbitration. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties

ADR-1 09/08 (ja)

voluntarily consent to arbitration.  If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision.  In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration.  A case is ordered to arbitration after the Case Management Conference.  An arbitrator is chosen from the Court's Arbitration Panel.  Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference.  Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision.  Any party may request a court trial within 30 days after the arbitrator's award has been filed.

## Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

## MEDIATION

## Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations.  The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case.  The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

## Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

## Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.

## Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco
Superior Court and The Bar Association of San Francisco (BASF) in which
a court approved mediator provides three hours of mediation at no charge
to the parties. It is designed to afford civil litigants the opportunity to
engage in early mediation of a case shortly after filing the complaint, in an
effort to resolve the matter before substantial funds are expended on the
litigation process. Although the goal of the program is to provide the
service at the outset of the litigation, the program may be utilized at
anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by
BASF pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution
form included in this ADR package the parties will be contacted by BASF.
Upon payment of the $250 per party administration fee, parties select a
specific mediator from the list of approved mediation providers or BASF will
help them select an appropriate mediator for the matter. The hourly
mediator fee beyond the first three hours will vary depending on the
mediator selected. Waiver of the administrative fee based on financial
hardship is available.

A copy of the Mediation Services rules can be found on the BASF website
at **www.sfbar.org/mediation** or you may call BASF at 415-982-1600.

### Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of
complex cases by volunteer judges of the San Francisco Superior Court.
Cases considered for the program include construction defect, employment
discrimination, professional malpractice, insurance coverage, toxic torts
and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to
Alternative Dispute Resolution form attached to this packet indicating a joint
request for inclusion in the program. A preference for a specific judge may
be indicated. The court Alternative Dispute Resolution Coordinator will
coordinate assignment of cases that qualify for the program.

## Cost

Generally, the cost of Private Mediation ranges from $100 per hour to $800 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $250 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

If the Court assigns a matter to the ESP, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

### Cost

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

* * * * * * * * * * * * * * * * * * * *

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672

ADR-1  09/08 (ja)



THE BAR ASSOCIATION
OF SAN FRANCISCO

**PROCEDURES, FORMS, MEDIATOR BIOGRAPHIES AND PHOTOGRAPHS:**

# www.sfbar.org/mediation

QUESTIONS?

adr@sfbar.org or 415-982-1600

EXPERIENCED MEDIATORS ARE
AVAILABLE IN THE FOLLOWING AREAS:

- Business
- Civil Rights
- Commercial
- Construction
- Contracts
- Disability
- Discrimination
- Education
- Employment/Workplace
- Environmental
- Family
- Fee Disputes
- Financial
- Gay/Lesbian/Bisexual/Transgender Issues
- Government
- Insurance
- Intellectual Property
- Intra-Organizational
- Labor
- Landlord/Tenant
- Land Use
- Malpractice:
- Legal-Medical-Professional
- Partnership Dissolutions
- Personal Injury
- Probate/Trust
- Products Liability
- Real Estate
- Securities
- Taxation
- Uninsured Motorist
- Women's Issues
- And more...

## What is BASF's Mediation Service?

Mediation is a voluntary, private dispute resolution process in which a trained mediator assists the parties in reaching an outcome that is mutually agreeable.

Mediation Services was established by The Bar Association of San Francisco (BASF) with extensive input from experienced mediators, litigators and judges. This traditional mediation service is an approved alternative to court ordered Arbitration or Early Settlement.

## How Does it Work?

BASF's Mediation Services works quickly, matching a qualified mediator to a case within days. The assignment process is flexible; experienced BASF staff can suggest a mediator, or you can request three biographies to choose from, or request a particular mediator from our Web site.

## How Much Does the Service Cost?

Mediators generously provide one hour of preparation and two hours of session time free of charge as a service to BASF and the community. To qualify for the pro-bono hours, parties must file the Consent to Mediate form with BASF.

Hourly fees beyond those three hours vary depending on the mediator selected. BASF charges a small administrative fee, which pays for the costs of running the program.

## Who Can Use the Service?

The service can be utilized by anyone whether or not the dispute has been filed in a court. If a legal action is already underway, it can be used at any time during the litigation process, and is not limited to San Francisco County litigants.

## Who Are the Mediators?

Experienced mediation professionals are available to assist in most areas of dispute, ranging from multi-party commercial matters to individuals in conflict. Each has been pre-approved pursuant to strict educational and experience requirements. In fact, our mediators average 15 years of mediation experience and 125 hours of formal mediation training.

## More Information

Our Web site - www.sfbar.org/mediation - provides photographs, short biographies and hourly rates of our mediators. You can search by name or by area of law.

If you don't see the area you need in our 30+ panels, just contact us at adr@sfbar.org; it is very likely we can match your need with one of our panelists.

**WWW.SFBAR.ORG/MEDIATION • ADR@SFBAR.ORG • 415.982.1600**



CORPORATION SERVICE COMPANY'

LDD / ALL
Transmittal Number: 6387811
Date Processed: 02/11/2009

# Notice of Service of Process

| | |
|---|---|
| Primary Contact: | Ms. Jan Mendel<br>AT&T Mobility<br>1025 Lenox Park Blvd, NE<br>Atlanta, GA 30319 |
| Copy of transmittal only provided to: | Marie Emerson |
| Entity: | AT&T Mobility LLC<br>Entity ID Number  2019253 |
| Entity Served: | AT&T Mobility LLC |
| Title of Action: | Steven McArdle vs. AT&T Mobility LLC |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Other |
| Court: | San Francisco  Superior Court, California |
| Case Number: | CGC-09-484884 |
| Jurisdiction Served: | California |
| Date Served on CSC: | 02/11/2009 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Plaintiff's Attorney: | Seth A. Safier<br>415-336-6545 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com