1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

Attorneys for Plaintiff

**MAYER BROWN LLP**
John Nadolenco (State Bar No. 181128)
Joseph Goodman (State Bar No. 230161)
350 South Grand Avenue, 25th Floor
Los Angeles, CA  90071-1503
Telephone:     (213) 229-9500
Facsimile:      (213) 625-0248

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNA

| | |
|---|---|
| STEVEN MCARDLE, an individual, on behalf of himself, the general public and those similarly situated<br><br>Plaintiff,<br><br>v.<br><br>AT&T MOBILITY LLC; NEW CINGULAR WIRELESS PCS LLC; NEW CINGULAR WIRELESS SERVICES, INC., AND DOES 1 THROUGH 50<br><br>Defendants | CASE NO.  CV-09-01117 (CW)<br><br>JOINT STIPULATION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT; [PROPOSED] ORDER<br><br>Dept:  Courtroom 2, 4th Floor<br>Judge:  Hon. Claudia Wilken |

Plaintiff Steven McArdle ("Plaintiff") and Defendants AT&T Mobility LLC, New Cingular Wireless PCS LLC, and New Cingular Wireless Services, Inc. ("Defendants") (collectively, the "Parties"), by and through their respective counsel of record, hereby stipulate as follows:

1

WHEREAS:

1.      Plaintiff filed his Complaint in this action on February 10, 2009, in the Superior Court for the State of California, County of Los Angeles.  The Complaint pled, *inter alia*, violations of the California Consumers Legal Remedies Act, Civil Code section 1750, et seq. ("CLRA").

2.      On February 10, 2009, Plaintiff sent to Defendants a letter demanding that Defendants take further action pursuant to the CLRA, Civil Code section 1782.

3.      On March 10, 2009, Defendants answered the Complaint and asserted, as an affirmative defense, that a contract between the parties requires this case to be arbitrated,

4.      On March 13, 2009, Defendants removed this case to this Court.

5.      On March 24, 2009, Plaintiff sent to Defendants a further letter demanding that Defendants take further action pursuant to the CLRA, Civil Code section 1782.

6.      On May 5, 2009, Plaintiff provided Defendants with a copy of his proposed First Amended Complaint.  A copy of that proposed First Amended Complaint is attached as Exhibit A, and a redline comparing it to the Complaint is attached as Exhibit B.

7.      The First Amended Complaint adds allegations under the CLRA, including an allegation that the arbitration provision is unconscionable and a request for damages..

8.      California Civil Code section 1782(d) provides in pertinent part:

> Not less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a) [requiring written notice to the defendant], the consumer may amend his or her complaint without leave of court to include a request for damages.

NOW, THEREFORE, THE PARTIES JOINTLY STIPULATE AS FOLLOWS:

(1)     Plaintiff should be granted leave to file the First Amended Complaint attached hereto as Exhibit A.

(2)     Upon entry of an order approving this stipulation, the First Amended Complaint attached hereto as Exhibit A shall be deemed filed and served.

(3)     Defendants shall retain any and all rights to move to dismiss, move to strike, answer, or otherwise respond to the First Amended Complaint within the period

2

1    provided by law.

2    Dated: May 22, 2009                    **GUTRIDE SAFIER LLP**

3

4

5                                           Adam J. Gutride, Esq.
                                            Seth A. Safier, Esq.
6                                           835 Douglass Street
                                            San Francisco, California 94114
7                                           Attorneys for Plaintiff

8

9    Dated:  May 20, 2009                   **MAYER BROWN LLP**

10

11                                          John Nadoleno, Esq.
                                            Joseph Goodman, Esq.
12                                          350 South Grand Avenue, 25th Floor
                                            Los Angeles, CA  90071-1503
13                                          Telephone:    (213) 229-9500
                                            Facsimile:    (213) 625-0248
14                                          Attorneys for Defendants

15   **IT IS SO ORDERED.**

16   Dated: _____ May 29, _____ 2009

17                                          The Honorable Claudia Wilken
                                            United States District

18

19                                          IT IS SO ORDERED

20                                          Claudia Wilken

21                                          Judge Claudia Wilken

22

23

24

25

26

27

28

JOINT STIPULATION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT - CASE NO. CV-09-01117 (CW)

# EXHIBIT A

**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

Attorneys for Plaintiff

SUPERIOR COURT OF THE STATE OF CALIFORNIA

CITY AND COUNTY OF SAN FRANCISCO

| | |
|---|---|
| STEVEN MCARDLE, an individual, on behalf of himself, the general public and those similarly situated | CASE NO.  CV-09-01117 (CW) |
| Plaintiff, | FIRST AMENDED CLASS ACTION COMPLAINT FOR FALSE ADVERTISING; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; FRAUD, DECEIT AND/OR MISREPRESENTATION; AND UNFAIR BUSINESS PRACTICES |
| v. | |
| AT&T MOBILITY LLC; NEW CINGULAR WIRELESS PCS LLC; NEW CINGULAR WIRELESS SERVICES, INC. | |
| Defendants | |
| | JURY TRIAL DEMANDED |

Steven McArdle, by and through his counsel, brings this First Amended Class Action Complaint ("Class Action Complaint") against Defendants, on behalf of himself and those similarly situated, for violations of sections 17200 and 17500 *et seq.* of the California Business and Professions Code, violation of the California Consumers Legal Remedies Act; and fraud, deceit and/or misrepresentation. The following allegations are based upon information and belief, including the investigation of Plaintiff's counsel, unless stated otherwise.

## INTRODUCTION

1.      This case is about how Defendants unfairly, unlawfully, and deceptively charge customers exorbitant, international roaming fees for (1) calls that they did not answer, (2) voicemail they did not check and/or (3) calls they did not place, while they were traveling abroad.   Not only did Defendants unfairly, unlawfully, and deceptively impose such charges, unlike other mobile phone companies, they affirmatively hid from their customers how they could avoid such charges.  Thereby, Defendants effectively forced customers into incurring these undisclosed fees and charges.

2.      Defendants also unfairly, unlawfully, and deceptively charge customers additional, undisclosed "data transfer" fees for text, video and pictures messages they send while traveling abroad.

## PARTIES

3.      Steven McArdle ("Plaintiff") is, and at all times alleged in this Class Action Complaint was, an individual and a resident of the City of San Francisco in San Francisco County, California.

4.      Defendant AT&T Mobility LLC is a limited liability company under the laws of the state of Delaware, having its principal place of business in Atlanta, Georgia.

5.      Defendant New Cingular Wireless PCS, LLC is a limited liability company under the laws of the state of Delaware, having its principal place of business in Atlanta, Georgia.

6.      Defendant New Cingular Wireless Services, Inc. is a corporation incorporated under the laws of the state of Delaware, having its principal place of business in Atlanta, Georgia.

7.      Defendants New Cingular Wireless PCS, LLC and New Cingular Wireless

First Amended Class Action Complaint

Services, Inc. are referred to herein as "Cingular" or "Cingular Wireless."  In 2006, AT&T purchased Cingular.  Shortly thereafter, Cingular was renamed and rebranded as AT&T Wireless. As used herein, "AT&T" refers collectively to AT&T Mobility LLC, its predecessors including Cingular, and the brands Cingular Wireless and AT&T Wireless.

8.     The true names and capacities of Defendants sued as Does 1 through 50 inclusive are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names pursuant to section 474 of the California Code of Civil Procedure.  Plaintiff will seek leave of Court to amend this Class Action Complaint when said true names and capacities have been ascertained.

9.     The Parties identified in paragraphs 4 through 8 of this Class Action Complaint are collectively referred to hereafter as "Defendants."

10.     At all times herein mentioned, each of the Defendants was the agent, servant, representative, officer, director, partner or employee of the other Defendants and, in doing the things herein alleged, was acting within the scope and course of his/her/its authority as such agent, servant, representative, officer, director, partner or employee, and with the permission and consent of each Defendant.

11.     At all times herein mentioned, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

12.     At all times herein mentioned, the acts and omissions of Defendants, and each of them, concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

13.     At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages, and other injuries, as herein alleged.

## JURISDICTION AND VENUE

14.     This action is brought by Plaintiff pursuant, *inter alia*, to the California Business and Professions Code, Sections 17200 *et. seq.*  Plaintiff and Defendants are "persons" within the

meaning of the California Business and Professions Code, Sections 17201.

15.     The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendants within, and affecting, the State of California.

16.     Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California, including in the City and Count of San Francisco.

17.     Accordingly, Plaintiff alleges that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

**Defendants Market, Advertise and Sell Nationwide Wireless Phones And Related Services**

18.     AT&T is a leading provider of mobile telephone products and services.

19.     AT&T represents that all of their rate plans include basic voicemail and visual voicemail at no extra charge.  Customers are not charged for receiving voicemail, for calls they do not answer, or for receiving visual notifications that a call was missed or that a voicemail was left.

20.     AT&T markets and advertises the international functionality of their mobile phones and service plans.  For example, AT&T markets and advertises, without limitation, the following:

> More wireless AT&T phones work in more places around the world than any other U.S. carrier — over 200 countries. Stay connected while traveling to over 200 countries, plus get discounted rates in over 85 of those countries when you sign up for AT&T World Traveler.

> Going on a trip outside the U.S.? See if you have coverage based on your device and itinerary.

> Next time you travel overseas, why not take your AT&T service with you?

