**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
L. JAY KUO (State Bar No. 173293)
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNA

| | |
|---|---|
| STEVEN MCARDLE, an individual, on behalf of himself, the general public and those similarly situated | Case No. CV-09-01117 (CW) |
|     Plaintiff, | **PLAINTIFF'S CONSOLI-DATIED OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBRITRATION AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DE-FENSES** |
|         v. | |
| AT&T MOBILITY LLC; NEW CINGULAR WIRELESS PCS LLC; NEW CINGULAR WIRELESS SERVICES, INC., AND DOES 1 THROUGH 50 | |
|     Defendants | Date:      September 3, 2009<br>Time:     2:00 P.M.<br>Dept:     Courtroom 2, 4th Floor<br>Judge:   Hon. Claudia Wilken |

**TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................................4

II.    ARGUMENT ..........................................................................................................6

     A.    Defendants' Arbitration Provision In Defendants' Terms of Service Agreement
          Is Unconscionable and Unenforceable.....................................................................6

         1.    The Arbitration Provision Is Procedurally Unconscionable. ............................7

         2.    The Arbitration Agreement Is Substantively Unconscionable..........................8

     B.    The FAA Does Not Preempt Application Of California State Law Regarding
          Unconscionability Of Class Action Waivers. .......................................................12

         1.    There is No Express Preemption......................................................................12

         2.    There is No Implied Preemption. .....................................................................13

     C.    Plaintiff's Motion To Strike Should Be Granted....................................................15

         1.    Defendants' Preemption Defense Should Be Stricken. ....................................15

         2.    Plaintiff Is Not Required To Show That He Is Prejudiced By The
            Affirmative Defenses. .....................................................................................17

         3.    Plaintiff Is Prejudiced By The Delay And Confusion That These
            Affirmative Defenses Have Caused.................................................................18

III.   CONCLUSION......................................................................................................19

1

2

## **TABLE OF AUTHORITIES**

### CASES

*02 Micro Int'l Ltd. v. Monolithic Power Sys.*, 2004 U.S. Dist. LEXIS 30244 (N.D. Cal. Feb. 11, 2004)........................................................................................................17

*A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473 (1982) ...........................................8

*Alienware Corp.,* 502 F. Supp. 2d 1061 (N.D.Cal. 2007).........................................................11

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000) .............................7

*Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715 (2004)..................................................11

*Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066 (1999) ...........................................16

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ...................................... 13, 14

*California v. United States*, 512 F. Supp. 36 (N.D. Cal. 1981) ................................................18

*Cohen v. DIRECTV, Inc.*, 142 Cal. App. 4th 1442 (2006)........................................................10

*Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal.2002) .....................................................7

*Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303 (2003) ..................................................16

*Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007) ..................................................16

*Discover Bank v. Superior Court of Los Angeles*, 36 Cal. 4th 148 (2005) .........................passim

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524 (9th Cir. 1993) .................................................. 17, 18

*Farlow v. Union Central Life Insurance Company*, 874 F.2d 791 (11th Cir. 1989). ...............17

*Flores v. Transamerica HomeFirst, Inc.,* 93 Cal. App. 4th 846 (2001) .....................................7

*Ganley v. County of San Mateo*, 2007 U.S. Dist. LEXIS 26467 (N.D. Cal. Mar. 22, 2007) ...........................................................................................................................18

*Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571 (2007) ....................................................7

*Gentry v. Superior Court*, 42 Cal. 4th 443 (2007) ...................................................................11

*Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286 (7th Cir. 1989) ...............18

*In re Apple & AT&TM Antitrust Litig.*, 596 F.Supp. 2d 1288 (N.D. Cal. 2008).........................4

*Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court*, 133 Cal.App.4th 396 (2005) ......................................................................................................11

*Kaltwasser v. Cingular Wireless LLC, 543 F. Supp. 2d 1124 (*N.D. Cal*. 2008)* ........................4

*Klussman v. Cross Country Bank*, 134 Cal.App.4th 1283 (2005) .............................................12

*Laster v. T-Mobile USA, Inc.,* 2008 WL 5216255 (S.D. Cal. Aug. 11, 2008)......................4, 10

*Makarowski v. AT&T Mobility, LLC*, 2009 U.S. Dist. LEXIS 57633 (C.D. Cal. June 18, 2009) ...........................................................................................................................9

*Meyer v. Sprint Spectrum L.P.*, 200 P.3d 195 (2009) ..............................................................15

*Monolithic Power Sys. v. 02 Micro Int'l Ltd.*, 2006 U.S. Dist. LEXIS 78601 (N.D. Cal. Oct. 18, 2006)......................................................................................................17

*Preston v. Ferrer*, 128 S. Ct. 978 (2008) ........................................................................ 13, 14

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).....................................13

*Securimetrics, Inc. v. Hartford Cas. Ins. Co.*, 2005 U.S. Dist. LEXIS 43533 (N.D.

1   Cal. Oct. 4, 2005) ............................................................................................... 17

2   *Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976 (9th Cir. 2007) .......................... passim

    *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880 (9th Cir. 1983).............................. 17

3   *Smith v. Wal-Mart Stores,* 2006 U.S. Dist. LEXIS 72225 (N.D. Cal. Sept. 20, 2006).............. 16

4   *Solis v. Zenith Capital, LLC*, 2009 U.S. Dist. LEXIS 43350 (N.D. Cal. May 8, 2009) ............ 18

5   *Stiener v. Apple Computer, Inc*., 2008 U.S. Dist. LEXIS 40453 (N.D. Cal. Mar. 12,
       2008) ................................................................................................... 4, 9, 12

6   *Townshend v. Rockwell Intern. Corp.*, 2000 U.S. Dist. LEXIS 5070 (N.D. Cal. 2000)............. 16

7   *Winig v. Cingular Wireless LLC*, 2006 U.S. Dist. LEXIS 73137 (N.D. Cal. Sept. 27,
       2006) ......................................................................................................... 11

8   *Zavala v. Scott Brothers Dairy, Inc*., 143 Cal. App. 4th 5850 (2006) ........................ 16

9                                            **STATUTES**

10  9 U.S.C. § 4 .................................................................................... 13, 14

    Cal.  Code. Civ. Proc. § 338 ...................................................................... 18

11                                           **TREATISES**

12  5C Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 1382 (3d 3ed.
       Supp 2009) ...................................................................................... 17

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiff respectfully submits this consolidated opposition to Defendants' motion to compel

2    arbitration (Dkt.# 47) and reply in support of his motion to strike affirmative defenses (Dkt.# 37).

