**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STEVEN MCARDLE, an individual, on
behalf of himself, the general public
and those similarly situated,

        Plaintiff,

   v.

AT&T MOBILITY LLC; NEW CINGULAR
WIRELESS PCS LLC; and NEW CINGULAR
WIRELESS SERVICES, INC.,

        Defendants.

_____/

No. C 09-1117 CW

ORDER DENYING
DEFENDANTS' MOTION
TO COMPEL
ARBITRATION AND
GRANTING IN PART AND
DENYING IN PART
PLAINTIFF'S MOTION
TO STRIKE PORTIONS
OF THE ANSWER

    Plaintiff Steven McArdle charges Defendants AT&T Mobility LLC,

New Cingular Wireless PCS LLC and New Cingular Wireless Services,

Inc. with unlawfully imposing certain fees in connection with

providing cellular telephone services.  Defendants now move for an

order compelling Plaintiff to submit his claims to binding

arbitration pursuant to the terms of a service agreement between

the parties.  Plaintiff opposes the motion and moves to strike a

number of defenses from the answer.  The matters were heard on

September 3, 2009.  Having considered oral argument and all of the papers submitted by the parties, the Court denies Defendants' motion and grants Plaintiff's motion in part and denies it in part.

BACKGROUND

AT&T Mobility is a cellular telephone service provider.  It owns New Cingular Wireless PCS LLC and New Cingular Wireless Services, Inc.  Plaintiff is a customer of AT&T's.

According to the complaint, Defendants impose the following charges, among others, on customers who turn on their phones outside the United States: 1) a charge every time their telephone rings to alert them of an incoming call, even if the call is not answered; 2) a charge every time a notification is sent to their telephone alerting them that a voicemail message has been left, even if the message is not retrieved; and 3) an international data transfer fee, imposed in connection with sending text, video or picture messages, above and beyond the higher rate that already applies to sending such messages from abroad.  Plaintiff asserts that these charges are not disclosed to customers.

Plaintiff incurred approximately fourteen dollars' worth of these "international roaming fees" when he used his phone in Italy. He now asserts claims under California law for false advertising, unfair business practices, fraud and violation of the Consumers Legal Remedies Act.

Plaintiff's service agreement with Defendants contains an arbitration provision that requires the parties to the agreement to arbitrate "all disputes and claims" between them.  The provision prohibits Defendants' customers from pursuing claims in arbitration on behalf of a class of individuals.  According to its express

2

United States District Court
For the Northern District of California

1   terms, the prohibition on class arbitration is not severable from

2   the rest of the arbitration provision.

3                                DISCUSSION

4   I.   Motion to Compel Arbitration

5        A.   Legal Standard

6        Under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq.,

7   written agreements that controversies between the parties shall be

8   settled by arbitration are valid, irrevocable, and enforceable.

9   9 U.S.C. § 2.  A party aggrieved by the refusal of another to

10  arbitrate under a written arbitration agreement may petition the

11  district court which would, save for the arbitration agreement,

12  have jurisdiction over that action, for an order directing that

13  arbitration proceed as provided for in the agreement.  9 U.S.C.

14  § 4.  The FAA further provides that:

15      If any suit or proceeding be brought in any of the courts
        of the United States upon any issue referable to
16      arbitration under an agreement in writing for such
        arbitration, the court in which such suit is pending,
17      upon being satisfied that the issue involved in such suit
        or proceeding is referable to arbitration under such an
18      agreement, shall on application of one of the parties
        stay the trial of the action until such arbitration has
19      been had in accordance with the terms of the
        agreement . . . .
20
    9 U.S.C. § 3.
21
        If the court is satisfied "that the making of the arbitration
22
    agreement or the failure to comply with the agreement is not in
23
    issue, the court shall make an order directing the parties to
24
    proceed to arbitration in accordance with the terms of the
25
    agreement."  Id.  The FAA reflects a "liberal federal policy
26
    favoring arbitration agreements."  Gilmer v. Interstate/Johnson
27
    Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem.
28