21.     For customers who wish to use their AT&T-enabled mobile telephones outside the United States, AT&T offers on its website a "Wireless Travel Guide."   By using the Wireless Travel Guide, customers can determine, based on their mobile phone device and itinerary, whether they will have coverage in a certain country and what rates that they will pay (in each country) for telephones calls that they make or receive and for sending text, picture and/or video messages.  For example, the Wireless Travel Guide informs AT&T customers traveling to Italy

1  that for calls placed and received in Italy they will be charged $1.29 per minute,[1] $.50 per sent

2  text message, and $1.30 per sent picture or video message.  The guide further informs customers

3  that receiving text messages is free.[2]

4      22.     On its website, AT&T also informs customers that there are additional

5  international roaming charges for data transfer, such as sending/receiving email or surfing the

6  Internet.  AT&T warns customers who have data-enabled mobile phones that, if they wish to

7  avoid these charges, they should turn their data roaming feature to "off" so that the phones will

8  not automatically check for emails or retrieve other data.

9      23.     AT&T customers are provided with identical information when they telephone

10  AT&T with questions concerning international use of their phone and/or to activate their phones

11  for international use.

12      24.     AT&T does not, however, adequately inform its customers that there will be, and

13  its affirmative statements mislead customers into thinking there will not be, international roaming

14  charges for incoming calls they do not accept, voicemails they do not retrieve and/or calls they do

15  not place while they are abroad.

16      25.     For example, AT&T trains its representatives that, if customers inquire about

17  international usage, the representatives should inform them that they will incur charges for

18  sending international text messages and for making and receiving calls.  AT&T does not train its

19  representatives to state, and the representatives do not state, that customers will incur charges for

20  (1) calls that they do not answer, (2) voicemail they do not check and/or (3) calls they do not

21  place while they are traveling abroad.

22      26.     Similarly, when a customer arrives in a foreign country and turns on their phone,

23  they typically receive from AT&T a text message welcoming them to that country and informing

24  them that will incur charges for international text messages and phone usage.  The text messages

25  also typically inform customers to turn off international data roaming.  AT&T, however,

26  intentionally omits from the text message the fact that customers will incur charges for (1) calls

27

28

---

[1] The $1.29 per minute is the standard international rate in Italy.  For customers that purchase the "AT&T World Traveler" plan, the rate for telephone calls is reduced to $.99 per minute.

[2] The international roaming fees and charges vary by country and mobile phone device.

that they do not answer, (2) voicemail they do not check and (3) calls they do not place while they are traveling abroad.  AT&T's intentional omissions deceive reasonable customers into believing that they will not incur additional charges for (1) calls that they do not answer, (2) voicemail they do not check and/or (3) calls they do not place while they were traveling abroad.

27.     Nor does AT&T adequately inform customers, either on their website, in a text message, or verbally when they call a customer service representative, how they can avoid incurring charges (1) calls that they do not answer, (2) voicemail they do not check and/or (3) calls they do not place while traveling abroad.  With respect to AT&T's website, the information does not appear in the Wireless Travel Guide nor on numerous other pages dealing with international services and international roaming charges and other fees.  AT&T's intentional failure to provide such information only compounds the deception because other mobile phone carriers provide such information to their customers.

28.     The only source of information about these additional charges that will be imposed on international travelers is on a single "Frequently Asked Question" page buried deep in AT&T's website.  To navigate to this page, a customer would have to specifically click on "Frequently Asked Questions" even though he or she has already seen detailed information about international roaming charges and other fees that provides no indication of the additional voicemail and unanswered call related charges.  One of the Frequently Asked Questions states as follows:

Q. How am I charged for Voicemail calls while roaming internationally?

A. Voicemail calls are charged as follows:

When your device is on:

   * Calls that you do not answer that are routed to the AT&T voicemail system will be charged as an international roaming incoming call to your device.

   * In addition, the foreign carrier's routing of that call to the AT&T voicemail system may generate an outgoing call charge from your device's location to the U.S.

   * These charges apply even if the caller disconnects from the voice mail system without leaving a message.

If your device is turned off or in flight mode and the wireless network is off:

   * When someone tries to call you, the call will go directly to your personal voicemail

-5-

greeting.

* Since the network does not try to deliver the call to you in a foreign country, there are no international roaming charges.

When receiving Visual Voicemail messages on your iPhone:

* Visual Voicemail messages received when roaming outside of the U.S. will be charged at International roaming data rates, either at the International pay-per-use data rate or against your iPhone International data package.

29.     AT&T does not require customers to view the Frequently Asked Questions page before using their phones internationally, nor does it make it likely that users will view this page, as it is buried deep on AT&T's website, and customer service representatives are not trained to tell customers who call AT&T to look at this page.   Nor are customer service representatives trained to provide this information.  To the contrary, they are trained not to provide this information unless a customer specifically requests it—i.e., asks if they will be charged for unanswered calls, voicemail that they receive but do not check or, even, when people disconnect from voicemail without leaving a message.

30.     Defendants force customers to incur these additional charges if they wish to use their telephones while traveling abroad.  For example, if a customer wishes to be able to send and receive text messages, there is no way to configure the phone so as to avoid the charges for incoming calls and voicemail notifications, even if the calls are not answered and the voicemails are not checked.  Otherwise put, in order to use other functions that AT&T advertises, and for which they are told how much they will be charged, customers are forced to incur additional inadequately or undisclosed charges and fees.

31.     Finally, even though, as set forth above, Defendants disclose to customers that they will be charged additional amounts for text, video or pictures messages—e.g., $.50 per text message—while traveling abroad, Defendants charged approximately double the disclosed amount.  Specifically, as disclosed, Defendants charged customers for sending the text, video or picture message.  However, Defendants charged an additional data transfer fee, presumably for the "data" transfer that was associated with sending the text, video or picture message.  No where, however, did Defendants disclose to their customers the existence or amount of any additional

1  "data transfer" fees associated with sending the text, video or picture messages while abroad.

2  **Plaintiff Was Charged International Roaming Rates for Calls He Did Not Answer,
3  Voicemail He Did Not Check And Calls He Did Not Place.  Plaintiff Was Also Charged
   Undisclosed Data Transfer Fees For the Text Messages That He Sent.**

4       32.     Plaintiff has been a mobile telephone customer of AT&T since the summer of

5  2004.   Plaintiff had an LG mobile (flip) phone until recently when he purchased a BlackBerry

6  Pearl mobile phone.

7       33.     Between March 20 and March 30, 2008, Plaintiff traveled to Italy.  Prior to

8  departing, Plaintiff looked at Defendants' website to gather information concerning international

9  use of his wireless phone.  Plaintiff noticed on Defendants' website that he would be charged

10 additional amounts to place and receive calls and send text messages.  Plaintiff was not, however,

11 informed that he would be charged for voicemail that he did not check, calls that he did not

12 answer and/or calls that he did not make while traveling abroad.

13      34.     On or about March 20, 2008, Plaintiff telephoned Defendants' customer service

14 department in order to discuss his need for international text messaging.   At that time, Plaintiff

15 purchased the 100INT'LTEXTMSGS Plan for an additional $9.99 per month.[3]   It was Plaintiff's

16 understanding that without this plan, he could not send text messages while traveling abroad.[4]

17 Defendants' customer service agent informed Plaintiff that while traveling internationally, he

18 would be charged additional amounts to place and receive calls and send text messages.  The

19 agent did not state, however, that Plaintiff would be charged for voicemail that he did not check,

20 calls that he did not answer and/or calls that he did not make while traveling abroad.

21      35.     When he arrived in Germany (on a layover), Plaintiff received from AT&T a

22 welcome text message.  That text message informed Plaintiff that he would be charged additional

23 amounts to place and receive calls and send text messages.  Plaintiff was not, however, informed

24 in the text message that he would be charged for voicemail that he did not check, calls that he did

25 not answer and/or calls that he did not make while traveling abroad.  Plaintiff received a similar

26

27 _____
   [3] The first month was pro-rated—i.e., Plaintiff paid $2.00 for 3/20/08 – 3/25/08.
   [4] Defendants' customer service agent may have misinformed Plaintiff about the utility of the
28 100INT'LTEXTMSGS Plan.  In fact, it may have been $9.99 for Plaintiff to send 100 text mes-
   sages from the US to an international phone number, a service that Plaintiff did not want or need.

1   text message when he arrived in Italy.

2       36.     Despite the fact that Plaintiff did not place or answer any telephone calls while in

3   Italy, he was still charged a total of $3.87 for telephone calls that he did not answer, voicemail he

4   did not receive and/or calls he did not place.   Had he known he would be charged for the call

5   irrespective of whether or not he answered, he would have kept his phone off or informed friends,

6   family and business associates not to call but rather to text or email.

7       37.     Though Plaintiff was informed that sending text messages from abroad would cost

8   $.50 per text message, Plaintiff was never informed that there would be an additional "data

9   transfer" fee associated with sending text messages.   Nonetheless, Defendants charged Plaintiff

10  $.50 for each text message that he sent while traveling abroad and an additional (undisclosed)

11  $10.04 "data transfer fee" for sending those text messages.    Plaintiff's mobile phone was not,

12  however, data enabled—i.e., he could not send or receive email on his phone.  Nor could he

13  access the Internet.

14      38.     Plaintiff's experience was not an isolated incident.  Rather, many other customers

15  have been charged for voicemail that they did not check, calls that they did not answer and calls

16  they did not place while traveling abroad.