3    **I.    INTRODUCTION**

4    Defendants have architected a sophisticated legal strategy to stymie, nationwide, the pro-

5    gress of class action litigation.  Specifically, Defendants place in their mobile phone service

6    agreements a mandatory arbitration clause and tie to it a non-severable class action waiver.   This

7    arbitration provision/class action waiver has not once been enforced in a class action in the Ninth

8    Circuit.   Indeed, in 2008, this very class action waiver was ruled unenforceable on at least four

9    occasions.  These rulings came from other **U.S. District Courts in California** where Defendants

10   moved to compel arbitration under the virtually identical waiver provision.  Each Court denied the

11   motion on the ground that the provision is unconscionable.  *See Stiener v. Apple Computer, Inc*.,

12   2008 U.S. Dist. LEXIS 40453 (N.D. Cal. Mar. 12, 2008); *Kaltwasser v. Cingular Wireless LLC*,

13   543 F. Supp. 2d 1124 (N.D. Cal. Apr. 11, 2008); *In re Apple & AT&TM Antirtrust Litig.*, 596

14   F.Supp. 2d 1288, 1299 (N.D. Cal. 2008); *Laster v. T-Mobile USA, Inc.,* 2008 WL 5216255 (S.D.

15   Cal. Aug. 11, 2008).

16   But this did not stop Defendants from continuing to try to enforce the class action waiver.

17   This is by design.  Instead of engaging in discovery, providing initial disclosures and litigating in

18   good faith, Defendants simply file, in each class action they face, a motion to compel arbitration

19   and then stonewall behind it.

20   It appeared, at the outset, that this case would be the exception to Defendants' strategy.  In

21   conjunction with the filing of his complaint, Plaintiff sent to Defendants a letter advising them that

22   their arbitration provision/class action waiver should not be enforced in this action because it had

23   been previously been declared unconscionable.  On March 10, 2008, Defendants filed, in State

24   Court, an answer to Plaintiff's complaint, including as affirmative defenses the enforceability of

25   the arbitration provision and non-severable class action waiver.  Plaintiff then sent to Defendants

26   notice under the California Consumer Legal Remedies Act ("CLRA") demanding that they file an

27   amended answer withdrawing any pending affirmative defenses based on the unconscionable arbi-

28

1   tration provision.   Defendants did not comply, but the parties negotiated a stipulated agreement
2   whereby Plaintiff would first file an amended complaint.

3       Plaintiff was under the impression that Defendants would not file a motion to compel arbi-
4   tration and would eliminate from their answer the arbitration defenses.  Plaintiff believed that the
5   parties would have the "arbitration fight," if necessary, after the Ninth Circuit ruled in *Laster* and
6   *Kaltwasser*.    Plaintiff also believed that Defendants would timely respond to his discovery re-
7   quests and begin producing, in good faith, documents.  Indeed, Defendants stated in the parties'
8   joint management conference statement that "it would be more efficient to defer issues relating to
9   the arbitrability of the claims of the named plaintiff and the members of the putative class until the
10  Ninth Circuit resolves those appeals." (Dkt.# 39.)   Defendants further suggested that, if the Court
11  desired, they could file a motion to strike Plaintiff's class action allegations.  (Id.)  They did not do
12  so.

13      Shortly thereafter, Defendants filed an answer.  (Dkt.# 40.)  Defendants again asserted, as
14  affirmative defenses, the enforceability of the arbitration provision.  Plaintiff filed a motion to
15  strike.  In conjunction with that motion, Plaintiff repeatedly met-and-conferred with Defendants in
16  order to reach an agreement on an amended answer eliminating a number of the affirmative de-
17  fenses.  Defendants refused to do so.

18      Defendants now suggest that this Court should defer a decision on their motion to compel
19  arbitration.  In the interim, Defendants refuse to engage in discovery.  Under this alternative, this
20  case will sit for as long as it takes the Ninth Circuit to rule on the pending appeals.  Defendants will
21  then file for a writ of certiorari and again insist that this litigation should wait for the United States
22  Supreme Court to decide the issue.   Once the Supreme Court denies the writ, Defendants will again
23  modify the arbitration provision (as they did after they lost *Steiner*, *Laster*, *Kaltwasser* and *Apple*)
24  and the game will begin anew.

25      Should this Court be unwilling to defer a decision on the motion to compel, Defendants ar-
26  gue that it should be the very first court in the Ninth Circuit to force Plaintiff to waive his right to
27  represent a class of similarly situated persons.  Because this case is indistinguishable from *Steiner*,
28  *Laster*, *Kaltwasser* and *Apple*, this Court should decline the invitation.

1    Defendants finally oppose Plaintiff's motion to strike on much the same grounds—i.e., it

2  cannot be decided before the Ninth Circuit rules.  Other than that, however, Defendants do not

3  really dispute that the challenged affirmative defenses are improper or impertinent.  Rather, Defen-

4  dants only argue that Plaintiff is not prejudiced by the affirmative defenses, so why not leave them?