United States District Court
For the Northern District of California

Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).  A district court must compel arbitration under the FAA if it determines that: 1) there exists a valid agreement to arbitrate; and 2) the dispute falls within its terms.  Stern v. Cingular Wireless Corp., 453 F. Supp. 2d 1138, 1143 (C.D. Cal. 2006) (citing Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000)).  Here, the parties do not dispute that the present dispute falls within the terms of the service agreement's arbitration provision.  The only question is whether the arbitration provision is valid.

B.   Unconscionability

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Under this provision, "general contract defenses such as fraud, duress or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements."  Circuit City Stores v. Adams, 279 F.3d 889, 892 (9th Cir. 2002).

Under California law, "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."  Cal. Civ. Code § 1670.5(a).

Unconscionability has both a procedural and a substantive component.  Both components must be present before a court may refuse to enforce a contract.  Armendariz v. Found. Health Psychcare Servs., 24 Cal. 4th 83, 114 (2000).  However, they need

4

not be present to the same degree; "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id.

A contract is procedurally unconscionable if it is a contract of adhesion. Circuit City, 279 F.3d at 893 ("The [arbitration agreement] is procedurally unconscionable because it is a contract of adhesion."); see also Flores v. Transamerica Homefirst, Inc., 93 Cal. App. 4th 846, 853 (2002) ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability."). A contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Armendariz, 24 Cal. 4th at 113 (quoting Neal v. State Farm Ins. Co., 188 Cal. App. 2d 690, 694 (1961)). Defendants do not dispute that the service agreement at issue here is a contract of adhesion, although they maintain that any procedural unconscionability is "minimal." Rather, Defendants assert that any procedural unconscionability that may exist is not sufficient to render the arbitration provision unenforceable because the provision is not substantively unconscionable at all.

Substantive unconscionability focuses on the harshness and one-sided nature of the terms of the contract. A & M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 486-87 (1982). In Discover Bank v. Superior Court, 36 Cal. 4th 148 (2005), the California Supreme Court noted that class action waivers are substantively unconscionable "inasmuch as they may operate effectively as exculpatory contract clauses," because "[a]ll contracts which have

United States District Court
For the Northern District of California

for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Id. at 161 (quoting Cal. Civ. Code § 1668). Addressing the interplay between substantive and procedural unconscionability, the court stated that, "at least under some circumstances, the law in California is that class action waivers in consumer contracts of adhesion are unenforceable, whether the consumer is being asked to waive the right to class action litigation or the right to classwide arbitration." Id. at 153. The court explained the circumstances in which such a waiver will be unconscionable:

> We do not hold that all class action waivers are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party from responsibility for its own fraud, or willful injury to the person or property of another. Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

Id. at 162-63 (citation, internal quotation marks and alteration marks omitted).

In Shroyer v. New Cingular Wireless Services, Inc., 498 F.3d 976 (9th Cir. 2007), the Ninth Circuit applied Discover Bank to a previous version of the class arbitration waiver that is at issue in this case. The court noted that:

> California Courts of Appeal have construed Discover Bank as providing for a three-part inquiry in order to determine whether a class action waiver in a consumer

United States District Court
For the Northern District of California

1    contract is unconscionable.  Under this three-part
2    inquiry, courts are required to determine: (1) whether
     the agreement is a consumer contract of adhesion drafted
     by a party that has superior bargaining power;
3    (2) whether the agreement occurs in a setting in which
     disputes between the contracting parties predictably
4    involve small amounts of damages; and (3) whether it is
     alleged that the party with the superior bargaining power
5    has carried out a scheme to deliberately cheat large
     numbers of consumers out of individually small sums of
6    money.