17      39.     For example, one customer posted this statement on an Internet complaint forum:

18          AT&T Roaming Charges.. on VOICEMAIL??

19          AAGH!

20          I need your help/input guys. I went to the caribbean for a week in June and I get a
21          bill for $150 of roaming fees. The problem is, I only made *2* calls. Before I
            went, I specifically asked an AT&T retail employee if I can carry my phone in the
22          caribbean without penalty. I was told specifically that if I turn off my data roaming
            then I will only get charged for the calls that I make. That will be the only over-
23          ages.

24
            They are charging me $2.99/minute for every single voicemail call I receive while
25          there. I racked up about $150 in overages!!
            HUH??? :befuddled
26
            Has anyone else experienced this? I am especially upset because I did my due dili-
27          gence and still got screwed. They offered to refund 1/2 the roaming charges as a
            one time "courtesy"..
28

Uhm... No, they need to remove the whole thing. I am currently awaiting a call back from a higher power that for some reason, takes 24-72 hours.

They must be busy with complaints.

http://www.howardforums.com/printthread.php?t=1401697, last visited January 30, 2009.

40.     Another customer wrote:

Can an ATT employee PLEASE comment on the problems with voicemail while roaming internationally? I just received a statement containing $20 in charges for unsuccessful attempts to leave me voicemail. For every attempt, there's $1.29 for an incoming call, and on the next line $1.29 for forwarding it to a number in the 646 area code that turns out to be generic voicemail access.

Had callers known what to do, they could have re-entered my phone number and left me a message, but, unsurprisingly (sic), none of them guessed this. I didn't re-ceive any messages at all for the entire trip. Just charges.

In a tiny footnote, the ATTWS website does admit the double roaming charges for voicemail, but nowhere does it disclose the near impossibility that you will ever receive a message. Are there ANY plans to address, or even ackowledge (sic), this issue

http://forums.wireless.att.com/cng/board/message?board.id=gsmgprs&thread.id=3395, last visited January 30, 2009.

## **CLASS ALLEGATIONS**

41.     Plaintiff brings this action against Defendants on behalf of himself and all others similarly situated, as a class action pursuant to section 382 of the California Code of Civil Procedure and section 1781 of the California Civil Code.  Plaintiff seeks to represent a group of similarly situated persons.  The group is defined as follows:

All California residents who, from February 6, 2005 through the present, paid Defendants for (1) voicemails they did not retrieve, calls they did not answer and/or calls they did not make while traveling abroad or (2) "data transfer" fees for text, picture or video messages they sent while traveling abroad.

42.     This action has been brought and may properly be maintained as a class action against the Defendants pursuant to the provisions of California Code of Civil Procedure section 382 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

43.     Numerosity: Plaintiff does not know the exact size of the class, but it is estimated

that it is composed of more than 1,000 persons.  The persons in the class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

44.    Common Questions Predominate: This action involves common questions of law and fact to the potential class because each Class Member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led customers to believe that they would not be charged, and failed to inform customers that they would be charged, for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place while traveling abroad.  Class Member claims also derive from common questions of law and fact related to the undisclosed data transfer fees that Defendants assessed for text, video and picture messages that customers placed while traveling abroad. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover.  Among the questions of law and fact common to the class are:

a)    Whether Defendants unfairly, unlawfully and/or deceptively charged Class Members for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place while traveling abroad;

b)    Whether Defendants adequately disclosed to Class Members that they would be charged for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place while they were traveling abroad;

c)    Whether Defendants unfairly, unlawfully and/or deceptively led Class Members to believe that they would not be charged for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place while they were traveling abroad;

d)    Whether Defendants unfairly, unlawfully and/or deceptively charged Class Members data transfer fees for text, picture and/or video messages that they sent while they were traveling abroad;

e)    Whether Defendants' advertising and marketing regarding their international telephone service and mobile phones was likely to deceive Class Members or was

unfair;

f)     Whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

g)     The amount of revenues and profits Defendants received and/or the amount of monies or other obligations lost by Class Members as a result of such wrongdoing;

h)     Whether Class Members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

i)     Whether Class Members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

45.     Typicality: Plaintiff's claims are typical of the class because Plaintiff was charged for (1) calls that he did not answer, (2) voicemail he did not check and/or (3) calls he did not place while he was traveling abroad.  Plaintiff was also charged undisclosed data transfer fees for text messages he sent while traveling abroad.  Thus, Plaintiff and Class Members sustained the same injuries and damages arising out of Defendants' conduct in violation of the law.  The injuries and damages of each Class Member were caused directly by Defendants' wrongful conduct in violation of law as alleged.

46.     Adequacy: Plaintiff will fairly and adequately protect the interests of all Class Members because it is in his best interests to prosecute the claims alleged herein to obtain full compensation due to him for the unfair and illegal conduct of which he complains.  Plaintiff also has no interests that are in conflict with or antagonistic to the interests of Class Members. Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and that of the class.  No conflict of interest exists between Plaintiff and Class Members hereby, because all questions of law and fact regarding liability of Defendants are common to Class Members and predominate over any individual issues that may exist, such that by prevailing on his own claim, Plaintiff necessarily will establish Defendants' liability to all Class Members. Plaintiff and his counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to

the Class Members and are determined to diligently discharge those duties by vigorously seeking

the maximum possible recovery for Class Members.

47.     Superiority: There is no plain, speedy, or adequate remedy other than by

maintenance of this class action.  The prosecution of individual remedies by members of the class

will tend to establish inconsistent standards of conduct for the Defendants and result in the

impairment of Class Members' rights and the disposition of their interests through actions to

which they were not parties.  Class action treatment will permit a large number of similarly

situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

and without the unnecessary duplication of effort and expense that numerous individual actions

world engender.  Furthermore, as the damages suffered by each individual member of the class

may be relatively small, the expenses and burden of individual litigation would make it difficult

or impossible for individual members of the class to redress the wrongs done to them, while an

important public interest will be served by addressing the matter as a class action.

48.     Nexus to California.  The State of California has a special interest in regulating the

affairs of corporations that do business here and persons who live here.  Defendants have more

mobile telephone customers in California than in any other state.  Accordingly, there is a

substantial nexus between Defendants' unlawful behavior and California such that the California

courts should take cognizance of this action on behalf of a class of individuals who reside in

California.

49.     Plaintiff is unaware of any difficulties that are likely to be encountered in the

management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### PLAINTIFF'S FIRST CAUSE OF ACTION
**(False Advertising, Business and Professions Code § 17500, et seq.)**
**On Behalf Of Himself And The California Subclasses**

50.     Plaintiff realleges and incorporates by reference the paragraphs of this Class

Action Complaint as if set forth herein.

51.     Beginning at an exact date unknown to Plaintiff, but within three (3) years

preceding the filing of the Class Action Complaint, Defendants have made untrue, false,

deceptive and or misleading statements in connection with the advertising and marketing of their wireless services and mobile phones throughout the State of California, including in the City and County of San Francisco.

52.     Defendants have made representations and statements that lead reasonable customers to believe that they will not incur charges when using their phones abroad.  Defendants inform customers that, when using their phones in the United States, they will not incur charges for (1) calls that they do not answer, (2) voicemail they do not check and/or (3) calls they do not place.  Defendants also inform customers that, while using their phones in the United States, they will not incur data transfer charges for text, video and/or picture messages that they send. Defendants inform customers that, when using their phones abroad, they will incur additional charges for making or receiving calls, sending text messages and sending picture or video messages.  Defendants, however, deceptively did (and do) not adequately inform customers that, when traveling abroad, they will incur charges for (1) calls that they did not answer, (2) voicemail they did not check and/or (3) calls they did not place while they were traveling abroad. Defendants also deceptively do not inform customers that, when traveling abroad, they will incur data transfer fees for text, video and/or picture messages that they send.

53.     Plaintiff and those similarly situated relied to their detriment on Defendants' false, misleading and deceptive advertising and marketing practices.   Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, (1) keeping their phones off, (2) forwarding all calls, and (3) informing friends, family and business associates not to call them while they were traveling**.** They would also have sent fewer or no text, video and/or picture messages.

54.     Defendants engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits.  Accordingly, Defendants have engaged in false advertising, as defined and prohibited by section 17500, *et seq*. of the California Business and Professions Code.

55.     The aforementioned practices, which Defendants have used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful

1    advantage over Defendants' competitors as well as injury to the general public.

2        56.    Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as

3    necessary and according to proof, to restore any and all monies acquired by Defendants from

4    Plaintiff, the general public, or those similarly situated by means of the unfair and/or deceptive

5    trade practices complained of herein, plus interest thereon.

6        57.    Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit

7    Defendants from continuing to engage in the false, misleading and deceptive advertising and

8    marketing practices complained of herein.  The acts complained of herein occurred, at least in

9    part, within three (3) years preceding the filing of this Class Action Complaint.

10       58.    Plaintiff and those similarly situated are further entitled to and do seek both a

11   declaration that the above-described practices constitute false, misleading and deceptive

12   advertising, and injunctive relief restraining Defendants from engaging in any such advertising

13   and marketing practices in the future.  Such misconduct by Defendants, unless and until enjoined

14   and restrained by order of this Court, will continue to cause injury in fact to the general public

15   and the loss of money and property in that the Defendants will continue to violate the laws of

16   California, unless specifically ordered to comply with the same.  This expectation of future

17   violations will require current and future customers to repeatedly and continuously seek legal

18   redress in order to recover monies paid to Defendants to which Defendants are not entitled.

19   Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate

20   remedy at law to ensure future compliance with the California Business and Professions Code

21   alleged to have been violated herein.