5  Like their affirmative defenses and motion to compel, this argument is without merit.

6    Defendants' motion to compel arbitration should be denied and Plaintiff's motion to strike

7  should be granted as to each affirmative defense.

8  **II.    ARGUMENT**

9    **A.    Defendants' Arbitration Provision In Defendants' Terms of Service Agreement
          Is Unconscionable and Unenforceable.**

10    Defendants would have this Court believe that this motion is about their arbitration provi-

11  sion.  In a sense it is, but that is only because Defendants elected to tie to that provision a non-

12  severable class action waiver.  While class action waivers are not, under California law, *per se* un-

13  enforceable, in *Discover Bank*, the California Supreme established that "when the [class action]

14  waiver is found in a consumer contract of adhesion in a setting in which disputes between the con-

15  tracting parties predictably involve small amounts of damages, and when it is alleged that the party

16  with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of

17  consumers out of individually small sums of money, then, at least to the extent the obligation at is-

18  sue is governed by California law, the waiver becomes in practice the exemption of the party from

19  responsibility for [its] own fraud, or willful injury to the person or property of another." *Discover

20  Bank v. Superior Court*, 36 Cal. 4th 148, 162-63 (2005).  Under such circumstances, class waivers

21  are unconscionable under California law and should not be enforced.  *Id*.

22    In this instance, both elements are present.  Specifically, this dispute concerns mobile phone

23  service, a setting that predictably involves small amounts of damages.  Plaintiff also alleges the De-

24  fendants have carried out a scheme to deliberately cheat large numbers of consumers out of indi-

25  vidually small sums of money.  The (*non-severable*) class action waiver is therefore

26  unconscionable.

27

28

6

1

**1.      The Arbitration Provision Is Procedurally Unconscionable.**

Under California law, a contract provision is unenforceable due to unconscionability if it is

both procedurally and substantively unconscionable.  *See Armendariz v. Found. Health Psychcare*

*Servs., Inc.*, 24 Cal. 4th 83, 114 (2000); *see also Discover Bank*, 36 Cal. 4th at 160.  Defendants

actually begin their motion by admitting that their class action waiver is procedurally unconscion-

able.  But Defendants claim that it is only modestly so because the non-negotiable nature of an

agreement only establishes a minimal degree of procedural unconscionability.[1]  Defendants are in-

correct.

Under California law, "[t]he procedural [unconscionability] component is satisfied by the

existence of unequal bargaining positions and hidden terms common in the context of adhesion

contracts."  *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165, 1172 (N.D. Cal.2002); *see also Flores v.*

*Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001) ("A finding of a contract of ad-

hesion is essentially a finding of procedural unconscionability.")  Defendants do not dispute this,

but argue that *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 585 (2007), dictates that only

a minimal degree of procedural unconscionability can be established in this instance.  Defendants

overstate *Gatton's* holding.  Moreover, even if Defendants were correct and there is only a trace of

procedural unconscionability, like *Gatton*, there still remains such a high degree of substantive un-

conscionability that the class action waiver still could not be enforced.

In *Gatton*, the California Court of Appeal, considered an appeal from an order denying T-

Mobile's motion to compel arbitration of actions challenging the early termination fee charged to

cellular telephone service subscribers and challenging the practice of selling locked handsets that a

subscriber cannot use when switching carriers.  T-Mobile argued that the lower court erred in con-

cluding that the arbitration clause in its service agreement was unconscionable.  T-Mobile specifi-

cally argued that because there was a "marketplace alternative," the customer had a choice and

therefore could not establish any procedural unconscionability and the substantive unconscionabil-

ity question should not have been reached.  The Court entirely disagreed and held that the adhesive

---

[1] Defendants also admit that the Ninth Circuit in *Shoyer* rejected their marketplace alternative argument.
Nonetheless, they argue the Ninth Circuit erred and this Court should reject *Shoyer* and instead look to a line
of California appellate decisions.  This argument should be summarily rejected.

7

nature of the service agreement established a minimal degree of procedural unconscionability not-withstanding the availability of market alternatives and that the high degree of substantive uncon-scionability arising from the class action waiver rendered the arbitration provision unenforceable. This is little different from this case.

Indeed, this case is actually stronger than *Gatton* because, unlike *Gatton*, there is no mar-ketplace alternative.[2]   Accordingly, Defendants' service agreement is more oppressive than the contract of adhesion in *Gatton*.  There is also an element of "surprise" that further compounds the procedural unconscionability of Defendants' agreement.  *See A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982) (defining "surprise" as "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms.")  In *Gatton*, T-Mobile apparently sought to enforce the arbitration provision that existed in the original contract given to plaintiff when he purchased a phone and signed up for service.  In this instance, Defendants have routinely modified their arbitration provi-sion to stay one step ahead of the courts.  As such, the arbitration provision that Defendants' seek to enforce is a (many times) changed provision that was unceremoniously tucked into a billing statement sent to Plaintiff.

## 2.    The Arbitration Agreement Is Substantively Unconscionable.

Defendants next argue that their (revised) arbitration agreement is not at all substantively unconscionable.  As set forth above, Defendants have not once prevailed on this argument.  The reason for this is that no matter how much ink Defendants spill portraying themselves, and their revised arbitration agreement, as "pro-consumer" and "uniquely favorable to consumers," every court has held that the revisions are largely illusory and functionally irrelevant.

In any event, it is clear that Defendants' coordinated nationwide arbitration campaign is not about consumer satisfaction.  To the contrary, it is about (1) ridding themselves of pesky consumer class actions once and for all and (2) delaying all litigation in the interim.  Instead of reiterating

---

[2] Defendants assert that Virgin Mobile offers in San Francisco mobile phone service without a mandatory class action waiver.  But Defendants fail to establish that such a "marketplace alternative" existed when Plaintiff signed up for mobile phone service and/or when they changed the terms of their service agreement. To the best of Plaintiff's knowledge, all (available) mobile phone companies when he signed up for service included in their terms of service agreements arbitration/class action waiver provisions.

each of Defendants' rejected arguments and individually addressing them, however, Plaintiff only wishes to address Defendants' arguments that all of the other decisions denying Defendants' motions to compel arbitration were incorrectly decided.