7    Id. at 983 (citations and internal quotation marks omitted).  The

8    court also noted, "Although there are most certainly circumstances

9    in which a class action waiver is unconscionable under California

10   law despite the fact that all three parts of the Discover Bank test

11   are not satisfied," it is "unnecessary to explore those

12   circumstances" in cases where all three parts of the test are

13   satisfied.  Id.  Shroyer itself was one such case; the court

14   concluded that the class arbitration waiver satisfied all three

15   parts of the Discover Bank test, which rendered the arbitration

16   provision unenforceable because of a

17   non-severability clause.

18       All three parts of the Discover Bank test are satisfied by the

19   class arbitration waiver in the present case as well.  First, it is

20   undisputed that the service agreement is a consumer contract of

21   adhesion.  Second, as Shroyer held, disputes between cellular

22   telephone service providers and their customers predictably involve

23   small amounts of damages.  See id. at 984.  The present case, in

24   which Plaintiff alleges that he suffered only fourteen dollars in

25   damages as a result of Defendants' unlawful fees, exemplifies the

26   point.  Third, Plaintiff alleges that Defendants have engaged in a

27   scheme whereby they charge international roaming fees that are

28   relatively small with respect to individual customers, but which

                                  7

nonetheless provide Defendants with tens of millions of dollars of annual income. The class arbitration waiver is an inherent part of this scheme because, while customers may be able to recover the fees they were charged individually, most customers will not bother with arbitration over such a small amount of money, and thus Defendants will be able to keep the vast majority of their ill-gotten profits.

Notwithstanding the clarity of the holdings in <u>Discover Bank</u> and <u>Shroyer</u>, Defendants argue that the arbitration provision in Plaintiff's service agreement is enforceable because it contains a number of "pro-consumer" features. Defendants point to the following features in particular: 1) customers are not required to pay for the cost of arbitration for claims of up to $75,000; 2) if the arbitrator awards the customer more than Defendants' last written settlement offer before an arbitrator was selected, Defendants will pay the customer the greater of $10,000 or the arbitral award; 3) if the arbitrator awards the customer more than Defendants' last written settlement offer, Defendants will pay the customer's attorney twice the amount of the attorney's fees incurred; 4) Defendants will refrain from seeking attorneys' fees from customers, even though they may be entitled to such fees under applicable law; 5) either party may bring an action in small claims court in lieu of initiating arbitration proceedings; 6) the arbitrator can award the same remedies to individual customers that a court could award; 7) arbitration is conducted under the American Arbitration Association's commercial dispute resolution procedures, which are designed with consumers in mind; 8) arbitration takes place in the county of the customer's billing address; and 9) the

customer has the option of having a hearing either in-person or by telephone, or having no hearing at all.

The Court agrees with Defendants that these features are desirable and increase the fairness of the arbitration process to customers. Nonetheless, these features do not change the fact that the <u>class arbitration waiver</u> is substantively unconscionable. In <u>Shroyer</u>, Defendants also raised the consumer-friendly nature of the previous version of the arbitration provision in an attempt to avoid a finding of unconscionability:

> Cingular contends that the class arbitration waiver at issue here is not substantively unconscionable because, unlike the waiver in <u>Discover Bank</u>, it does not operate to "insulate a party from liability that otherwise would be imposed under California law," or exempt Cingular "from responsibility for [its] own fraud, or willful injury to the person or property of another." 36 Cal. 4th at 161. The main difference, according to Cingular, is that under its arbitration clause Cingular pays for the full cost of arbitration -- so long as a claim is not brought under circumstances that would result in sanctions under the standard in Rule 11(b) of the Federal Rules of Civil Procedure -- and plaintiffs who receive awards that are equal to or greater than their demands receive attorneys' fees. As a result, Cingular asserts that the arbitration clause does not deter customers from arbitrating individual small-value claims and does not insulate Cingular from liability.