22       59.    As a direct and proximate result of such actions, Plaintiff and the other members of

23   the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property

24   as a result of such false, deceptive and misleading advertising in an amount which will be proven

25   at trial, but which is in excess of the jurisdictional minimum of this Court.

26       60.    As a direct and proximate result of such actions, Defendants have enjoyed, and

27   continue to enjoy, significant financial gain in an amount which will be proven at trial, but which

28   is in excess of the jurisdictional minimum of this Court.

**PLAINTIFF'S SECOND CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)**
**On Behalf of Himself And The California Subclasses**

61.     Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

62.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*. ("CLRA").

63.     Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

64.     Plaintiff and other Class Members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

65.     The provision of mobile telephone services that Plaintiff (and others similarly situated Class Members) purchased from Defendants were "services" within the meaning of California Civil Code § 1761.

66.     By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(5) and § 1770(a)(7) of the CLRA.  In violation of California Civil Code §1770(a)(5), Defendants' acts and practices constitute improper representations that the goods or services that they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have.  In violation of California Civil Code §1770(a)(7), Defendants' acts and practices constitute improper representations that the goods or services that they sell are of a particular standard, quality, or grade, or that goods are of a particular style or model, when they were not. Specifically, Defendants acts and practices lead customers to believe that there is no charge, while traveling internationally, for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place, when in fact there are such charges.  Similarly, Defendants acts and practices lead customers to believe that they would only incur a single charge for text, video and/or picture messages that they sent while traveling abroad and that there would be no additional charges for data transfer.

67.     By engaging in the actions, representations and conduct set forth in this Class

Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(19) of the CLRA.

In violation of California Civil Code §1770(a)(19), Defendants unlawfully inserted, and have

enforced, in their terms of service agreements unconscionable provisions.  Specifically,

Defendants have inserted in their terms of service agreement mandatory arbitration and class

action waiver provisions, which they have unlawfully sought to enforce against the Plaintiff and

those similarly situated, by filing an affirmative defense in this case and motions to compel

arbitration in similar cases.

68.     Plaintiff requests that this Court enjoin Defendants from continuing to employ the

unlawful methods, acts and practices alleged herein pursuant to California Civil Code

§ 1780(a)(2).  If Defendants are not restrained from engaging in these types of practices in the

future, Plaintiff and the other members of the Class will continue to suffer harm.

69.     On February 10 and March 24, 2009, Plaintiff sent to Defendants certified letters,

return receipt requested, demanding that they comply with the CLRA, including California Civil

Code § 1782.  Defendants acknowledged receipt of each of those demand letters on February 23

and March 30, 2009.  Defendants have failed to comply with the requirements of California Civil

Code § 1782 with respect to the Class.

70.     Pursuant to California Civil Code § 1780, on behalf of similarly situated Class

Members, Plaintiff seeks actual damages of at least $1000, punitive damages, an award of $5000

for each Class Member who is a disabled person or senior citizen, and restitution of any ill-gotten

gains due to Defendants' acts and practices.

71.     Plaintiff also requests that this Court award him his costs and reasonable attorneys'

fees pursuant to California Civil Code § 1780(d).

### PLAINTIFF'S THIRD CAUSE OF ACTION
**(Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Himself and The Class**

72.     Plaintiff realleges and incorporates by reference the paragraphs of this Class

Action Complaint as if set forth herein.

73.     On or about March 20, 2008, Defendants fraudulently and deceptively failed to

inform Plaintiff that (1) calls that he did not answer, (2) voicemail he did not check and/or (3) calls he did not place while he was abroad would be charged at $1.29 per minute.  Defendants fraudulently and deceptively failed to inform that he would be charged additional data transfer fees for text, video and/or picture messages that he sent while traveling abroad.

74.     These omissions were material at the time they were made.  They concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether and how to use his mobile phone while traveling abroad.

75.     At the time of his purchase of mobile phone services, activation of international phone services and his arrival abroad, Defendants omitted to inform Plaintiff that (1) calls that he did not answer, (2) voicemail he did not check and/or (3) calls he did not place while he was abroad would be charged at $1.29 per minute.  Defendants also failed to inform Plaintiff that he would be charged additional data transfer fees for text, video and/or picture messages that he sent while traveling abroad.  Defendants had a fiduciary duty to provide this information.

76.     In not so informing Plaintiff, Defendants breached their duty to him.  Defendants also gained financially from, and as a result of, their breach.

77.     Plaintiff and those similarly situated relied to their detriment on Defendants' fraudulent omissions.   Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, (1) keeping their phones off, (2) forwarding all calls, and/or (3) informing friends, family and business associates not to call them while they were traveling abroad.  They would have also sent fewer (or no) text, video and/or picture messages while they were traveling abroad.

78.     Defendants had a fiduciary duty to inform Class Members at the time of their purchase of mobile phone services, activation of international phone services and their arrival abroad, of the additional charges that would be imposed on (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place while they were abroad.   Defendants omitted to provide this information to Class Members.  Class Members relied to their detriment on Defendants' omissions.  These omissions were material to the decisions of the Class Members to use their phones while traveling abroad.  In making these omissions, Defendants breached their

duty to Class Members.  Defendants also gained financially from, and as a result of, their breach.

79.     Defendants had a fiduciary duty to inform Class Members at the time of their purchase of mobile phone services, activation of international phone services and their arrival abroad, of the additional data transfer charges that would be imposed on text, video and/or picture messages they sent when they were abroad.   Defendants omitted to provide this information to Class Members.  Class Members relied to their detriment on Defendants' omissions.  These omissions were material to the decisions of the Class Members to use their phones while traveling abroad.  In making these omissions, Defendants breached their duty to Class Members. Defendants also gained financially from, and as a result of, their breach.

80.     By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiff and those similarly situated to alter their position to their detriment.

81.     Plaintiff and those similarly situated justifiably and reasonably relied on Defendants' omissions, and, accordingly, were damaged by the Defendants.

82.     As a direct and proximate result of Defendants' misrepresentations, Plaintiff and those similarly situated have suffered damages in an amount equal to the amount that Defendants billed them for calls that they did not answer, voicemail they did not check, calls they did not place and data transfer fees for text, video and picture messages they sent while they were abroad.

83.     Defendants' conduct as described herein was willful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiff.

### PLAINTIFF'S FOURTH CAUSE OF ACTION
**(Unfair, Unlawful and Deceptive Trade Practices, Business and Professions Code § 17200, et seq.)**
**On Behalf of Himself and the California Subclasses**

84.     Plaintiff realleges and incorporates by reference the above paragraphs of this Class Action Complaint as if set forth herein.

85.     Within four (4) years preceding the filing of this Class Action Complaint, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unfair, unlawful

and deceptive trade practices in California by engaging in the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint.   In particular, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices by without limitation

    a.   failing to properly inform their customers that they would be charged for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place while they were traveling abroad;

    b.   affirmatively deceiving their customers into believing that they would not be charged for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place while they were traveling abroad;

    c.   marketing, advertising and selling international wireless services and mobile phones without disclosing to customers the true costs associated with such international services and phone usage;

    d.   failing to properly inform their customers how they can use abroad their mobile phones without incurring charges for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place; and

    e.   assessing undisclosed "data transfer" fees for sending text, picture and/or video messages while traveling abroad.

86.   Plaintiff and those similarly situated relied to their detriment on Defendants' unfair, deceptive and unlawful business practices.   Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, (1) keeping their phones off, (2) forwarding all calls, and/or (3) informing friends, family and business associates not to call them while they were traveling abroad.  They would have also sent fewer (or not) text, video and picture message while they were traveling abroad.

87.   Defendants engage in these unfair practices to increase their profits.  Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, et seq. of the California Business and Professions Code.

88.     The aforementioned practices, which Defendants have used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

89.     Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiff, the general public, or those similarly situated by means of the unfair and/or deceptive trade practices complained of herein, plus interest thereon.

90.     Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the unfair trade practices complained of herein.  The acts complained of herein occurred, at least in part, within four (4) years preceding the filing of this Class Action Complaint.

91.     Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described trade practices are unfair, unlawful and/or fraudulent and injunctive relief restraining Defendants from engaging in any of such deceptive, unfair and/or unlawful trade practices in the future.   Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that the Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same.  This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

92.     As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

93.   As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.   On Causes of Action Numbers 1 and 4 against Defendants and in favor of Plaintiff and the other members of the class:

    1.   For the greater of actual or compensatory damages according to proof;

    2.   For restitution pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq. and 17500, et seq;

    3.   For injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq and 17500, et seq; and

B.   On Cause of Action Number 2 against Defendants and in favor of Plaintiff and the other members of the class:

    1.   For restitution and injunctive relief pursuant to California Civil Code section 1780;

    2    For actual damages and punitive damages for each Class Member; and

    3.   For statutory damages in the amount of $5000 for each Class Member who is a disabled person or senior citizen.

C.   On Cause of Action Number 3 against Defendants and in favor of Plaintiff and the other members of the class:

    1.   An award of compensatory damages, the amount of which is to be determined at trial; and

    2.   An award of punitive damages, the amount of which is to be determined at trial; and

D.   On all causes of action against Defendants and in favor of Plaintiff, class members and the general public:

   1.   For reasonable attorneys' fees according to proof pursuant to, without limitation, the California Legal Remedies Act and California Code of Civil Procedure § 1021.5;

   2.   For costs of suit incurred; and

   3.   For such further relief as this Court may deem just and proper.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff hereby demands a trial by jury.