First, Defendants argue that the *Steiner* and *Apple* courts erred in treating California law as imposing an across-the-board ban on class action waivers.   In *Stiener,* the Court went through a very detailed analysis of the arbitration provision and each of Defendants' arguments before rejecting them as indistinguishable from the class action arbitration waiver in *Discover Bank*.  *See Stiener,* 2008 U.S. Dist. LEXIS 40453 at \*49 *citing Shroyer v. New Cingular Wireless Servs*., 498 F.3d 976, 986 (9th Cir. 2007) ("Because [AT&T] has failed to distinguish its class arbitration waiver from the waiver in *Discover Bank*, we hold that the former is unconscionable and unenforceable under California law.  In addition, because the class arbitration waiver is unenforceable, we must also hold that the entire arbitration clause is void.")   Such a detailed analysis would have been unnecessary if Judge Armstrong, as Defendants accuse, ruled that all class action waiver provisions are unconscionable.

 Defendants are also incorrect about Judge Ware's decision.  In *Apple*, Judge Ware expressly followed the *Steiner* opinion.  He stated that the Court "finds no substantive difference between the arguments in *Steiner* and those made by ATTM in this case."  Otherwise put, nothing in the *Apple* opinion can be read to imply that the Court was treating *Discover Bank* to impose an across-the board ban on class-action waivers.  Indeed, Judge Ware also laid out, and applied, the proper *Discover Bank* test, which would have been unnecessary if he was ruling that class-action waivers were inherently unenforceable.

Defendants next argue that the *Steiner* court also reversed the burden of proof.  This too is mistaken.  The court, in fact, stated, "[u]nder California's sliding scale, the *Stieners have shown* an adhesive contract, a lack of market alternatives, and surprise, demonstrating procedural unconscionability. Likewise, they *have shown* substantive unconscionability by showing AT&T's class arbitration waiver operates as an exculpatory clause."  *Stiener,* 2008 U.S. Dist. LEXIS 40453 at \*48-49 (emphasis added).

Defendants do argue that one court ruled correctly.  *See Makarowski v. AT&T Mobility,*

*LLC*, 2009 U.S. Dist. LEXIS 57633 (C.D. Cal. June 18, 2009).   But *Makarowski* is not at all relevant to this case.   In *Makarowski*, Judge Feess granted Defendants' motion to compel arbitration, but he specifically stated that he did not examine the class action waiver, because it was not a class case.   Moreover, the fact that this arbitration provision may be the most consumer-friendly provision that Judge Feess has seen is again irrelevant, because it includes a class action waiver, and that waiver is unenforceable.   Thus, the arbitration provision by its own terms is void, not because it is unfriendly to consumers, but because it includes an unconscionable class action waiver.   The unconscionability analysis does NOT require the court to determine whether consumers as a whole will do better in arbitration than in a class action.   Rather, *Discover Bank* is fundamentally based on the public policy favoring class actions, and its holding is that exculpatory class action waivers, like Defendants', are not enforceable.   Otherwise put, *Discover Bank* does not turn on how good the arbitration (or other alternative to class action) may be to some consumers but rather on whether the "waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.'" *Discover Bank*, 36 Cal. 4th at 162-63.

Understanding this problem, Defendants argue that Plaintiff's claim is not "small" under *Discover Bank* or *Shroyer*.   Specifically, Defendants cite *Laster* to argue that their arbitration provision is an adequate substitute for a class action because individuals may be compensated promptly and in full.   But Defendants miss the point.   The *Laster* Court struck the arbitration provision because the ***non-severable class action waiver*** was unenforceable—i.e., it was thrust upon consumers in the exact same context as *Discover Bank* and the plaintiff in that case also alleged a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.[3]   *See Laster v. T-Mobile USA, Inc.*, Civil Case No. 05-cv-1167, Order Denying Motion to Compel Arbitration at 13:12-14 (Aug. 11, 2008) (holding that Defendants' arbitration provision

---

[3] Defendants similarly argue that because *Discover Bank's* three-part test is conjunctive, the *Laster* Court erred in invalidating the class action waiver.   This is largely not relevant because the Ninth Circuit, in *Shroyer*, specifically stated that "there are most certainly circumstances in which a class action waiver is unconscionable under California law despite the fact that all three parts of the *Discover Bank* test are not satisfied, it is unnecessary to explore those circumstances here because the instant action satisfies them all and cannot be distinguished from *Discover Bank*."  *Shroyer*, 498 F.3d 983.  All three parts of the *Discover Bank* test are similarly satisfied in this instance.

10

does not sufficiently address the concerns of *Discover Bank* and provide an adequate substitute for class litigation or arbitration.)

Defendants nevertheless persist by arguing that because the amount in controversy in this case is a "fairly sizeable claim" it does not square with *Discover Bank* and *Shroyer*.  This is also based on a misreading of the law and a manufactured amount in controversy.  Defendants specifically misconstrue this particular *Discover Bank* requirement.  Contrary to Defendants' assertion, the analysis merely requires a ***setting*** in "which the contracting parties would predict disputes to involve small damages."  That is any setting, like the one at issue in this case, "*under which consumers are provided with continuing services for monthly fees in small amounts.*"  *See Cohen v. DIRECTV, Inc.*, 142 Cal. App. 4th 1442, 1452 (2006) ("DIRECTV's customer agreements, like the cardholder contracts in *Discover Bank* or other contracts under which consumers are provided with continuing services for monthly fees, are replete with examples of fees in small amounts, where potential disputes between the provider and the customer would necessarily involve 'small amounts of damages.'")  (emphasis added.)  Defendants, in fact, have previously admitted that disputes concerning their cellular phone service agreements invariably occur in a setting where the contracting parties would predict disputes to involve small damages.  *See Winig v. Cingular Wireless LLC*, 2006 U.S. Dist. LEXIS 73137 *16-17 (N.D. Cal. Sept. 27, 2006) (finding Defendant's class waiver in the arbitration clause to be unconscionable and, thus, unenforceable under California law and stating that "neither party argues that disputes over cellular phone service do not typically involve small amounts of damages").