498 F.3d at 986 (alteration in original). The Ninth Circuit rejected Defendants' argument:

> Cingular's attempt to distinguish <u>Discover Bank</u> based on the availability of attorneys' fees and arbitration costs is without merit. The California Supreme Court in <u>Discover Bank</u> rejected "the rationale . . . that the potential availability of attorney fees to the prevailing party in arbitration or litigation ameliorates the problem posed by such class action waivers." 36 Cal. 4th at 162 (citations omitted). As the court reasoned, "[t]here is no indication . . . that, in the case of small individual recovery, attorney fees are an adequate substitute for the class action or arbitration mechanism." <u>Id.</u> This rationale applies with equal force to arbitration costs, which are almost always far less than attorneys' fees. Contrary to Cingular's contention,

9

United States District Court
For the Northern District of California

> the court was concerned that when the potential for
> individual gain is small, very few plaintiffs, if any,
> will pursue individual arbitration or litigation, which
> greatly reduces the aggregate liability a company faces
> when it has exacted small sums from millions of
> consumers.  See id. at 158-62.  It did not suggest that a
> waiver is unconscionable only when or because a plaintiff
> in arbitration may experience a net loss (including
> attorneys' fees and costs).

498 F.3d at 986 (footnote omitted; alterations in original).

In Defendants' view, the revised arbitration provision resolves the problems identified in Shroyer because customers can, under certain circumstances, recover $10,000 from arbitration even if their actual damages were much smaller.  Accordingly, Defendants argue, there is an adequate incentive even for customers with small claims to pursue arbitration.  This argument is unpersuasive. Defendants' customers are only entitled to $10,000 if the arbitrator awards them more than Defendants' last written settlement offer before the arbitrator was selected.  Thus, Defendants can eliminate the incentive to arbitrate small claims merely by offering to refund the charges on an individual basis. In addition, it is far from clear that Defendants' customers are generally aware of the details of the arbitration procedures. Without knowledge of the potential for a $10,000 recovery, there is no incentive for customers to pursue arbitration.  More importantly, the fact remains that many customers, if not most, are not likely to dispute the charges in the first place, whether informally or through arbitration.  Defendants have established a system whereby they can continue to keep the profits from their allegedly unlawful charges so long as they offer to refund the charges to the few customers who dispute them.  In this way, the unavailability of class arbitration "greatly reduces the aggregate

10

United States District Court
For the Northern District of California

liability" faced by Defendants for their exaction of "small sums from millions of consumers." <u>Shroyer</u>, 498 F.3d at 986.

The Court concludes that the class arbitration waiver is unconscionable.  Because it is expressly not severable from the other portions of the arbitration provision, the arbitration provision is not enforceable.  The Court notes that at least five other district courts within the Ninth Circuit have reviewed the exact arbitration provision at issue here and have reached this same conclusion.  <u>See</u> <u>Coopwood v. AT&T Mobility LLC</u>, No. CV 08-3683 (C.D. Cal. Aug. 14, 2009); <u>Stiener v. Apple Computer, Inc.</u>, 556 F. Supp. 2d 1016 (N.D. Cal. 2008); <u>In re Apple & AT & TM Antitrust Litig.</u>, 596 F. Supp. 2d 1288 (N.D. Cal. 2008); <u>Laster v. T-Mobile USA, Inc.</u>, 2008 WL 5216255 (S.D. Cal.); <u>Kaltwasser v. Cingular Wireless LLC</u>, 543 F. Supp. 2d 1124 (N.D. Cal. 2008).

C.   Preemption

1. Express preemption

Defendants argue that, even if the class waiver is unconscionable under California law, a finding that the arbitration provision is unenforceable due to unconscionability would be expressly preempted by the FAA because such a finding would impermissibly "impose[] prerequisites to enforcement of an arbitration agreement that are not applicable to contracts generally." <u>Preston v. Ferrer</u>, ___ U.S. ___, 128 S. Ct. 978, 985 (2008).  As Defendants note, "state law, whether of legislative or judicial origin," is not preempted by § 2 of the FAA "if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally," whereas a "state-law principle that takes its meaning precisely from the fact that a

11

contract to arbitrate is at issue does not comport with this
requirement of § 2" and is preempted.  <u>Perry v. Thomas</u>, 482 U.S.
483, 492 n. 9 (1987).