Dated:  May 22, 2009                    **GUTRIDE SAFIER LLP**

Adam J. Gutride, Esq.
Seth A. Safier, Esq.
835 Douglass Street
San Francisco, California 94114

Attorneys for Plaintiff

First Amended Class Action Complaint

# EXHIBIT B

1   **GUTRIDE SAFIER LLP**
    ADAM J. GUTRIDE (State Bar No. 181446)
2   SETH A. SAFIER (State Bar No. 197427)
    835 Douglass Street
3   San Francisco, California 94114
    Telephone: (415) 336-6545
4   Facsimile:  (415) 449-6469

5

6   Attorneys for Plaintiff

7                SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                    CITY AND COUNTY OF SAN FRANCISCO

9

10  STEVEN MCARDLE, an individual, on behalf of himself,      CASE NO.  CV-09-01117 (CW)
    the general public and those similarly situated
11
                                                              FIRST AMENDED CLASS
12      Plaintiff,                                            ACTION COMPLAINT FOR
                                                              FALSE ADVERTISING; VIO-
13      v.                                                    LATION OF THE CALIFOR-
                                                              NIA CONSUMERS LEGAL
14  AT&T MOBILITY LLC; NEW CINGULAR WIRELESS                  REMEDIES ACT; FRAUD,
    PCS LLC; NEW CINGULAR WIRELESS SERVICES,                  DECEIT AND/OR MISREPRE-
15  INC,                                                      SENTATION; AND
                                                              UNFAIR BUSINESS PRAC-
16                                                            TICES
        Defendants
17
                                                              JURY TRIAL DEMANDED
18

19

20

21

22

23

24

25

26

27

28

First Amended Class Action Complaint

Steven McArdle, by and through his counsel, brings this First Amended Class Action Complaint ("Class Action Complaint") against Defendants, on behalf of himself and those similarly situated, for violations of sections 17200 and 17500 *et seq.* of the California Business and Professions Code, violation of the California Consumers Legal Remedies Act; and fraud, deceit and/or misrepresentation. The following allegations are based upon information and belief, including the investigation of Plaintiff's counsel, unless stated otherwise.

## INTRODUCTION

1.   This case is about how Defendants unfairly, unlawfully, and deceptively charge customers exorbitant, international roaming fees for (1) calls that they did not answer, (2) voicemail they did not check and/or (3) calls they did not place, while they were traveling abroad.  Not only did Defendants unfairly, unlawfully, and deceptively impose such charges, unlike other mobile phone companies, they affirmatively hid from their customers how they could avoid such charges.  Thereby, Defendants effectively forced customers into incurring these undisclosed fees and charges.

2.   Defendants also unfairly, unlawfully, and deceptively charge customers additional, undisclosed "data transfer" fees for text, video and pictures messages they send while traveling abroad.

## PARTIES

3.   Steven McArdle ("Plaintiff") is, and at all times alleged in this Class Action Complaint was, an individual and a resident of the City of San Francisco in San Francisco County, California.

4.   Defendant AT&T Mobility LLC is a limited liability company under the laws of the state of Delaware, having its principal place of business in Atlanta, Georgia.

5.   Defendant New Cingular Wireless PCS, LLC is a limited liability company under the laws of the state of Delaware, having its principal place of business in Atlanta, Georgia.

6.   Defendant New Cingular Wireless Services, Inc. is a corporation incorporated under the laws of the state of Delaware, having its principal place of business in Atlanta, Georgia.

7.   Defendants New Cingular Wireless PCS, LLC and New Cingular Wireless

-1-

1  Services, Inc. are referred to herein as "Cingular" or "Cingular Wireless."  In 2006, AT&T

2  purchased Cingular.  Shortly thereafter, Cingular was renamed and rebranded as AT&T Wireless.

3  As used herein, "AT&T" refers collectively to AT&T Mobility LLC, its predecessors including

4  Cingular, and the brands Cingular Wireless and AT&T Wireless.

5      8.      The true names and capacities of Defendants sued as Does 1 through 50 inclusive

6  are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names pursuant to

7  section 474 of the California Code of Civil Procedure.  Plaintiff will seek leave of Court to amend

8  this Class Action Complaint when said true names and capacities have been ascertained.

9      9.      The Parties identified in paragraphs 4 through 8 of this Class Action Complaint are

10  collectively referred to hereafter as "Defendants."

11      10.      At all times herein mentioned, each of the Defendants was the agent, servant,

12  representative, officer, director, partner or employee of the other Defendants and, in doing the

13  things herein alleged, was acting within the scope and course of his/her/its authority as such

14  agent, servant, representative, officer, director, partner or employee, and with the permission and

15  consent of each Defendant.

16      11.      At all times herein mentioned, Defendants, and each of them, were members of,

17  and engaged in, a joint venture, partnership and common enterprise, and acting within the course

18  and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

19      12.      At all times herein mentioned, the acts and omissions of Defendants, and each of

20  them, concurred and contributed to the various acts and omissions of each and all of the other

21  Defendants in proximately causing the injuries and damages as herein alleged.

22      13.      At all times herein mentioned, Defendants, and each of them, ratified each and

23  every act or omission complained of herein.  At all times herein mentioned, the Defendants, and

24  each of them, aided and abetted the acts and omissions of each and all of the other Defendants in

25  proximately causing the damages, and other injuries, as herein alleged.

26                              **JURISDICTION AND VENUE**

27      14.      This action is brought by Plaintiff pursuant, *inter alia*, to the California Business

28  and Professions Code, Sections 17200 *et. seq.*  Plaintiff and Defendants are "persons" within the

1    meaning of the California Business and Professions Code, Sections 17201.

2        15.    The injuries, damages and/or harm upon which this action is based, occurred or

3    arose out of activities engaged in by Defendants within, and affecting, the State of California.

4        16.    Defendants have engaged, and continue to engage, in substantial and continuous

5    business practices in the State of California, including in the City and Count of San Francisco.

6        17.    Accordingly, Plaintiff alleges that jurisdiction and venue are proper in this Court.

7                        **SUBSTANTIVE ALLEGATIONS**

8    **Defendants Market, Advertise and Sell Nationwide Wireless Phones And Related Services**

9        18.    AT&T is a leading provider of mobile telephone products and services.

10       19.    AT&T represents that all of their rate plans include basic voicemail and visual

11   voicemail at no extra charge.  Customers are not charged for receiving voicemail, for calls they

12   do not answer, or for receiving visual notifications that a call was missed or that a voicemail was

13   left.

14       20.    AT&T markets and advertises the international functionality of their mobile

15   phones and service plans.  For example, AT&T markets and advertises, without limitation, the

16   following:

17       More wireless AT&T phones work in more places around the world than any other U.S.
         carrier — over 200 countries. Stay connected while traveling to over 200 countries, plus
18       get discounted rates in over 85 of those countries when you sign up for AT&T World
         Traveler.
19
20       Going on a trip outside the U.S.? See if you have coverage based on your device and
         itinerary.

21       Next time you travel overseas, why not take your AT&T service with you?

22       21.    For customers who wish to use their AT&T-enabled mobile telephones outside the

23   United States, AT&T offers on its website a "Wireless Travel Guide."   By using the Wireless

24   Travel Guide, customers can determine, based on their mobile phone device and itinerary,

25   whether they will have coverage in a certain country and what rates that they will pay (in each

26   country) for telephones calls that they make or receive and for sending text, picture and/or video

27   messages.  For example, the Wireless Travel Guide informs AT&T customers traveling to Italy

28

-3-

First Amended Class Action Complaint

1  that for calls placed and received in Italy they will be charged $1.29 per minute,[1] $.50 per sent

2  text message, and $1.30 per sent picture or video message.  The guide further informs customers

3  that receiving text messages is free.[2]

4      22.     On its website, AT&T also informs customers that there are additional

5  international roaming charges for data transfer, such as sending/receiving email or surfing the

6  Internet.  AT&T warns customers who have data-enabled mobile phones that, if they wish to

7  avoid these charges, they should turn their data roaming feature to "off" so that the phones will

8  not automatically check for emails or retrieve other data.

9      23.     AT&T customers are provided with identical information when they telephone

10  AT&T with questions concerning international use of their phone and/or to activate their phones

11  for international use.

12      24.     AT&T does not, however, adequately inform its customers that there will be, and

13  its affirmative statements mislead customers into thinking there will not be, international roaming

14  charges for incoming calls they do not accept, voicemails they do not retrieve and/or calls they do

15  not place while they are abroad.

16      25.     For example, AT&T trains its representatives that, if customers inquire about

17  international usage, the representatives should inform them that they will incur charges for

18  sending international text messages and for making and receiving calls.  AT&T does not train its

19  representatives to state, and the representatives do not state, that customers will incur charges for

20  (1) calls that they do not answer, (2) voicemail they do not check and/or (3) calls they do not

21  place while they are traveling abroad.

22      26.     Similarly, when a customer arrives in a foreign country and turns on their phone,

23  they typically receive from AT&T a text message welcoming them to that country and informing

24  them that will incur charges for international text messages and phone usage.  The text messages

25  also typically inform customers to turn off international data roaming.  AT&T, however,

26  intentionally omits from the text message the fact that customers will incur charges for (1) calls

27  _____

28  [1] The $1.29 per minute is the standard international rate in Italy.  For customers that purchase the
   "AT&T World Traveler" plan, the rate for telephone calls is reduced to $.99 per minute.
   [2] The international roaming fees and charges vary by country and mobile phone device.

that they do not answer, (2) voicemail they do not check and (3) calls they do not place while they are traveling abroad. AT&T's intentional omissions deceive reasonable customers into believing that they will not incur additional charges for (1) calls that they do not answer, (2) voicemail they do not check and/or (3) calls they do not place while they were traveling abroad.