Finally, even if this Court were to focus on Plaintiff's (unexplained) "potential" gain of $10,000, that amount would still be considered small under *Discover Bank*.  For example, the "predictably small" setting has been found, and class action waiver held unenforceable, in cases involving expensive electronics that each cost over $4,000, employment contracts where each class member could receive up to $37,000, and franchise agreements with actual damages in excess of $470,000.  *See, e.g., Alienware Corp.,* 502 F. Supp. 2d 1061, 1067-68 (N.D.Cal. 2007) (holding that individual damages of $4,000 are predictably small); *Gentry v. Superior Court*, 42 Cal. 4th 443, 456-58 (2007) *citing Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715,  (2004) (rejecting

11

1    an argument that an award as large as $37,000 defeated the *Discover Bank* analysis); *Independent*

2    *Ass'n of Mailbox Center Owners, Inc. v. Superior Court*, 133 Cal.App.4th 396, 410-11 (2005)

3    (compensatory damages alone were estimated at $470,000 per class member.)

4
5    **B.    The FAA Does Not Preempt Application Of California State Law Regarding Unconscionability Of Class Action Waivers.**

6              **1.    There is No Express Preemption.**

7          Defendants first acknowledge that the Ninth Circuit rejected their argument that California

8    law is preempted under the doctrines of express and conflict preemption in *Shroyer*.  (Def. Memo.

9    at 17:11-12.)  Nonetheless Defendants suggest that the preemption holding from *Shroyer* does not

10   govern the outcome of this case.  Specifically, Defendants argue that deeming the revised arbitra-

11   tion provision unconscionable because it incorporated a "traditional characteristic of arbitration"—

12   the lack of class relief—is to condemn arbitration itself.  This argument is without merit.

13         Arbitration can be held on either a class or individual basis, *see* American Arbitration As-

14   sociation, Supplementary Rules for Class Arbitration (adopted Oct. 2003); and it is the Defendants,

15   not the Court, who in drafting their arbitration provision, chose to bar class cases.  Moreover, the

16   provision is unconscionable not because of any special attempt to limit arbitration, but because *all*

17   contracts that bar class actions, as does Defendants' arbitration provision, are unconscionable.  As

18   the Ninth Circuit explained in *Shroyer*:

19         The California Supreme Court in *Discover Bank* placed arbitration agreements with class
           action waivers on the exact same footing as contracts that bar class actions litigation out-
20         side the context of arbitration. 36 Cal. 4th at 156-66.  To hold that California unconscion-
           ability law may be applied only to invalidate a class action waiver, but not a class action
21         arbitration waiver, would place arbitration agreements on different footing than other con-
           tracts, in direct contravention of this principal purpose of the Federal Arbitration Act.
22
     *Shroyer*, 498 F.3d at 990 (California's unconscionability law is "a generally applicable contract
23
     defense" at law, and not a state law which specifically targets arbitration agreements.) (citation
24
     omitted.); *see also Klussman v. Cross Country Bank*, 134 Cal.App.4[th] 1283, 1288 (2005) ("the
25
     FAA [] does not preempt a court from ruling on initial matters of state regarding contractual
26
     ground for revoking an arbitration agreement.")  In this regard, the Ninth Circuit specifically con-
27
     cluded that allowing unconscionable arbitration provisions to stand would not further the FAA's
28
     purpose of fostering arbitration.  *See Shroyer* 498 F.3d at 988-93; *see also Stiener*, 2008 U.S. Dist.

1   LEXIS 40453 at *50-53.[4]

2               **2.      There is No Implied Preemption.**

3           Defendants next argue that any invalidation of their arbitration provision would conflict

4   with the FAA and therefore is impliedly preempted.  Defendants again acknowledge that this ar-

5   gument was rejected in *Shroyer*.  (Def. Memo. at 19:22-20:2 stating "We recognize that the Ninth

6   Circuit rejected a similar argument in Shroyer, concluding that Congress did not intend the FAA to

7   'encourage individual arbitration and disfavor class arbitration.'")  Defendants argue nonetheless

8   that this Court is not bound by the *Shroyer* decision because it cannot be reconciled with *Preston v.*

9   *Ferrer*, 128 S. Ct. 978 (2008).  Otherwise put, Defendants suggest that *Preston* abrogates *Shroyer*.

10          *Preston* not only does not abrogate *Shroyer,* but has no application to this case whatsoever.