Defendants' express preemption argument has been rejected
numerous times:

> The California Supreme Court in <u>Discover Bank</u> soundly
> rejected this very same express preemption argument that
> Cingular now makes, 36 Cal. 4th at 163-66, and we have
> done so in two prior decisions that held that class
> action waivers were unconscionable under California law
> and applied the same generally applicable California
> unconscionability principles as the California court in
> <u>Discover Bank</u>.  <u>Ingle v. Circuit City Stores, Inc.</u>, 328
> F.3d 1165, 1176 n.15 (9th Cir. 2003); <u>Ting v. AT&T</u>, 319
> F.3d 1126, 1150 n.15 (9th Cir. 2003).  The rule announced
> in <u>Discover Bank</u> is simply a refinement of the
> unconscionability analysis applicable to contracts
> generally in California, as discussed in <u>Armendariz v.</u>
> <u>Foundation Health Psychcare Services, Inc.</u>, 24 Cal. 4th
> 83 (2000).  As we explained in <u>Ingle</u>, "the <u>Armendariz</u>
> court applied ordinary principles of contract law in
> evaluating the arbitration agreement in that case" and
> its analysis "was fully consistent with federal law."
> 328 F.3d at 1170 n. 3; <u>see also</u> <u>Am. Online, Inc. v.</u>
> <u>Super. Ct.</u>, 90 Cal. App. 4th 1, 17-18 (2001) (refusing to
> enforce forum selection clause that effectively waived
> class action relief under the California Consumers Legal
> Remedies Act).

<u>Shroyer</u>, 498 F.3d at 987 (citation format altered).  As the Ninth
Circuit explained in <u>Ting</u>:

> Because unconscionability is a generally applicable
> contract defense, it may be applied to invalidate an
> arbitration agreement without contravening § 2 of the
> FAA.  <u>See</u> <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S.
> 681, 687 (1996).  We recognize . . . that the FAA
> preempts state laws of limited applicability . . . but we
> follow well-settled Supreme Court precedent in rejecting
> the proposition that unconscionability is one of those
> laws.  <u>See</u> <u>id.</u> at 686-87 (stating that the Act "declares
> that state law may be applied if that law arose to govern
> issues concerning validity, revocability, and
> enforceability of contracts generally," and holding that
> "generally applicable contract defenses, such as fraud,
> duress or <u>unconscionability</u>, may be applied to invalidate
> arbitration agreements without contravening" the FAA)
> (emphasis added).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   319 F.3d at 1150 n. 15.

2       Defendants offer no persuasive basis for distinguishing

3   Shroyer and the other cases that have rejected their express

4   preemption argument.  They state only that it would take "far more

5   than a mere 'refinement' of California's unconscionability standard

6   . . . to justify refusing to enforce ATTM's revised arbitration

7   provision, which was not before the Shroyer court."  Mot. at 18

8   (emphasis in original).  Rather, they argue, any finding of

9   unconscionability would be a "total distortion of" and "is

10  manifestly not" California law.  Id. at 18-19.  The Court is not

11  persuaded that its conclusion regarding unconscionability, which

12  flows directly from the California Supreme Court's decision in

13  Discover Bank, is a total distortion of California law.

14      Ingle, Ting, Shroyer and Discover Bank foreclose Defendants'

15  express preemption argument.

16          2.   Conflict Preemption

17      "Conflict preemption, a form of implied preemption, exists if

18  compliance with both federal and state law is impossible, or where

19  state law stands as an obstacle to the accomplishment and execution

20  of the full purposes and objectives of Congress."  Shroyer, 498

21  F.3d at 988 (internal quotation marks omitted).  However, mere

22  "tension between federal and state law is not enough to establish

23  conflict preemption."  Id. (internal quotation marks omitted).