27.     Nor does AT&T adequately inform customers, either on their website, in a text message, or verbally when they call a customer service representative, how they can avoid incurring charges (1) calls that they do not answer, (2) voicemail they do not check and/or (3) calls they do not place while traveling abroad. With respect to AT&T's website, the information does not appear in the Wireless Travel Guide nor on numerous other pages dealing with international services and international roaming charges and other fees. AT&T's intentional failure to provide such information only compounds the deception because other mobile phone carriers provide such information to their customers.

28.     The only source of information about these additional charges that will be imposed on international travelers is on a single "Frequently Asked Question" page buried deep in AT&T's website. To navigate to this page, a customer would have to specifically click on "Frequently Asked Questions" even though he or she has already seen detailed information about international roaming charges and other fees that provides no indication of the additional voicemail and unanswered call related charges. One of the Frequently Asked Questions states as follows:

Q. How am I charged for Voicemail calls while roaming internationally?

A. Voicemail calls are charged as follows:

When your device is on:

    * Calls that you do not answer that are routed to the AT&T voicemail system will be charged as an international roaming incoming call to your device.

    * In addition, the foreign carrier's routing of that call to the AT&T voicemail system may generate an outgoing call charge from your device's location to the U.S.

    * These charges apply even if the caller disconnects from the voice mail system without leaving a message.

If your device is turned off or in flight mode and the wireless network is off:

    * When someone tries to call you, the call will go directly to your personal voicemail

greeting.

* Since the network does not try to deliver the call to you in a foreign country, there are no international roaming charges.

When receiving Visual Voicemail messages on your iPhone:

* Visual Voicemail messages received when roaming outside of the U.S. will be charged at International roaming data rates, either at the International pay-per-use data rate or against your iPhone International data package.

29.     AT&T does not require customers to view the Frequently Asked Questions page before using their phones internationally, nor does it make it likely that users will view this page, as it is buried deep on AT&T's website, and customer service representatives are not trained to tell customers who call AT&T to look at this page.   Nor are customer service representatives trained to provide this information.  To the contrary, they are trained not to provide this information unless a customer specifically requests it—i.e., asks if they will be charged for unanswered calls, voicemail that they receive but do not check or, even, when people disconnect from voicemail without leaving a message.

30.     Defendants force customers to incur these additional charges if they wish to use their telephones while traveling abroad.  For example, if a customer wishes to be able to send and receive text messages, there is no way to configure the phone so as to avoid the charges for incoming calls and voicemail notifications, even if the calls are not answered and the voicemails are not checked.  Otherwise put, in order to use other functions that AT&T advertises, and for which they are told how much they will be charged, customers are forced to incur additional inadequately or undisclosed charges and fees.

31.     Finally, even though, as set forth above, Defendants disclose to customers that they will be charged additional amounts for text, video or pictures messages—e.g., $.50 per text message—while traveling abroad, Defendants charged approximately double the disclosed amount.  Specifically, as disclosed, Defendants charged customers for sending the text, video or picture message.  However, Defendants charged an additional data transfer fee, presumably for the "data" transfer that was associated with sending the text, video or picture message.  No where, however, did Defendants disclose to their customers the existence or amount of any additional

-6-

First Amended Class Action Complaint

1   "data transfer" fees associated with sending the text, video or picture messages while abroad.

2       **Plaintiff Was Charged International Roaming Rates for Calls He Did Not Answer,
    Voicemail He Did Not Check And Calls He Did Not Place.  Plaintiff Was Also Charged**
3       **Undisclosed Data Transfer Fees For the Text Messages That He Sent.**

4       32.     Plaintiff has been a mobile telephone customer of AT&T since the summer of

5   2004.   Plaintiff had an LG mobile (flip) phone until recently when he purchased a BlackBerry

6   Pearl mobile phone.

7       33.     Between March 20 and March 30, 2008, Plaintiff traveled to Italy.  Prior to

8   departing, Plaintiff looked at Defendants' website to gather information concerning international

9   use of his wireless phone.  Plaintiff noticed on Defendants' website that he would be charged

10  additional amounts to place and receive calls and send text messages.  Plaintiff was not, however,

11  informed that he would be charged for voicemail he did not check, calls that he did not

12  answer and/or calls that he did not make while traveling abroad.

13      34.     On or about March 20, 2008, Plaintiff telephoned Defendants' customer service

14  department in order to discuss his need for international text messaging.   At that time, Plaintiff

15  purchased the 100INT'LTEXTMSGS Plan for an additional $9.99 per month.[3]  It was Plaintiff's

16  understanding that without this plan, he could not send text messages while traveling abroad.[4]

17  Defendants' customer service agent informed Plaintiff that while traveling internationally, he

18  would be charged additional amounts to place and receive calls and send text messages.  The

19  agent did not state, however, that Plaintiff would be charged for voicemail that he did not check,

20  calls that he did not answer and/or calls that he did not make while traveling abroad.

21      35.     When he arrived in Germany (on a layover), Plaintiff received from AT&T a

22  welcome text message.  That text message informed Plaintiff that he would be charged additional

23  amounts to place and receive calls and send text messages.  Plaintiff was not, however, informed

24  in the text message that he would be charged for voicemail that he did not check, calls that he did

25  not answer and/or calls that he did not make while traveling abroad.  Plaintiff received a similar

26  _____

27  [3] The first month was pro-rated—i.e., Plaintiff paid $2.00 for 3/20/08 – 3/25/08.
    [4] Defendants' customer service agent may have misinformed Plaintiff about the utility of the
28  100INT'LTEXTMSGS Plan.  In fact, it may have been $9.99 for Plaintiff to send 100 text mes-
    sages from the US to an international phone number, a service that Plaintiff did not want or need.

-7-

1   text message when he arrived in Italy.

2   36.     Despite the fact that Plaintiff did not place or answer any telephone calls while in

3   Italy, he was still charged a total of $3.87 for telephone calls that he did not answer, voicemail he

4   did not receive and/or calls he did not place.   Had he known he would be charged for the call

5   irrespective of whether or not he answered, he would have kept his phone off or informed friends,

6   family and business associates not to call but rather to text or email.

7   37.     Though Plaintiff was informed that sending text messages from abroad would cost

8   $.50 per text message, Plaintiff was never informed that there would be an additional "data

9   transfer" fee associated with sending text messages.   Nonetheless, Defendants charged Plaintiff

10  $.50 for each text message that he sent while traveling abroad and an additional (undisclosed)

11  $10.04 "data transfer fee" for sending those text messages.    Plaintiff's mobile phone was not,

12  however, data enabled—i.e., he could not send or receive email on his phone.  Nor could he

13  access the Internet.

14  38.     Plaintiff's experience was not an isolated incident.  Rather, many other customers

15  have been charged for voicemail that they did not check, calls that they did not answer and calls

16  they did not place while traveling abroad.

17  39.     For example, one customer posted this statement on an Internet complaint forum:

18          AT&T Roaming Charges.. on VOICEMAIL??

19          AAGH!

20
21          I need your help/input guys. I went to the caribbean for a week in June and I get a
            bill for $150 of roaming fees. The problem is, I only made *2* calls. Before I
22          went, I specifically asked an AT&T retail employee if I can carry my phone in the
            caribbean without penalty. I was told specifically that if I turn off my data roaming
23          then I will only get charged for the calls that I make. That will be the only over-
            ages.
24
25          They are charging me $2.99/minute for every single voicemail call I receive while
            there. I racked up about $150 in overages!!
26          HUH??? :befuddled

27          Has anyone else experienced this? I am especially upset because I did my due dili-
            gence and still got screwed. They offered to refund 1/2 the roaming charges as a
28          one time "courtesy"..

Uhm... No, they need to remove the whole thing. I am currently awaiting a call back from a higher power that for some reason, takes 24-72 hours.

They must be busy with complaints.

http://www.howardforums.com/printthread.php?t=1401697, last visited January 30, 2009.

40.     Another customer wrote:

Can an ATT employee PLEASE comment on the problems with voicemail while roaming internationally? I just received a statement containing $20 in charges for unsuccessful attempts to leave me voicemail. For every attempt, there's $1.29 for an incoming call, and on the next line $1.29 for forwarding it to a number in the 646 area code that turns out to be generic voicemail access.

Had callers known what to do, they could have re-entered my phone number and left me a message, but, unsuprisingly (sic), none of them guessed this. I didn't re-ceive any messages at all for the entire trip. Just charges.

In a tiny footnote, the ATTWS website does admit the double roaming charges for voicemail, but nowhere does it disclose the near impossibility that you will ever receive a message. Are there ANY plans to address, or even ackowledge (sic), this issue

http://forums.wireless.att.com/cng/board/message?board.id=gsmgprs&thread.id=3395, last visited January 30, 2009.

## CLASS ALLEGATIONS

41.     Plaintiff brings this action against Defendants on behalf of himself and all others similarly situated, as a class action pursuant to section 382 of the California Code of Civil Procedure and section 1781 of the California Civil Code.  Plaintiff seeks to represent a group of similarly situated persons.  The group is defined as follows:

All California residents who, from February 6, 2005 through the present, paid Defendants for (1) voicemails they did not retrieve, calls they did not answer and/or calls they did not make while traveling abroad or (2) "data transfer" fees for text, picture or video messages they sent while traveling abroad.