11  In *Preston*, the plaintiff sought payment under a management contract and to compel arbitration

12  pursuant to the contractual provision to arbitrate "'any dispute … relating to the terms of [the con-

13  tract] or the breach, validity, or legality thereof … in accordance with the rules [of the American

14  Arbitration Association].'" *Preston*, 128 S. Ct. at 981-83.  The defendant tried to avoid arbitration

15  by arguing that the plaintiff had been acting as a "talent agent" without a license, making the man-

16  agement contract invalid under the Talent Agencies Act ("TAA") (Lab. Code, § 1700, et seq.),

17  over which the Labor Commissioner had exclusive jurisdiction.  *Id*. at 982, 983.  The United States

18  Supreme Court held that the arbitration agreement required the parties to have the arbitrator, not

19  the Labor Commissioner, decide the validity of the contract.  It explained:

20          A recurring question under § 2 [of the FAA] is who should decide whether "grounds . . .
21          exist at law or in equity" to invalidate an arbitration agreement.  In *Prima Paint Corp. v.*
            *Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-404 (1967), we held that attacks on the va-
22          lidity of an entire contract, as distinct from attacks aimed at the arbitration clause, are
            within the arbitrator's ken.
23
            The litigation in *Prima Paint* originated in federal court, but the same rule, we held in
24          *Buckeye* [*Check Cashing, Inc. v. Cardegna*], applies in state court. 546 U.S. [440], at 447-

25  _____
    [4] Defendants also argue that the FAA preempts application of California law because this provision does
26  not "shock the conscience," any refusal to enforce it would run afoul of the FAA.  This argument fails, at a
    minimum, because it ignores the fact that each court that reviewed it disagreed with Defendants' categoriza-
27  tion of the arbitration provision as "exceptionally pro-customer" or with ample opportunities for "individual
    gain."  To the contrary, each court found the provision to be substantively unconscionable in that it is little
28  more than an **_exculpatory clause_**."  *See, e.g., Stiener,* 2008 U.S. Dist. LEXIS 40453 at *48-49.  (emphasis
    added.)

                                        13

448 [(2006)].

> *Buckeye* largely, if not entirely, resolves the dispute before us. …  [Defendant, the party seeking to avoid arbitration] sought invalidation of the contract as a whole [on the ground that it created an unlawful "talent agency"].  In the proceedings below, he made no discrete challenge to the validity of the arbitration clause.

*Id.* at 983-84.  Thus, the matter was for the arbitrator.  *Id.*

Here, no party seeks "invalidation of the contract as a whole."  Rather, Plaintiff argues only that the class action waiver is itself unenforceable, under general principles of law and equity.  By the express terms of the FAA, as well as Supreme Court precedent, it is up to this Court to determine whether the arbitration provision satisfies such principles before it can grant Defendants' motion to compel arbitration.  *Preston*, 128 S. Ct. at 983-84; 9 U.S.C. § 4.

Furthermore, the facts that led to a conclusion of "conflict preemption" in *Preston* do not exist here.  There, the Supreme Court found a conflict between the TAA and the FAA "in two basic respects:  First, the TAA, in § 1700.44(a), grants the Labor Commissioner exclusive jurisdiction to decide an issue that the parties agreed to arbitrate, *see Buckeye*, 546 U.S., at 446; second, the TAA, in § 1700.45 imposes prerequisites to enforcement of an arbitration agreement that are not applicable to contracts generally, *see Doctor's Associates, Inc.,* 517 U.S., at 687."  Here, the facts on both points are to the contrary.  The parties never agreed to arbitrate the question of whether the arbitration provision is enforceable; that matter is entrusted by the FAA to this Court. *Preston*, 128 S.Ct. at 983-84; 9 U.S.C. § 4.  And the state law being invoked—the doctrine of unconscionability—*is* applicable to contracts generally.

Finally, there is no import to the snippets Defendants quote from *Preston* and other cases about Congressional intent to allow streamlined proceedings in arbitration.  Defendants forget that the primary indicator of Congressional intent is the plain language of the statute itself.  The FAA expressly precludes a court from enforcing an arbitration provision that is invalid under general principles of law or equity.  *See* 9 U.S.C. § 2.  Having decided to include an unconscionable, unseverable class action waiver provision in the arbitration clause, they must litigate this case in court.  Perhaps they will take comfort that now, neither Plaintiff *nor* Defendants will have to face the downside of arbitration that they acknowledge caused them to adopt the one-sided arbitration provision: "the risk that the arbitrator [who is "only loosely bound by substantive laws"] will ren-

1  der an erroneous—and unreviewable—decision."  (Def. Memo. at 21:11-14; 21:22-22:1.)

2      C.      **Plaintiff's Motion To Strike Should Be Granted.**

3      Plaintiff timely moved to strike twenty of Defendants affirmative defenses.[5]  Plaintiff ar-

4  gues that eight of Defendants' other purported "affirmative defenses" are not defenses at all and

5  that the remaining twelve boilerplate affirmative defenses failed to provide to Plaintiff fair notice

6  of the defense.  Defendants' sparse opposition to Plaintiff's motion underscores the fact that the

7  challenged affirmative defenses are little more than the fruit of an excess of (lawyer) caution; they

8  have no factual support.

9      1.      **Defendants' Preemption Defense Should Be Stricken.**

10

11      In their Sixth Affirmative Defense, Defendants plead that Plaintiff's state law causes of ac-

12  tion are preempted by the FAA, the Federal Communications Act ("FCA"), and orders of the Fed-

13  eral Communications Commission ("FCC").  Plaintiff directly challenged the FAA preemption and

14  further argued that there are no facts to support why this case would be preempted by the FCA or

15  order of the FCC.

16      Defendants seemingly agree that they have not supported this defense as it concerns the

17  FCA or orders of the FCC.  Defendants do argue that, even if this Court denies their motion to

18  compel arbitration, it should not strike the FAA defense because the FAA would still preempt

19  Plaintiff's claim for an injunction against Defendants' arbitration provision under the CLRA.

20      Defendants first assert that Plaintiff cannot rely on the CLRA to invalidate their arbitration

21  provision because it would violate section 2 of the FAA.  This argument makes little sense.  Plain-

22  tiff does seek to invalidate Defendants' arbitration clause under the CLRA.  Rather, it is unen-

23  forceable, under general principles of law and equity because it includes a non-severable class

24  action waiver.  Contrary to Defendants' suggestion, Plaintiff employs the CLRA, not to invalidate

25  their arbitration provision, but rather as a means to recover damages for Defendants' inclusion (and

26

27  _____

[5] Defendants also argue that Plaintiff's motion is "premature."  But under the Federal Rules, Plaintiff must file a motion to strike "within 20 days after being served with the pleading."  Fed. R. Civ. Proc. 12(f)(2).