24  Rather, conflict preemption will exist "only in those situations

25  where conflicts will necessarily arise."  Id. (internal quotation

26  marks omitted).

27      Defendants argue that, even if the class arbitration waiver is

28  unconscionable, and even if a finding of unenforceability due to

13

unconscionability is not expressly preempted, such a finding is nonetheless impliedly preempted because it conflicts with the FAA's purpose of favoring arbitration agreements.

In Shroyer, Defendants raised the same argument that "a broad reading of Discover Bank that invalidates [their] allegedly consumer-friendly arbitration clause would stand as an obstacle to the accomplishment and execution of the full purposes and objective of Congress in enacting the [FAA] and would be preempted under the doctrine of conflict preemption." 498 F.3d at 988 (internal quotation marks omitted). And, like the other arguments Defendants advance in support of their motion, the Ninth Circuit rejected this one as well.

Defendants apparently concede that their conflict preemption argument fails under Shroyer, but they argue that the Supreme Court's subsequent decision in Preston implicitly overruled Shroyer on this point. In Preston, the Court considered whether the California Labor Commissioner could, consistent with the FAA, determine that a contract which contained an arbitration provision was invalid and unenforceable under the California Talent Agencies Act. The Labor Commissioner had primary jurisdiction over the Talent Agencies Act claim. The Supreme Court held that, "when parties agree to arbitrate all questions arising under a contract, state laws lodging primary jurisdiction in another forum, whether judicial or administrative, are superseded by the FAA." 128 S. Ct. at 981. Thus, the validity of the contract was for the arbitrator, not the Labor Commissioner, to decide.

Preston's holding has no bearing on the issue of conflict preemption presented on this motion. In support of their argument

14

United States District Court
For the Northern District of California

that <u>Preston</u> overruled <u>Shroyer</u>, Defendants point only to the
Supreme Court's rejection of the argument that allowing the Labor
Commissioner to determine the validity of the contract in the first
instance would merely postpone arbitration until after the
Commissioner exercised her primary jurisdiction, and therefore did
not conflict with the goals of the FAA.  In doing so, the Court
noted that arbitration, "if it ever occurred following the Labor
Commissioner's decision, would likely be long delayed, in
contravention of Congress' intent to move the parties to an
arbitrable dispute out of court and into arbitration as quickly and
easily as possible.'"  128 S. Ct. at 986 (internal quotation marks
omitted).  Defendants extrapolate from this remark that
invalidating an arbitration provision that does not permit
arbitration on a class-wide basis would conflict with the FAA's
preference for speedy resolution of controversies, because
resolving disputes through class arbitration would take much longer
than resolving disputes on an individual basis.  The Court finds no
support for this argument in <u>Preston</u>.  If Defendants were correct,
then class arbitration itself would be preempted by the FAA.  This
is clearly not the case.

     Moreover, the Court is bound by <u>Shroyer</u> unless <u>Preston</u> has
"undercut the theory or reasoning underlying" <u>Shroyer</u> such that the
two cases "are clearly irreconcilable." <u>Miller v. Gammie</u>, 335 F.3d
889, 900 (9th Cir. 2003).  If <u>Preston</u> has any application to the
present case, it is a tenuous one.  In no event is <u>Preston</u> clearly
irreconcilable with <u>Shroyer</u>, which ruled on the precise arguments
that Defendants raise.

     The Court concludes that Defendants' conflict preemption

15

1    argument is foreclosed by <u>Shroyer</u>.