42.     This action has been brought and may properly be maintained as a class action against the Defendants pursuant to the provisions of California Code of Civil Procedure section 382 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

43.     Numerosity: Plaintiff does not know the exact size of the class, but it is estimated

-9-

that it is composed of more than 1,000 persons.  The persons in the class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

44.     Common Questions Predominate: This action involves common questions of law and fact to the potential class because each Class Member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led customers to believe that they would not be charged, and failed to inform customers that they would be charged, for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place while traveling abroad.  Class Member claims also derive from common questions of law and fact related to the undisclosed data transfer fees that Defendants assessed for text, video and picture messages that customers placed while traveling abroad. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover.  Among the questions of law and fact common to the class are:

a)     Whether Defendants unfairly, unlawfully and/or deceptively charged Class Members for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place while traveling abroad;

b)     Whether Defendants adequately disclosed to Class Members that they would be charged for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place while they were traveling abroad;

c)     Whether Defendants unfairly, unlawfully and/or deceptively led Class Members to believe that they would not be charged for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place while they were traveling abroad;

d)     Whether Defendants unfairly, unlawfully and/or deceptively charged Class Members data transfer fees for text, picture and/or video messages that they sent while they were traveling abroad;

e)     Whether Defendants' advertising and marketing regarding their international telephone service and mobile phones was likely to deceive Class Members or was

-10-

First Amended Class Action Complaint

1  unfair;

2          f)      Whether Defendants engaged in the alleged conduct knowingly, recklessly,

3  or negligently;

4          g)      The amount of revenues and profits Defendants received and/or the amount

5  of monies or other obligations lost by Class Members as a result of such wrongdoing;

6          h)      Whether Class Members are entitled to injunctive and other equitable relief

7  and, if so, what is the nature of such relief; and

8          i)      Whether Class Members are entitled to payment of actual, incidental,

9  consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the

10  nature of such relief.

11          45.     Typicality: Plaintiff's claims are typical of the class because Plaintiff was charged

12  for (1) calls that he did not answer, (2) voicemail he did not check and/or (3) calls he did not

13  place while he was traveling abroad.  Plaintiff was also charged undisclosed data transfer fees for

14  text messages he sent while traveling abroad.  Thus, Plaintiff and Class Members sustained the

15  same injuries and damages arising out of Defendants' conduct in violation of the law.  The

16  injuries and damages of each Class Member were caused directly by Defendants' wrongful

17  conduct in violation of law as alleged.

18          46.     Adequacy: Plaintiff will fairly and adequately protect the interests of all Class

19  Members because it is in his best interests to prosecute the claims alleged herein to obtain full

20  compensation due to him for the unfair and illegal conduct of which he complains.  Plaintiff also

21  has no interests that are in conflict with or antagonistic to the interests of Class Members.

22  Plaintiff has retained highly competent and experienced class action attorneys to represent his

23  interests and that of the class.  No conflict of interest exists between Plaintiff and Class Members

24  hereby, because all questions of law and fact regarding liability of Defendants are common to

25  Class Members and predominate over any individual issues that may exist, such that by prevailing

26  on his own claim, Plaintiff necessarily will establish Defendants' liability to all Class Members.

27  Plaintiff and his counsel have the necessary financial resources to adequately and vigorously

28  litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to

1   the Class Members and are determined to diligently discharge those duties by vigorously seeking

2   the maximum possible recovery for Class Members.

3         47.     Superiority: There is no plain, speedy, or adequate remedy other than by

4   maintenance of this class action.  The prosecution of individual remedies by members of the class

5   will tend to establish inconsistent standards of conduct for the Defendants and result in the

6   impairment of Class Members' rights and the disposition of their interests through actions to

7   which they were not parties.  Class action treatment will permit a large number of similarly

8   situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

9   and without the unnecessary duplication of effort and expense that numerous individual actions

10  world engender.  Furthermore, as the damages suffered by each individual member of the class

11  may be relatively small, the expenses and burden of individual litigation would make it difficult

12  or impossible for individual members of the class to redress the wrongs done to them, while an

13  important public interest will be served by addressing the matter as a class action.

14        48.     Nexus to California.  The State of California has a special interest in regulating the

15  affairs of corporations that do business here and persons who live here.  Defendants have more

16  mobile telephone customers in California than in any other state.  Accordingly, there is a

17  substantial nexus between Defendants' unlawful behavior and California such that the California

18  courts should take cognizance of this action on behalf of a class of individuals who reside in

19  California.

20        49.     Plaintiff is unaware of any difficulties that are likely to be encountered in the

21  management of this action that would preclude its maintenance as a class action.

22  **CAUSES OF ACTION**

23  **PLAINTIFF'S FIRST CAUSE OF ACTION**
**(False Advertising, Business and Professions Code § 17500, et seq.)**

24  **On Behalf Of Himself And The California Subclasses**

25        50.     Plaintiff realleges and incorporates by reference the paragraphs of this Class

26  Action Complaint as if set forth herein.

27        51.     Beginning at an exact date unknown to Plaintiff, but within three (3) years

28  preceding the filing of the Class Action Complaint, Defendants have made untrue, false,

deceptive and or misleading statements in connection with the advertising and marketing of their wireless services and mobile phones throughout the State of California, including in the City and County of San Francisco.

52.     Defendants have made representations and statements that lead reasonable customers to believe that they will not incur charges when using their phones abroad.  Defendants inform customers that, when using their phones in the United States, they will not incur charges for (1) calls that they do not answer, (2) voicemail they do not check and/or (3) calls they do not place.  Defendants also inform customers that, while using their phones in the United States, they will not incur data transfer charges for text, video and/or picture messages that they send. Defendants inform customers that, when using their phones abroad, they will incur additional charges for making or receiving calls, sending text messages and sending picture or video messages.  Defendants, however, deceptively did (and do) not adequately inform customers that, when traveling abroad, they will incur charges for (1) calls that they did not answer, (2) voicemail they did not check and/or (3) calls they did not place while they were traveling abroad. Defendants also deceptively do not inform customers that, when traveling abroad, they will incur data transfer fees for text, video and/or picture messages that they send.

53.     Plaintiff and those similarly situated relied to their detriment on Defendants' false, misleading and deceptive advertising and marketing practices.   Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, (1) keeping their phones off, (2) forwarding all calls, and (3) informing friends, family and business associates not to call them while they were traveling. They would also have sent fewer or no text, video and/or picture messages.

54.     Defendants engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits.  Accordingly, Defendants have engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

55.     The aforementioned practices, which Defendants have used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful

1    advantage over Defendants' competitors as well as injury to the general public.

2           56.     Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as

3    necessary and according to proof, to restore any and all monies acquired by Defendants from

4    Plaintiff, the general public, or those similarly situated by means of the unfair and/or deceptive

5    trade practices complained of herein, plus interest thereon.

6           57.     Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit

7    Defendants from continuing to engage in the false, misleading and deceptive advertising and

8    marketing practices complained of herein.  The acts complained of herein occurred, at least in

9    part, within three (3) years preceding the filing of this Class Action Complaint.

10          58.     Plaintiff and those similarly situated are further entitled to and do seek both a

11   declaration that the above-described practices constitute false, misleading and deceptive

12   advertising, and injunctive relief restraining Defendants from engaging in any such advertising

13   and marketing practices in the future.  Such misconduct by Defendants, unless and until enjoined

14   and restrained by order of this Court, will continue to cause injury in fact to the general public

15   and the loss of money and property in that the Defendants will continue to violate the laws of

16   California, unless specifically ordered to comply with the same.  This expectation of future

17   violations will require current and future customers to repeatedly and continuously seek legal

18   redress in order to recover monies paid to Defendants to which Defendants are not entitled.

19   Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate

20   remedy at law to ensure future compliance with the California Business and Professions Code

21   alleged to have been violated herein.

22          59.     As a direct and proximate result of such actions, Plaintiff and the other members of

23   the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property

24   as a result of such false, deceptive and misleading advertising in an amount which will be proven

25   at trial, but which is in excess of the jurisdictional minimum of this Court.

26          60.     As a direct and proximate result of such actions, Defendants have enjoyed, and

27   continue to enjoy, significant financial gain in an amount which will be proven at trial, but which

28   is in excess of the jurisdictional minimum of this Court.

-14-

First Amended Class Action Complaint

**PLAINTIFF'S SECOND CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)**
**On Behalf of Himself And The California Subclasses**

61.     Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

62.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA").

63.     Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

64.     Plaintiff and other Class Members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

65.     The provision of mobile telephone services that Plaintiff (and others similarly situated Class Members) purchased from Defendants were "services" within the meaning of California Civil Code § 1761.

66.     By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(5) and § 1770(a)(7) of the CLRA.  In violation of California Civil Code §1770(a)(5), Defendants' acts and practices constitute improper representations that the goods or services that they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have.  In violation of California Civil Code §1770(a)(7), Defendants' acts and practices constitute improper representations that the goods or services that they sell are of a particular standard, quality, or grade, or that goods are of a particular style or model, when they were not.  Specifically, Defendants acts and practices lead customers to believe that there is no charge, while traveling internationally, for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place, when in fact there are such charges.  Similarly, Defendants acts and practices lead customers to believe that they would only incur a single charge for text, video and/or picture messages that they sent while traveling abroad and that there would be no additional charges for data transfer.