28  Defendants filed their answer on June 19, 2009. (Dkt.# 36.)  Plaintiff timely filed his motion on July 2, 2009. (Dkt.# 40.)

1  enforcement) of a class action waiver provision that has repeatedly been held to be unconscion-

2  able.  *See, e.g., Meyer v. Sprint Spectrum L.P.*, 200 P.3d 195, 302 (2009).

3        Defendants next argue that the FAA preempts the application of the CLRA to "impose the

4  wholesale injunction against ATTM's arbitration provision" because circumstances exist where

5  this arbitration provision could be enforceable to certain claims.  Defendants are again mistaken.

6  This case does not concern the wholesale injunction of this arbitration provision.  Rather, Plaintiff

7  seeks to enjoin Defendants from enforcing this class action waiver against those similarly situated

8  to him—i.e., where the parties entered substantially similar, if not identical agreements, in the con-

9  text of contracting for mobile phone services, and where they allege that Defendants engaged in

10  the scheme to deliberately cheat large numbers of consumers out of individually small sums of

11  money.

12        More fundamentally, the Ninth Circuit has held that California law provides that certain

13  "public injunctions" are incompatible with arbitration and that such a holding is consistent with the

14  FAA.  *See Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007) ("California law provides

15  that certain 'public injunctions' are incompatible with arbitration (and that such a holding is con-

16  sistent with the FAA.")   The Ninth Circuit further stated that actions seeking such injunctions

17  cannot be subject to arbitration even under a valid arbitration clause.  *Id. citing Broughton v. Cigna*

18  *Healthplans of Cal.*, 21 Cal. 4th 1066 (1999) (holding that a claim for public injunctive relief un-

19  der the CLRA is not arbitrable, although damage claims under the CLRA are arbitrable); *Cruz v.*

20  *PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303 (2003) (extending *Broughton* to claims for public in-

21  junctive relief under California's unfair competition law, Business and Professions Code § 17200

22  et seq.); *Zavala v. Scott Brothers Dairy, Inc.*, 143 Cal. App. 4th 5850 (2006) ("Certainly, plaintiffs'

23  injunctive relief claim under the unfair business practices act (Bus. & Prof. Code, § 17200) is not

24  arbitrable.")   Even if Defendants' class action waiver and arbitration provision were not uncon-

25  scionable, the FAA would still not preempt Plaintiff's claims for injunctive relief.  Defendants'

26  preemption defense should be stricken.

27

28

**2.      Plaintiff Is Not Required To Show That He Is Prejudiced By The Af-
firmative Defenses.**

Defendants next contend that Plaintiff's motion to strike should be rejected because Plain-
tiff has failed to show prejudice.[6]  In support of this argument Defendants cite a single case, *Smith
v. Wal-Mart Stores,* 2006 U.S. Dist. LEXIS 72225 (N.D. Cal. Sept. 20, 2006) and Wright & Miller.
Defendants, however, overstate both authorities.

To begin with, while the *Smith* Court arguably required a plaintiff to show prejudice, it still
struck a number of affirmative defenses because they did not provide to plaintiff fair notice of the
defense.  *See Smith,* 2006 U.S. Dist. LEXIS 72225 at *18-*25.  The Court additionally held, seem-
ingly without regard to a plaintiff's prejudice, that if a pleading is deficient, it may strike the plead-
ing and require the non-moving party to submit an amended pleading which includes more specific
allegations.  *Id. citing Townshend v. Rockwell Intern. Corp.*, 2000 U.S. Dist. LEXIS 5070 *4 (N.D.
Cal. 2000) *citing Farlow v. Union Central Life Insurance Company*, 874 F.2d 791 (11th Cir.
1989).

This Court is also not bound by *Smith,* especially because its prejudice requirement repre-
sents the minority view.  In fact, rarely is a showing of prejudice required to succeed on a Rule
12(f) motion.  *See, e.g., Securimetrics, Inc. v. Hartford Cas. Ins. Co.*, 2005 U.S. Dist. LEXIS
43533 (N.D. Cal. Oct. 4, 2005) (Wilken, J.); *Monolithic Power Sys. v. 02 Micro Int'l Ltd.*, 2006
U.S. Dist. LEXIS 78601 (N.D. Cal. Oct. 18, 2006) (Wilken, J.); *02 Micro Int'l Ltd. v. Monolithic
Power Sys.*, 2004 U.S. Dist. LEXIS 30244 (N.D. Cal. Feb. 11, 2004) (Wilken, J.)  Rather, as this
Court has typically held, "the purpose of a Rule 12(f) motion is to avoid spending time and money
litigating spurious issues*." See, e.g., Monolithic Power Sys.*, 2006 U.S. Dist. LEXIS 78601 at * 12
*citing Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993).  According to the Ninth Cir-
cuit, motions to strike are proper if striking part of a pleading would make trial less complicated or
otherwise streamline the ultimate resolution of the action.  *See Sidney-Vinstein v. A.H. Robins Co.*,
697 F.2d 880, 885 (9th Cir. 1983).  Irrespective of prejudice to the Plaintiff, striking each of the

[6] Defendants also contend that because a motion to compel arbitration is pending, Plaintiff's motion to
strike is premature.  This argument is addressed in Plaintiff's opposition to Defendants' motion to stay dis-
covery.

1   defenses would serve to streamline this case and make trial less complicated.