2    II.   Motion to Strike

3         Plaintiffs move to strike several of Defendants' affirmative

4    defenses pursuant to Federal Rule of Civil Procedure 12(f).  Under

5    Rule 12(f), the Court may strike from a pleading "any insufficient

6    defense or any redundant, immaterial, impertinent or scandalous

7    matter."  The purpose of a Rule 12(f) motion is to avoid spending

8    time and money litigating spurious issues.  <u>See</u> <u>Fantasy, Inc. v.</u>

9    <u>Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1993), <u>rev'd on other</u>

10   <u>grounds</u>, 510 U.S. 517 (1994).  A defense is insufficient if it

11   fails to give the plaintiff fair notice of the nature of the

12   defense.  <u>See</u> <u>Wyshak v. City Nat'l Bank</u>, 607 F.2d 824, 827 (9th

13   Cir. 1979).  Matter is immaterial if it has no essential or

14   important relationship to the claim for relief pleaded.

15   <u>See</u> <u>Fogerty</u>, 984 F.2d at 1527.  Matter is impertinent if it does

16   not pertain and is not necessary to the issues in question in the

17   case.  <u>See</u> <u>id.</u>

18        Although the Ninth Circuit has not ruled on the proper use of

19   a Rule 12(f) motion to strike an affirmative defense, three other

20   circuits have ruled that the motion is disfavored and should only

21   be granted if the asserted defense is clearly insufficient as a

22   matter of law under any set of facts the defendant might allege.

23   As the Second Circuit has explained:

24        A motion to strike an affirmative defense . . . for legal
          insufficiency is not favored and will not be granted "unless
25        it appears to a certainty that plaintiffs would succeed
          despite any state of the facts which could be proved in
26        support of the defense."  Moreover, even when the facts are
          not disputed, several courts have noted that a "motion to
27        strike for insufficiency was never intended to furnish an
          opportunity for the determination of disputed and substantial
28        questions of law.". . . This is particularly so when, as here,

United States District Court
For the Northern District of California

16

1    there has been no significant discovery.

2    Even when the defense presents a purely legal question, the
     courts are very reluctant to determine disputed or substantial
3    issues of law on a motion to strike; these questions quite
     properly are viewed as determinable only after discovery and a
4    hearing on the merits.  To do otherwise would be to run the
     risk of offering an advisory opinion on an abstract and
5    hypothetical set of facts.

6    See William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.,

7    744 F.2d 935, 939 (2d Cir. 1984) (citation and quotation marks

8    omitted); accord Lunsford v. United States, 570 F.2d 221, 229-30

9    (8th Cir. 1977)(court should deny motion to dismiss a defense as

10   insufficient as a matter of law if complete development of the

11   factual record might avoid the need to decide an unresolved

12   question of law); Augustus v. Board of Public Instruction, 306 F.2d

13   862, 868 (5th Cir. 1962)(court should grant motion to strike only

14   if the pleading has no possible relation to the controversy);

15   Moore's Federal Practice 3d, § 12.37[1], [4] (Rule 12(f) motions

16   are general disfavored and motions to strike defenses should be

17   denied if sufficiency of defense depends on disputed issues of fact

18   or questions of law).

19        B. Defendants' Second Affirmative Defense

20        Plaintiff moves to strike Defendants' second affirmative

21   defense.  Defendants' second affirmative defense asserts that the

22   service agreement's arbitration provision precludes this lawsuit.

23   Because the Court finds the arbitration clause unenforceable, the

24   Court strikes this affirmative defense.

25        C. Defendants' Sixth Affirmative Defense

26        Plaintiff also moves to strike the reference to the Federal

27   Arbitration Act in Defendants' sixth affirmative defense.

28   Defendants' sixth affirmative defense asserts that Plaintiff "fails

17

**United States District Court**
For the Northern District of California

to state facts sufficient to constitute a cause of action created
by or recognized under any California statute, regulation or common
law, because state-law causes of action as alleged in the First
Amended Complaint have been preempted in their entirety by federal
law, including the Federal Arbitration Act and the Federal
Communications Act and orders of the Federal Communications
Commission." Above, the Court found that the Federal Arbitration
Act does not preempt the application of California's
unconscionability doctrine to the class arbitration waiver.
Accordingly, the Court strikes the reference to the Federal
Arbitration Act in the sixth affirmative defense.