-15-

67.     By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(19) of the CLRA. In violation of California Civil Code §1770(a)(19), Defendants unlawfully inserted, and have enforced, in their terms of service agreements unconscionable provisions. Specifically, Defendants have inserted in their terms of service agreement mandatory arbitration and class action waiver provisions, which they have unlawfully sought to enforce against the Plaintiff and those similarly situated, by filing an affirmative defense in this case and motions to compel arbitration in similar cases.

68.     Plaintiff requests that this Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendants are not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the Class will continue to suffer harm.

69.     On February 10 and March 24, 2009, Plaintiff sent to Defendants certified letters, return receipt requested, demanding that they comply with the CLRA, including California Civil Code § 1782. Defendants acknowledged receipt of each of those demand letters on February 23 and March 30, 2009. Defendants have failed to comply with the requirements of California Civil Code § 1782 with respect to the Class.

70.     Pursuant to California Civil Code § 1780, on behalf of similarly situated Class Members, Plaintiff seeks actual damages of at least $1000, punitive damages, an award of $5000 for each Class Member who is a disabled person or senior citizen, and restitution of any ill-gotten gains due to Defendants' acts and practices.

71.     Plaintiff also requests that this Court award him his costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**PLAINTIFF'S THIRD CAUSE OF ACTION**
**(Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Himself and The Class**

72.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

73.     On or about March 20, 2008, Defendants fraudulently and deceptively failed to

First Amended Class Action Complaint

1    inform Plaintiff that (1) calls that he did not answer, (2) voicemail he did not check and/or (3)

2    calls he did not place while he was abroad would be charged at $1.29 per minute.  Defendants

3    fraudulently and deceptively failed to inform that he would be charged additional data transfer

4    fees for text, video and/or picture messages that he sent while traveling abroad.

5        74.    These omissions were material at the time they were made.  They concerned

6    material facts that were essential to the analysis undertaken by Plaintiff as to whether and how to

7    use his mobile phone while traveling abroad.

8        75.    At the time of his purchase of mobile phone services, activation of international

9    phone services and his arrival abroad, Defendants omitted to inform Plaintiff that (1) calls that he

10   did not answer, (2) voicemail he did not check and/or (3) calls he did not place while he was

11   abroad would be charged at $1.29 per minute.  Defendants also failed to inform Plaintiff that he

12   would be charged additional data transfer fees for text, video and/or picture messages that he sent

13   while traveling abroad.  Defendants had a fiduciary duty to provide this information.

14       76.    In not so informing Plaintiff, Defendants breached their duty to him.  Defendants

15   also gained financially from, and as a result of, their breach.

16       77.    Plaintiff and those similarly situated relied to their detriment on Defendants'

17   fraudulent omissions.   Had Plaintiff and those similarly situated been adequately informed and

18   not intentionally deceived by Defendants, they would have acted differently by, without

19   limitation, (1) keeping their phones off, (2) forwarding all calls, and/or (3) informing friends,

20   family and business associates not to call them while they were traveling abroad.  They would

21   have also sent fewer (or no) text, video and/or picture messages while they were traveling abroad.

22       78.    Defendants had a fiduciary duty to inform Class Members at the time of their

23   purchase of mobile phone services, activation of international phone services and their arrival

24   abroad, of the additional charges that would be imposed on (1) calls that they did not answer, (2)

25   voicemail they did not check and (3) calls they did not place while they were abroad.   Defendants

26   omitted to provide this information to Class Members.  Class Members relied to their detriment

27   on Defendants' omissions.  These omissions were material to the decisions of the Class Members

28   to use their phones while traveling abroad.  In making these omissions, Defendants breached their

-17-

duty to Class Members.  Defendants also gained financially from, and as a result of, their breach.

79.    Defendants had a fiduciary duty to inform Class Members at the time of their purchase of mobile phone services, activation of international phone services and their arrival abroad, of the additional data transfer charges that would be imposed on text, video and/or picture messages they sent when they were abroad.   Defendants omitted to provide this information to Class Members.  Class Members relied to their detriment on Defendants' omissions.  These omissions were material to the decisions of the Class Members to use their phones while traveling abroad.  In making these omissions, Defendants breached their duty to Class Members. Defendants also gained financially from, and as a result of, their breach.

80.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiff and those similarly situated to alter their position to their detriment.

81.    Plaintiff and those similarly situated justifiably and reasonably relied on Defendants' omissions, and, accordingly, were damaged by the Defendants.

82.    As a direct and proximate result of Defendants' misrepresentations, Plaintiff and those similarly situated have suffered damages in an amount equal to the amount that Defendants billed them for calls that they did not answer, voicemail they did not check, calls they did not place and data transfer fees for text, video and picture messages they sent while they were abroad.

83.    Defendants' conduct as described herein was willful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiff.

### PLAINTIFF'S FOURTH CAUSE OF ACTION
**(Unfair, Unlawful and Deceptive Trade Practices, Business and Professions Code § 17200, et seq.)**
**On Behalf of Himself and the California Subclasses**

84.    Plaintiff realleges and incorporates by reference the above paragraphs of this Class Action Complaint as if set forth herein.

85.    Within four (4) years preceding the filing of this Class Action Complaint, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unfair, unlawful

Seth Safier 5/4/09 3:00 PM
**Formatted:** Bullets and Numbering

and deceptive trade practices in California by engaging in the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint.   In particular, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices by without limitation

     a.  failing to properly inform their customers that they would be charged for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place while they were traveling abroad;

     b.  affirmatively deceiving their customers into believing that they would not be charged for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place while they were traveling abroad;

     c.  marketing, advertising and selling international wireless services and mobile phones without disclosing to customers the true costs associated with such international services and phone usage;

     d.  failing to properly inform their customers how they can use abroad their mobile phones without incurring charges for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place; and

     e.  assessing undisclosed "data transfer" fees for sending text, picture and/or video messages while traveling abroad.

86.    Plaintiff and those similarly situated relied to their detriment on Defendants' unfair, deceptive and unlawful business practices.   Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, (1) keeping their phones off, (2) forwarding all calls, and/or (3) informing friends, family and business associates not to call them while they were traveling abroad.  They would have also sent fewer (or not) text, video and picture message while they were traveling abroad.

87.    Defendants engage in these unfair practices to increase their profits.  Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, et seq. of the California Business and Professions Code.

*[Margin note: Seth Safier 5/4/09 3:00 PM — Formatted: Bullets and Numbering]*

88.    The aforementioned practices, which Defendants have used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

89.    Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiff, the general public, or those similarly situated by means of the unfair and/or deceptive trade practices complained of herein, plus interest thereon.

90.    Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the unfair trade practices complained of herein.  The acts complained of herein occurred, at least in part, within four (4) years preceding the filing of this Class Action Complaint.

91.    Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described trade practices are unfair, unlawful and/or fraudulent and injunctive relief restraining Defendants from engaging in any of such deceptive, unfair and/or unlawful trade practices in the future.   Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that the Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same.  This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled.  Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

92.    As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

1     93.    As a direct and proximate result of such actions, Defendants have enjoyed, and

2 continue to enjoy, significant financial gain in an amount which will be proven at trial, but which

3 is in excess of the jurisdictional minimum of this Court.

4 **PRAYER FOR RELIEF**

5     WHEREFORE, Plaintiff prays for judgment as follows:

6     A.    On Causes of Action Numbers 1 and 4 against Defendants and in favor of

7     Plaintiff and the other members of the class:

8     1.    For the greater of actual or compensatory damages according to

9     proof;

10     2.    For restitution pursuant to, without limitation, the California Busi-

11     ness & Professions Code §§ 17200, et seq. and 17500, et seq;

12     3.    For injunctive relief pursuant to, without limitation, the California

13     Business & Professions Code §§ 17200, et seq and 17500, et seq;

14     and

15     B.    On Cause of Action Number 2 against Defendants and in favor of Plaintiff

16     and the other members of the class:

17     1.    For restitution and injunctive relief pursuant to California Civil

18     Code section 1780;

19     2    For actual damages and punitive damages for each Class Member;

20     and

21     3.    For statutory damages in the amount of $5000 for each Class Mem-

22     ber who is a disabled person or senior citizen.

23     C.    On Cause of Action Number 3 against Defendants and in favor of Plaintiff

24     and the other members of the class:

25     1.    An award of compensatory damages, the amount of which is to be

26     determined at trial; and

27     2.    An award of punitive damages, the amount of which is to be deter-

28     mined at trial; and

Seth Safier 5/4/09 3:02 PM
**Deleted:** [Reserved]; and ¶

Seth Safier 5/4/09 3:02 PM
**Formatted:** Indent: Left: 1", Hanging: 0.5", Tabs: 0.5", Left + 3", Left

D.     On all causes of action against Defendants and in favor of Plaintiff, class
members and the general public:

    1.   For reasonable attorneys' fees according to proof pursuant to, with-
out limitation, the California Legal Remedies Act and California
Code of Civil Procedure § 1021.5;

    2.   For costs of suit incurred; and

    3.   For such further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: May 4, 2009                    **GUTRIDE SAFIER LLP**

Seth Safier 5/5/09 9:58 AM
Deleted: .

Seth Safier 5/4/09 3:15 PM
Deleted: February 10, 2009

Adam J. Gutride, Esq.
Seth A. Safier, Esq.
835 Douglass Street
San Francisco, California 94114

Attorneys for Plaintiff

-22-

First Amended Class Action Complaint