2       Finally, Wright & Miller is seemingly discussing motions to strike a complaint.  In any

3   event, Defendants selectively cite Wright & Miller.  Wright & Miller actually states that "there ap-

4   pears to be *general* judicial agreement, as reflected in the extensive case law on the subject, that

5   they should be denied unless the challenged allegations have no possible relation or logical con-

6   nection to the subject matter of the controversy and may cause some form of significant prejudice

7   to one or more of the parties to the action."  5C Alan Wright & Arthur Miller, *Federal Practice &*

8   *Procedure* § 1382 (3d 3ed. Supp 2009).  (emphasis supplied.)  Notably, Wright & Miller does not

9   cite a single case from the Ninth Circuit to support this "general" proposition.  *Id.*

10                  **3.      Plaintiff Is Prejudiced By The Delay And Confusion That These Af-
                            firmative Defenses Have Caused.**

11

12       Even if prejudice was required, Plaintiff is by definition prejudiced by the necessity of con-

13   tending with immaterial and impertinent defenses that—as evidenced by Defendants' motion to

14   compel arbitration and preemption defense—delay and confuse this litigation.   The Ninth Circuit

15   has, in fact, established that prejudice can arise from allegations that cause delay or confusion of

16   the issues.  *See, e.g., Fantasy*, 984 F.2d at 1528; *see also Sidney-Vinstein*, 697 F.2d at 885.

17   Moreover, it has been held that where defendants have not given "fair notice" of the defense being

18   advanced, a plaintiff will suffer prejudice in the form of delay and confusion if this defense is not

19   stricken.  *See, e.g., Solis v. Zenith Capital, LLC*, 2009 U.S. Dist. LEXIS 43350 at * 11 (N.D. Cal.

20   May 8, 2009); *Ganley v. County of San Mateo*, 2007 U.S. Dist. LEXIS 26467 (N.D. Cal. Mar. 22,

21   2007).  In this instance, each of the challenged affirmative defenses are boilerplate and without

22   factual support.  While Plaintiff does not oppose leave to amend, simply ignoring these affirmative

23   defenses and allowing them to stand will only needlessly complicate the ultimate resolution of the

24   action.[7]  *See, e.g., California v. United States*, 512 F. Supp. 36, 38 (N.D. Cal. 1981).

25       Defendants next argue that Plaintiff is mistaken and, in fact, there are facts "inferable from

26

27   [7] Defendants also argue that they risk waiving their affirmative defenses if they omit them from an answer.
    Even if this were the case, Defendants could simply file a Rule 15 motion and later amend their answer.
    Granting this motion to strike affirmative defenses will also not prejudice Defendants since leave to amend

28   pleadings is freely granted as justice requires.  *See Heller Financial, Inc. v. Midwest Powder Co., Inc.*, 883
    F.2d 1286, 1294 (7th Cir. 1989).

                                                    18

the pleadings" and the descriptions of their defenses to satisfy the pleading standard.  Again, Defendants' citation to these so-called "inferable facts" is anemic.  In fact, Defendants only really contend that their reference to California Code of Civil Procedure section 338 and Plaintiff's own reference to certain statutes clarifies their statute of limitations defense.

Even if Plaintiff were to infer that this particular affirmative defense only concerns (or is limited to) section 338, Defendants still fail to explain how Plaintiff has violated section 338.  Section 338 requires that this suit be filed "within three years."  Cal.  Code. Civ. Proc. § 338.   But as is explained in Plaintiff's motion, he filed suit less than one year after incurring the unlawful charges.  This defense remains entirely unexplained and unsupported.

Understanding the flimsy nature of this argument, Defendants finally suggest that (some of) their affirmative defenses are also aimed at absent class members; thereby Defendants should get a free pass until they can "develop facts" about putative class members.  This makes little sense.  Defendants do not specify what kind of facts they might develop from putative class that might subject them to unique defenses.  Even if they were to develop such facts, they can seek leave to amend their answer and/or assert such facts in opposition to class certification.  More fundamentally, if these defenses apply only to absent class members they should so plead and provide to Plaintiff information concerning how these defenses might apply to class members.    Indeed, that is exactly what is contemplated by the Federal Rules.

**III.    CONCLUSION**

For the reasons set forth above, Defendants' motion to compel arbitration should be denied and their First, Second, Fourth, Sixth, Seventh, Twelfth, Thirteenth, Fifteenth, Sixteenth, Seventeenth, Eighteenth, Twentieth, Twenty-First, Twenty-Fourth, Twenty-Fifth, Twenty-Sixth, Twenty-Seventh, Twenty-Eight, Twenty-Ninth and Thirty-First Affirmative Defenses should be stricken from their Answer to Plaintiff's First Amended Complaint**.**

DATE:  August 13, 2009

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GUTRIDE SAFIER LLP
ADAM J. GUTRIDE
SETH A. SAFIER

/s/ Seth A. Safier

_____
Seth A. Safier
Attorneys for *Plaintiff*

1

**PROOF OF SERVICE**

2

I, Seth A. Safier, declare:

3

My business address is 835 Douglass Street, San Francisco, California.  I am employed in the County of San Francisco, where this mailing occurs.  I am over the age of 18 years and not a party to the within cause.

4

5

On August 13, 2009, I served the following documents:

6

**PLAINTIFF'S CONSOLIDATIED OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARRBITRATION AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES**

7

8

9

on the following person(s) in this action by placing a true copy thereof as follows:

10

John Nadolenco
Joseph Goodman
Mayer Brown LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
phone:  (213) 229-5173
fax:  (213) 625-0248
email:  jnadolenco@mayerbrown.com
jgoodman@mayerbrown.com

11

12

13

14

15

16

[x]      BY ELECTRONIC MAIL.  I caused said documents to be transmitted by electronic mail to the email address indicated after the address(es) via ECF.

17

18

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this document was executed on August 13, 2009, at San Francisco, California.

19

20

/s/Seth A. Safier

21

_____
Seth A. Safier, Esq.
835 Douglass Street
San Francisco, California 94114

22

23

Attorneys for Plaintiff

24

25

26

27

28

1