> D.   Defendants' First, Twenty-Fourth, Twenty-Fifth, Twenty-
> Sixth, Twenty-Seventh, Twenty-Eighth, Twenty-Ninth and
> Thirty-First Affirmative Defenses

Plaintiff moves to strike Defendants' first (failure to state
a cause of action), twenty-fourth (no ascertainable class), twenty-
fifth (predominance), twenty-sixth (no community of interest),
twenty-seventh (typicality), twenty-eighth (superiority), twenty-
ninth (adequate representation) and thirty-first (lack of standing)
affirmative defenses as immaterial and impertinent. However, they
pertain to and will be necessary to the questions that will arise
in later stages of litigation, and will best be adjudicated then.
Accordingly, Plaintiff's motion to strike these defenses is denied.

United States District Court
For the Northern District of California

1

E.   Defendants' First, Fourth, Sixth, Seventh, Twelfth,
     Thirteenth, Sixteenth, Seventeenth, Eighteenth, Twentieth,
2    Twenty-First, Twenty-Fourth, Twenty-Fifth, Twenty-Sixth,
     Twenty-Seventh, Twenty-Eight and Twenty-Ninth
3    Affirmative Defenses

4

5    Plaintiff moves to strike Defendants' first (failure to state

6  a claim), fourth (laches), fifth (business judgment), sixth

7  (preemption), seventh (primary/exclusive jurisdiction), twelfth

8  (failure to mitigate damages), fifteenth (justification or

9  privilege), sixteenth (estoppel), seventeenth (statute of

10 limitations), eighteenth (waiver), twentieth (intervening acts

11 and/or omissions), twenty-first (comparative fault or offset) and

12 twenty-fourth through twenty-ninth affirmative defenses as

13 insufficiently plead.  However, the Federal Rules of Civil

14 Procedure require only that a defendant "state in short and plain

15 terms" its defenses.  Fed. R. Civ. P. 8(b).  Defendants have

16 complied with this requirement.  Accordingly, Plaintiff's motion to

17 strike these defenses is denied.  These defenses are apparently

18 plead as boilerplate in an abundance of caution.  The Court trusts

19 that Defendants will dismiss them voluntarily prior to summary

20 judgment motion practice if they do not discover evidence to

21 support them.

                              CONCLUSION

22    For the foregoing reasons, Defendants' motion to compel

23 arbitration (Docket No. 47) is DENIED.  Plaintiff's motion to

24 strike portions of the answer (Docket No. 40) is GRANTED IN PART

25 and DENIED IN PART.  Defendants' motion to stay discovery and their

26 obligation to respond to Plaintiff's motion to strike (Docket No.

27 43) is DENIED, given that the Court is denying Defendants' motion

28

**United States District Court**
For the Northern District of California

to compel arbitration and that Defendants have already responded to Plaintiff's motion to strike.  Defendants must respond to any outstanding discovery no later than twenty days from the date of this order unless, prior to that date, Defendants have obtained a stay from the Ninth Circuit.

The Court also DENIES Defendants' motion to stay this order pending appeal.  (Docket No. 67.)  Because the Court cannot predict when the Court of Appeals will rule in the related cases pending before it, the Court will not indefinitely delay the progress of this case.  It is unlikely to proceed as far as trial before the Ninth Circuit rules and the merits discovery at least would be done even if the case were ultimately arbitrated.

The Court notes that, although it gave Plaintiff leave to file an amended complaint, Plaintiff never e-filed the proposed amended complaint.  Plaintiff must correct this error by e-filing the amended complaint within three days of the date of this order.

IT IS SO ORDERED.

Dated: September 14, 2009

_____
CLAUDIA WILKEN
United States District Judge

20