**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

Attorneys for Plaintiff

SUPERIOR COURT OF THE STATE OF CALIFORNIA

CITY AND COUNTY OF SAN FRANCISCO

| | |
|---|---|
| STEVEN MCARDLE, an individual, on behalf of himself, the general public and those similarly situated | CASE NO.  CV-09-01117 (CW) |
| Plaintiff, | SECOND AMENDED CLASS ACTION COMPLAINT FOR FALSE ADVERTISING; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; FRAUD, DECEIT AND/OR MISREPRESENTATION; AND UNFAIR BUSINESS PRACTICES |
| v. | |
| AT&T MOBILITY LLC; NEW CINGULAR WIRELESS PCS LLC; NEW CINGULAR WIRELESS SERVICES, INC. | |
| Defendants | JURY TRIAL DEMANDED |

Steven McArdle, by and through his counsel, brings this Second Amended Class Action Complaint ("Class Action Complaint") against Defendants, on behalf of himself and those similarly situated, for violations of sections 17200 and 17500 *et seq.* of the California Business and Professions Code, violation of the California Consumers Legal Remedies Act; and fraud, deceit and/or misrepresentation. The following allegations are based upon information and belief, including the investigation of Plaintiff's counsel, unless stated otherwise.

## INTRODUCTION

1.     This case is about how Defendants unfairly, unlawfully, and deceptively charge customers exorbitant, international roaming fees for (1) calls that they did not answer, (2) voicemail they did not check and/or (3) calls they did not place, while they were traveling abroad.  Not only did Defendants unfairly, unlawfully, and deceptively impose such charges, but unlike other mobile phone companies, they affirmatively hid from their customers how they could avoid such charges.  Thereby, Defendants effectively forced customers into incurring these undisclosed fees and charges.  Defendants also unfairly, unlawfully, and deceptively charge customers additional, undisclosed "data transfer" fees for text, video and pictures messages they send while traveling abroad.

2.     This case also is about how Defendants include, in their mobile telephone service agreements, a provision that purports to require customers to arbitrate all disputes and to waive their rights to bring a class action.  Despite the fact that such provisions are unconscionable and unenforceable under California law, Defendants have included it in all their customer agreements and have attempted to enforce it against Plaintiff and others in California.

## PARTIES

3.     Steven McArdle ("Plaintiff") is, and at all times alleged in this Class Action Complaint was, an individual and a resident of the City of San Francisco in San Francisco County, California.

4.     Defendant AT&T Mobility LLC is a limited liability company under the laws of the state of Delaware, having its principal place of business in Atlanta, Georgia.

5.     Defendant New Cingular Wireless PCS, LLC is a limited liability company under

the laws of the state of Delaware, having its principal place of business in Atlanta, Georgia.

6.     Defendant New Cingular Wireless Services, Inc. is a corporation incorporated under the laws of the state of Delaware, having its principal place of business in Atlanta, Georgia.

7.     Defendants New Cingular Wireless PCS, LLC and New Cingular Wireless Services, Inc. are referred to herein as "Cingular" or "Cingular Wireless." In 2006, AT&T purchased Cingular. Shortly thereafter, Cingular was renamed and rebranded as AT&T Wireless. As used herein, "AT&T" refers collectively to AT&T Mobility LLC, its predecessors including Cingular, and the brands Cingular Wireless and AT&T Wireless.

8.     The true names and capacities of Defendants sued as Does 1 through 50 inclusive are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names pursuant to section 474 of the California Code of Civil Procedure. Plaintiff will seek leave of Court to amend this Class Action Complaint when said true names and capacities have been ascertained.

9.     The Parties identified in paragraphs 4 through 8 of this Class Action Complaint are collectively referred to hereafter as "Defendants."

10.     At all times herein mentioned, each of the Defendants was the agent, servant, representative, officer, director, partner or employee of the other Defendants and, in doing the things herein alleged, was acting within the scope and course of his/her/its authority as such agent, servant, representative, officer, director, partner or employee, and with the permission and consent of each Defendant.

11.     At all times herein mentioned, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

12.     At all times herein mentioned, the acts and omissions of Defendants, and each of them, concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

13.     At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein. At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in

1  proximately causing the damages, and other injuries, as herein alleged.

2  **JURISDICTION AND VENUE**

3  14.     This action is brought by Plaintiff pursuant, *inter alia*, to the California Business

4  and Professions Code, Sections 17200 *et. seq.*  Plaintiff and Defendants are "persons" within the

5  meaning of the California Business and Professions Code, Sections 17201.

6  15.     The injuries, damages and/or harm upon which this action is based, occurred or

7  arose out of activities engaged in by Defendants within, and affecting, the State of California.

8  16.     Defendants have engaged, and continue to engage, in substantial and continuous

9  business practices in the State of California, including in the City and Count of San Francisco.

10  17.     Accordingly, Plaintiff alleges that jurisdiction and venue are proper in this Court.

11  **SUBSTANTIVE ALLEGATIONS**

12  **Defendants Market, Advertise and Sell Nationwide Wireless Phones And Related Services**

13  18.     AT&T is a leading provider of mobile telephone products and services.

14  19.     AT&T represents that all of their rate plans include basic voicemail and visual

15  voicemail at no extra charge.  Customers are not charged for receiving voicemail, for calls they

16  do not answer, or for receiving visual notifications that a call was missed or that a voicemail was

17  left.

18  20.     AT&T markets and advertises the international functionality of their mobile

19  phones and service plans.  For example, AT&T markets and advertises, without limitation, the

20  following:

21  More wireless AT&T phones work in more places around the world than any other U.S.
   carrier — over 200 countries. Stay connected while traveling to over 200 countries, plus
22  get discounted rates in over 85 of those countries when you sign up for AT&T World
   Traveler.

23  Going on a trip outside the U.S.? See if you have coverage based on your device and
24  itinerary.

25  Next time you travel overseas, why not take your AT&T service with you?

26  21.     For customers who wish to use their AT&T-enabled mobile telephones outside the

27  United States, AT&T offers on its website a "Wireless Travel Guide."  By using the Wireless

28  Travel Guide, customers can determine, based on their mobile phone device and itinerary,

whether they will have coverage in a certain country and what rates that they will pay (in each country) for telephones calls that they make or receive and for sending text, picture and/or video messages.  For example, the Wireless Travel Guide informs AT&T customers traveling to Italy that for calls placed and received in Italy they will be charged $1.29 per minute,[1] $.50 per sent text message, and $1.30 per sent picture or video message.  The guide further informs customers that receiving text messages is free.[2]

22.     On its website, AT&T also informs customers that there are additional international roaming charges for data transfer, such as sending/receiving email or surfing the Internet.  AT&T warns customers who have data-enabled mobile phones that, if they wish to avoid these charges, they should turn their data roaming feature to "off" so that the phones will not automatically check for emails or retrieve other data.

23.     AT&T customers are provided with identical information when they telephone AT&T with questions concerning international use of their phone and/or to activate their phones for international use.

24.     AT&T does not, however, adequately inform its customers that there will be, and its affirmative statements mislead customers into thinking there will not be, international roaming charges for incoming calls they do not accept, voicemails they do not retrieve and/or calls they do not place while they are abroad.

25.     For example, AT&T trains its representatives that, if customers inquire about international usage, the representatives should inform them that they will incur charges for sending international text messages and for making and receiving calls.   AT&T does not train its representatives to state, and the representatives do not state, that customers will incur charges for (1) calls that they do not answer, (2) voicemail they do not check and/or (3) calls they do not place while they are traveling abroad.

26.     Similarly, when customers arrive in a foreign country and turn on their phones, they typically receive from AT&T a text message welcoming them to that country and informing

---

[1] The $1.29 per minute is the standard international rate in Italy.  For customers that purchase the "AT&T World Traveler" plan, the rate for telephone calls is reduced to $.99 per minute.
[2] The international roaming fees and charges vary by country and mobile phone device.

them that will incur charges for international text messages and phone usage. The text messages also typically inform customers to turn off international data roaming. AT&T, however, intentionally omits from the text message the fact that customers will incur charges for (1) calls that they do not answer, (2) voicemail they do not check and (3) calls they do not place while they are traveling abroad. AT&T's intentional omissions deceive reasonable customers into believing that they will not incur additional charges for (1) calls that they do not answer, (2) voicemail they do not check and/or (3) calls they do not place while they were traveling abroad.

27.     Nor does AT&T adequately inform customers, either on their website, in a text message, or verbally when they call a customer service representative, how they can avoid incurring charges (1) calls that they do not answer, (2) voicemail they do not check and/or (3) calls they do not place while traveling abroad. With respect to AT&T's website, the information does not appear in the Wireless Travel Guide nor on numerous other pages dealing with international services and international roaming charges and other fees. AT&T's intentional failure to provide such information only compounds the deception because other mobile phone carriers provide such information to their customers.

28.     The only source of information about these additional charges that will be imposed on international travelers is on a single "Frequently Asked Question" page buried deep in AT&T's website. To navigate to this page, a customer would have to specifically click on "Frequently Asked Questions" even though he or she has already seen detailed information about international roaming charges and other fees that provides no indication of the additional voicemail and unanswered call related charges. One of the Frequently Asked Questions states as follows:

Q. How am I charged for Voicemail calls while roaming internationally?

A. Voicemail calls are charged as follows:

When your device is on:

   * Calls that you do not answer that are routed to the AT&T voicemail system will be charged as an international roaming incoming call to your device.

   * In addition, the foreign carrier's routing of that call to the AT&T voicemail system may generate an outgoing call charge from your device's location to the U.S.

* These charges apply even if the caller disconnects from the voice mail system without leaving a message.

If your device is turned off or in flight mode and the wireless network is off:

* When someone tries to call you, the call will go directly to your personal voicemail greeting.

* Since the network does not try to deliver the call to you in a foreign country, there are no international roaming charges.

When receiving Visual Voicemail messages on your iPhone:

* Visual Voicemail messages received when roaming outside of the U.S. will be charged at International roaming data rates, either at the International pay-per-use data rate or against your iPhone International data package.

29.    AT&T does not require customers to view the Frequently Asked Questions page before using their phones internationally, nor does it make it likely that users will view this page, as it is buried deep on AT&T's website, and customer service representatives are not trained to tell customers who call AT&T to look at this page.   Nor are customer service representatives trained to provide this information.  To the contrary, they are trained not to provide this information unless a customer specifically requests it—i.e., asks if they will be charged for unanswered calls, voicemail that they receive but do not check or, even, when people disconnect from voicemail without leaving a message.

30.    Defendants force customers to incur these additional charges if they wish to use their telephones while traveling abroad.  For example, if a customer wishes to be able to send and receive text messages, there is no way to configure the phone so as to avoid the charges for incoming calls and voicemail notifications, even if the calls are not answered and the voicemails are not checked.  Otherwise put, in order to use other functions that AT&T advertises, and for which they are told how much they will be charged, customers are forced to incur additional inadequately or undisclosed charges and fees.

31.    Finally, even though, as set forth above, Defendants disclose to customers that they will be charged additional amounts for text, video or pictures messages—e.g., $.50 per text message—while traveling abroad, Defendants charged approximately double the disclosed amount.  Specifically, as disclosed, Defendants charged customers for sending the text, video or

1  picture message.  However, Defendants charged an additional data transfer fee, presumably for

2  the "data" transfer that was associated with sending the text, video or picture message.  No where,

3  however, did Defendants disclose to their customers the existence or amount of any additional

4  "data transfer" fees associated with sending the text, video or picture messages while abroad.

5  **Plaintiff Was Charged International Roaming Rates for Calls He Did Not Answer,
   Voicemail He Did Not Check And Calls He Did Not Place.  Plaintiff Was Also Charged
6  Undisclosed Data Transfer Fees For the Text Messages That He Sent.**

7         32.     Plaintiff has been a mobile telephone customer of AT&T since the summer of

8  2004.   Plaintiff had an LG mobile (flip) phone until recently when he purchased a BlackBerry

9  Pearl mobile phone.

10        33.     Between March 20 and March 30, 2008, Plaintiff traveled to Italy.  Prior to

11  departing, Plaintiff looked at Defendants' website to gather information concerning international

12  use of his wireless phone.  Plaintiff noticed on Defendants' website that he would be charged

13  additional amounts to place and receive calls and send text messages.  Plaintiff was not, however,

14  informed that he would be charged for voicemail that he did not check, calls that he did not

15  answer and/or calls that he did not make while traveling abroad.

16        34.     On or about March 20, 2008, Plaintiff telephoned Defendants' customer service

17  department in order to discuss his need for international text messaging.   At that time, Plaintiff

18  purchased the 100INT'LTEXTMSGS Plan for an additional $9.99 per month.[3]   It was Plaintiff's

19  understanding that without this plan, he could not send text messages while traveling abroad.[4]

20  Defendants' customer service agent informed Plaintiff that while traveling internationally, he

21  would be charged additional amounts to place and receive calls and send text messages.  The

22  agent did not state, however, that Plaintiff would be charged for voicemail that he did not check,

23  calls that he did not answer and/or calls that he did not make while traveling abroad.

24        35.     When he arrived in Germany (on a layover), Plaintiff received from AT&T a

25  welcome text message.  That text message informed Plaintiff that he would be charged additional

26

27  [3] The first month was pro-rated—i.e., Plaintiff paid $2.00 for 3/20/08 – 3/25/08.
    [4] Defendants' customer service agent may have misinformed Plaintiff about the utility of the
28  100INT'LTEXTMSGS Plan.  In fact, it may have been $9.99 for Plaintiff to send 100 text mes-
    sages from the US to an international phone number, a service that Plaintiff did not want or need.

amounts to place and receive calls and send text messages.  Plaintiff was not, however, informed in the text message that he would be charged for voicemail that he did not check, calls that he did not answer and/or calls that he did not make while traveling abroad.  Plaintiff received a similar text message when he arrived in Italy.

36.     Despite the fact that Plaintiff did not place or answer any telephone calls while in Italy, he was still charged a total of $3.87 for telephone calls that he did not answer, voicemail he did not receive and/or calls he did not place.   Had he known he would be charged for the call irrespective of whether or not he answered, he would have kept his phone off or informed friends, family and business associates not to call but rather to text or email.

37.     Though Plaintiff was informed that sending text messages from abroad would cost $.50 per text message (at least after the first 100 messages), Plaintiff was never informed that there would be an additional "data transfer" fee associated with sending text messages. Nonetheless, Defendants charged Plaintiff $9.99 for the 100 text message plan, plus $.50 (or in one case $.39) for each of the twenty text messages that he sent while traveling abroad, which was alternately characterized as a $9.89 "data transfer fee" for sending those text messages. Plaintiff also was charged $.15 for purportedly using the Internet on a "pay per use" on February 27 and March 7, 2008 even though he did not do so.  Indeed, Plaintiff's mobile phone was not data enabled—i.e., he could not send or receive email on his phone.  Nor could he access the Internet.

38.     Plaintiff's experience was not an isolated incident.  Rather, many other customers have been charged for voicemail that they did not check, calls that they did not answer and calls they did not place while traveling abroad.

39.     For example, one customer posted this statement on an Internet complaint forum:

AT&T Roaming Charges.. on VOICEMAIL??

AAGH!

I need your help/input guys. I went to the caribbean for a week in June and I get a bill for $150 of roaming fees. The problem is, I only made *2* calls. Before I went, I specifically asked an AT&T retail employee if I can carry my phone in the caribbean without penalty. I was told specifically that if I turn off my data roaming

then I will only get charged for the calls that I make. That will be the only over-ages.

They are charging me $2.99/minute for every single voicemail call I receive while there. I racked up about $150 in overages!!
HUH??? :befuddled

Has anyone else experienced this? I am especially upset because I did my due diligence and still got screwed. They offered to refund 1/2 the roaming charges as a one time "courtesy"..

Uhm... No, they need to remove the whole thing. I am currently awaiting a call back from a higher power that for some reason, takes 24-72 hours.

They must be busy with complaints.

http://www.howardforums.com/printthread.php?t=1401697, last visited January 30, 2009.

40.    Another customer wrote:

Can an ATT employee PLEASE comment on the problems with voicemail while roaming internationally? I just received a statement containing $20 in charges for unsuccessful attempts to leave me voicemail. For every attempt, there's $1.29 for an incoming call, and on the next line $1.29 for forwarding it to a number in the 646 area code that turns out to be generic voicemail access.

Had callers known what to do, they could have re-entered my phone number and left me a message, but, unsuprisingly (sic), none of them guessed this. I didn't receive any messages at all for the entire trip. Just charges.

In a tiny footnote, the ATTWS website does admit the double roaming charges for voicemail, but nowhere does it disclose the near impossibility that you will ever receive a message. Are there ANY plans to address, or even ackowledge (sic), this issue

http://forums.wireless.att.com/cng/board/message?board.id=gsmgprs&thread.id=3395, last visited January 30, 2009.

**Defendant Attempted To Enforce Against Plaintiff And Other Similarly Situated Persons An Arbitration Provision Containing A Non-Severable Class-Action Waiver**

41.    On March 10, 2009, Defendants filed an answer to Plaintiff's initial complaint in this action, which included the following:  "Second Affirmative Defense  (Failure to Arbitrate: Breach of Arbitration Clause)…The Service Agreement between Plaintiff and ATTM requires the parties to arbitrate all disputes and claims between them.  The agreement to arbitrate, which binds Plaintiff, precludes this lawsuit."  On March 24, 2009, Plaintiff wrote to Defendants informing

them that the arbitration provision was unconscionable because it included a non-severable class action waiver, and asking them to withdraw the defense.  Defendants refused and reasserted the defense in their amended answer dated June 19, 2009.  On July 2, Plaintiff moved to strike the defense.  On July 17, Defendants moved to stay proceedings until it could move to compel arbitration; on August 13, Defendants opposed the motion to strike and moved to compel arbitration; and on September 8, Defendants moved to stay proceedings pending appeal.  Plaintiff incurred legal fees and costs in requesting that Defendants' withdraw their arbitration defense and moving to strike the affirmative defense and opposing all of Defendants' motions.  On September 14, the Court granted Plaintiff's motion to strike the affirmative defense and denied Defendants' motion to compel arbitration and motion to stay proceedings pending appeal.

42.     Defendants have enforced, or attempted to enforce, the same unconscionable arbitration and class action waiver provisions against numerous other customers.  Each of these customers has been compelled to spend time and/or incur fees and expenses in response to Defendants' efforts.  Some examples of Defendants' efforts can be found in the following cases: *Shroyer v. New Cingular Wireless Services, Inc.,* 498 F.3d 976 (9th Cir. 2007)*; Coopwood v. AT&T Mobility LLC*, No. CV 08-3683 (C.D. Cal. Aug. 14, 2009); *Stiener v. Apple Computer, Inc.*, 556 F. Supp. 2d 1016 (N.D. Cal. 2008); *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288 (N.D. Cal. 2008); *Laster v. T-Mobile  USA, Inc.*, 2008 WL 5216255 (S.D. Cal.); *Kaltwasser v. Cingular Wireless LLC*, 543 F. Supp. 2d 1124 (N.D. Cal. 2008).

## CLASS ALLEGATIONS

43.     Plaintiff brings this action against Defendants on behalf of himself and all others similarly situated, as a class action pursuant to section 382 of the California Code of Civil Procedure and section 1781 of the California Civil Code.  Plaintiff seeks to represent three groups of similarly situated persons.  The first group, which will be called the "Roaming Charge Class" is defined as follows:

> All California residents who, from February 6, 2005 through the present, paid Defendants for (1) voicemails they did not retrieve, calls they did not answer and/or calls they did not make while traveling abroad or (2) "data transfer" fees for text, picture or video messages they sent while traveling abroad.

The second group, which will be called the "Compelled Arbitration Class" is defined as follows:

> All California residents who (1) asserted claims against Defendants on behalf of a potential class of persons, (2) asserted fraudulent conduct by Defendants and (3) against whom, from May 29, 2006 through the present, Defendants enforced, or attempted to enforce, their mobile telephone contractual arbitration provision.

The third group, which will be called the "Class-Action Waiver Class" is defined as follows:

> All California residents who, from May 29, 2005 through the present, were customers of Defendants pursuant to a wireless telephone services contract that purported to bar customers from bringing a claim on behalf of a class of similarly situated persons.

As used herein, the unmodified term "Class" refers to the members of the Roaming Charge Class, the Compelled Arbitration Class, and the Class-Action Waiver Class, collectively.

44.     This action has been brought and may properly be maintained as a class action against the Defendants pursuant to the provisions of California Code of Civil Procedure section 382 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

45.     Numerosity: Plaintiff does not know the exact size of any of the classes, but it is estimated that the Roaming Charge Class and the Class-Action Waiver Class are each composed of more than 1,000 persons.  Plaintiff further believes that the persons in each class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

46.     Common Questions Predominate:  This action involves common questions of law and fact to the potential class.  Each Roaming Charge Class Member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led customers to believe that they would not be charged, and failed to inform customers that they would be charged, for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place while traveling abroad.  Roaming Charge Class Member claims also derive from common questions of

law and fact related to the undisclosed data transfer fees that Defendants assessed for text, video and picture messages that customers placed while traveling abroad.  Each Compelled Arbitration Class Member's claim derives from the illegal attempt to enforce an arbitration provision that is unconscionable, because it includes a non-severable class action waiver.  Each Class-Action Waiver Class Member's claim derives from the illegal inclusion, in their wireless service contract, of a purported waiver of the right to bring class claims.  The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of each class to recover.  Among the questions of law and fact common to the classes are:

        a)      Whether Defendants unfairly, unlawfully and/or deceptively charged Roaming Charge Class Members for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place while traveling abroad;

        b)      Whether Defendants adequately disclosed to Roaming Charge Class Members that they would be charged for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place while they were traveling abroad;

        c)      Whether Defendants unfairly, unlawfully and/or deceptively led Roaming Charge Class Members to believe that they would not be charged for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place while they were traveling abroad;

        d)      Whether Defendants unfairly, unlawfully and/or deceptively charged Roaming Charge Class Members data transfer fees for text, picture and/or video messages that they sent while they were traveling abroad;

        e)      Whether Defendants' advertising and marketing regarding their international telephone service and mobile phones was likely to deceive Roaming Charge Class Members or was unfair;

        f)      Whether Defendants unlawfully inserted an unconscionable provision in their mobile phone services agreement for the Compelled Arbitration and Class-Action Waiver Class Members;

g)      Whether Defendants unlawfully enforced and attempted to enforce an unconscionable in their mobile phone services agreement against the Compelled Arbitration Class Members;

h)      The amount of revenues and profits Defendants received and/or the amount of monies or other obligations lost by Class Members as a result of such wrongdoing;

i)      Whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

j)      Whether Class Members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

k)      Whether Class Members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

47.      Typicality. Plaintiff and Class Members sustained the same injuries and damages arising out of Defendants' conduct in violation of the law.  The injuries and damages of each Class Member were caused directly by Defendants' wrongful conduct in violation of law as alleged.  In particular:

a)      Plaintiff's claims are typical of the Roaming Charge Class because Plaintiff was charged for (1) calls that he did not answer, (2) voicemail he did not check and/or (3) calls he did not place while he was traveling abroad.  Plaintiff was also charged undisclosed data transfer fees for text messages he sent while traveling abroad.  Roaming Charge Class members incurred similar charges.

b)      Plaintiff's claims are typical of the Compelled Arbitration Class Members because Defendants enforced, or attempted to enforce, their arbitration clause against him by asserting it as an affirmative defense and bringing motions to compel arbitration, to stay proceedings pending decision on the motion to compel arbitration, and to stay proceedings pending appeal of the denial of the motion to compel arbitration, causing him to incur attorneys' fees and expenses necessary to eliminate and/or strike the defense and oppose the motions. Compelled Arbitration Class Members incurred similar fees and expenses, or were required to

1  spend their own time or suffer other damages as a result of the attempted enforcement or

2  enforcement of the arbitration provision.

3          c)      Plaintiff's claims are typical of the Class-Action Waiver Class Members

4  because Defendants inserted into the contract of all such persons a purported waiver of the right

5  to prosecute a class action, which is unconscionable, and without the relief requested herein,

6  Defendants could at any time in the future seek to enforce such provision against the Class-Action

7  Waiver Class Members.

8          48.     Adequacy: Plaintiff will fairly and adequately protect the interests of all Class

9  Members because it is in his best interests to prosecute the claims alleged herein to obtain full

10 compensation due to him for the unfair and illegal conduct of which he complains.  Plaintiff also

11 has no interests that are in conflict with or antagonistic to the interests of Class Members.

12 Plaintiff has retained highly competent and experienced class action attorneys to represent his

13 interests and that of the class.  No conflict of interest exists between Plaintiff and Class Members

14 hereby, because all questions of law and fact regarding liability of Defendants are common to

15 Class Members and predominate over any individual issues that may exist, such that by prevailing

16 on his own claim, Plaintiff necessarily will establish Defendants' liability to all Class Members.

17 Plaintiff and his counsel have the necessary financial resources to adequately and vigorously

18 litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to

19 the Class Members and are determined to diligently discharge those duties by vigorously seeking

20 the maximum possible recovery for Class Members.

21         49.     Superiority: There is no plain, speedy, or adequate remedy other than by

22 maintenance of this class action.  The prosecution of individual remedies by members of the class

23 will tend to establish inconsistent standards of conduct for the Defendants and result in the

24 impairment of Class Members' rights and the disposition of their interests through actions to

25 which they were not parties.  Class action treatment will permit a large number of similarly

26 situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

27 and without the unnecessary duplication of effort and expense that numerous individual actions

28 world engender.  Furthermore, as the damages suffered by each individual member of the class

may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

50.     Nexus to California.  The State of California has a special interest in regulating the affairs of corporations that do business here and persons who live here.  Defendants have more mobile telephone customers in California than in any other state.  Accordingly, there is a substantial nexus between Defendants' unlawful behavior and California such that the California courts should take cognizance of this action on behalf of a class of individuals who reside in California.

51.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### PLAINTIFF'S FIRST CAUSE OF ACTION
**(False Advertising, Business and Professions Code § 17500, et seq.)**
**On Behalf Of Himself And The Roaming Charge Class**

52.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

53.     Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of the initial Complaint in this action, Defendants have made untrue, false, deceptive and or misleading statements in connection with the advertising and marketing of their wireless services and mobile phones throughout the State of California, including in the City and County of San Francisco.

54.     Defendants have made representations and statements that lead reasonable customers to believe that they will not incur charges when using their phones abroad.  Defendants inform customers that, when using their phones in the United States, they will not incur charges for (1) calls that they do not answer, (2) voicemail they do not check and/or (3) calls they do not place.  Defendants also inform customers that, while using their phones in the United States, they will not incur data transfer charges for text, video and/or picture messages that they send.  Defendants inform customers that, when using their phones abroad, they will incur additional

charges for making or receiving calls, sending text messages and sending picture or video messages. Defendants, however, deceptively did (and do) not adequately inform customers that, when traveling abroad, they will incur charges for (1) calls that they did not answer, (2) voicemail they did not check and/or (3) calls they did not place while they were traveling abroad. Defendants also deceptively do not inform customers that, when traveling abroad, they will incur data transfer fees for text, video and/or picture messages that they send. Defendants also deceptively do not inform customers that the international text message plan excludes text messages sent while the customer is travelling abroad, and includes only messages sent to an international number while the customer is in the United States.

55. Plaintiff and those similarly situated relied to their detriment on Defendants' false, misleading and deceptive advertising and marketing practices. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, (1) keeping their phones off, (2) forwarding all calls, and (3) informing friends, family and business associates not to call them while they were traveling. They would also have sent fewer or no text, video and/or picture messages.

56. Defendants engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendants have engaged in false advertising, as defined and prohibited by section 17500, *et seq*. of the California Business and Professions Code.

57. The aforementioned practices, which Defendants have used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

58. Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiff, the general public, or those similarly situated by means of the unfair and/or deceptive trade practices complained of herein, plus interest thereon.

59. Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the false, misleading and deceptive advertising and

marketing practices complained of herein.  The acts complained of herein occurred, at least in part, within three (3) years preceding the filing of the initial Complaint in this Action.

60.     Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining Defendants from engaging in any such advertising and marketing practices in the future.  Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that the Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same.  This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

61.     As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

62.     As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

**PLAINTIFF'S SECOND CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)**
**On Behalf of Himself, The Roaming Charge Class, and the Compelled Arbitration Class**

63.     Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

64.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA").

65.     Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

66.     Plaintiff and other Class Members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

67.     The provision of mobile telephone services that Plaintiff (and others similarly situated Class Members) purchased from Defendants were "services" within the meaning of California Civil Code § 1761.

68.     On behalf of the Roaming Charge Class:  By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(5) and § 1770(a)(7) of the CLRA.  In violation of California Civil Code §1770(a)(5), Defendants' acts and practices constitute improper representations that the goods or services that they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have.  In violation of California Civil Code §1770(a)(7), Defendants' acts and practices constitute improper representations that the goods or services that they sell are of a particular standard, quality, or grade, or that goods are of a particular style or model, when they were not.  Specifically, Defendants acts and practices lead customers to believe that there is no charge, while traveling internationally, for (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place, when in fact there are such charges.  Similarly, Defendants acts and practices lead customers to believe that they would only incur a single charge for text, video and/or picture messages that they sent while traveling abroad and that there would be no additional charges for data transfer.  Plaintiff and Roaming Charge Class Members suffered damages as a result of these unlawful actions in that, inter alia, they required to pay the aforementioned international roaming and data transfer fees and/or to expend time and/or money to seek modifications to their bills to avoid payment of such fees.

69.     On behalf of the Compelled Arbitration Class:  By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(19) of the CLRA.  In violation of California Civil Code

§1770(a)(19), Defendants unlawfully inserted, and have enforced, in their terms of service agreements unconscionable provisions.  Specifically, Defendants have inserted in their terms of service agreement mandatory arbitration provisions containing non-severable class action waivers, which they have unlawfully sought to enforce against the Plaintiff and those similarly situated, by filing affirmative defenses and motions to compel arbitration and stay proceedings. Plaintiff and Compelled Arbitration Class Members suffered damages as a result of these unlawful actions in that, inter alia, they were required to expend time and/or money to oppose Defendants' attempts to seek arbitration and/or abandoned their court litigation or class claims.

70.     Plaintiff requests that this Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2).  If Defendants are not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the Class will continue to suffer harm.

71.     On February 10 and March 24, 2009, Plaintiff sent to Defendants certified letters, return receipt requested, demanding that they comply with the CLRA, including California Civil Code § 1782.  Defendants acknowledged receipt of each of those demand letters on February 23 and March 30, 2009.  Defendants have failed to comply with the requirements of California Civil Code § 1782 with respect to the Class.

72.     Pursuant to California Civil Code § 1780, on behalf of similarly situated Class Members, Plaintiff seeks actual damages of at least $1000, punitive damages, an award of $5000 for each Class Member who is a disabled person or senior citizen, and restitution of any ill-gotten gains due to Defendants' acts and practices.

73.     Plaintiff also requests that this Court award him his costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

### PLAINTIFF'S THIRD CAUSE OF ACTION
**(Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Himself and The Roaming Charge Class**

74.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

75.     On or about March 20, 2008, Defendants fraudulently and deceptively failed to

inform Plaintiff that (1) calls that he did not answer, (2) voicemail he did not check and/or (3) calls he did not place while he was abroad would be charged at $1.29 per minute.  Defendants fraudulently and deceptively failed to inform that he would be charged additional data transfer fees for text, video and/or picture messages that he sent while traveling abroad.

76.     These omissions were material at the time they were made.  They concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether and how to use his mobile phone while traveling abroad.

77.     At the time of his purchase of mobile phone services, activation of international phone services and his arrival abroad, Defendants omitted to inform Plaintiff that (1) calls that he did not answer, (2) voicemail he did not check and/or (3) calls he did not place while he was abroad would be charged at $1.29 per minute.  Defendants also failed to inform Plaintiff that he would be charged additional data transfer fees for text, video and/or picture messages that he sent while traveling abroad.  Defendants had a fiduciary duty to provide this information.

78.     In not so informing Plaintiff, Defendants breached their duty to him.  Defendants also gained financially from, and as a result of, their breach.

79.     Plaintiff and those similarly situated relied to their detriment on Defendants' fraudulent omissions.   Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, (1) keeping their phones off, (2) forwarding all calls, and/or (3) informing friends, family and business associates not to call them while they were traveling abroad.  They would have also sent fewer (or no) text, video and/or picture messages while they were traveling abroad.

80.     Defendants had a duty to inform Class Members at the time of their purchase of mobile phone services, activation of international phone services and their arrival abroad, of the additional charges that would be imposed on (1) calls that they did not answer, (2) voicemail they did not check and (3) calls they did not place while they were abroad.   Defendants omitted to provide this information to Class Members.  Class Members relied to their detriment on Defendants' omissions.  These omissions were material to the decisions of the Class Members to use their phones while traveling abroad.  In making these omissions, Defendants breached their

duty to Class Members.  Defendants also gained financially from, and as a result of, their breach.

81.   Defendants had a duty to inform Class Members at the time of their purchase of mobile phone services, activation of international phone services and their arrival abroad, of the additional data transfer charges that would be imposed on text, video and/or picture messages they sent when they were abroad.   Defendants omitted to provide this information to Class Members.  Class Members relied to their detriment on Defendants' omissions.  These omissions were material to the decisions of the Class Members to use their phones while traveling abroad.  In making these omissions, Defendants breached their duty to Class Members.  Defendants also gained financially from, and as a result of, their breach.

82.   By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiff and those similarly situated to alter their position to their detriment.

83.   Plaintiff and those similarly situated justifiably and reasonably relied on Defendants' omissions, and, accordingly, were damaged by the Defendants.

84.   As a direct and proximate result of Defendants' misrepresentations, Plaintiff and those similarly situated have suffered damages in an amount equal to the amount that Defendants billed them for calls that they did not answer, voicemail they did not check, calls they did not place and data transfer fees for text, video and picture messages they sent while they were abroad.

85.   Defendants' conduct as described herein was willful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiff.

### PLAINTIFF'S FOURTH CAUSE OF ACTION
**(Unfair, Unlawful and Deceptive Trade Practices, Business and Professions Code § 17200, et seq.)**
**On Behalf of Himself and the Class**

86.   Plaintiff realleges and incorporates by reference the above paragraphs of this Class Action Complaint as if set forth herein.

87.   Within four (4) years preceding the filing of the initial Complaint in this action, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unfair,

1   unlawful and deceptive trade practices in California by engaging in the unfair, deceptive and

2   unlawful business practices outlined in this Class Action Complaint.   In particular, Defendants

3   have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices against

4   the members of the Roaming Charge Class by without limitation

5          a.   failing to properly inform their customers that they would be charged for (1) calls

6               that they did not answer, (2) voicemail they did not check and (3) calls they did not

7               place while they were traveling abroad;

8          b.   affirmatively deceiving their customers into believing that they would not be

9               charged for (1) calls that they did not answer, (2) voicemail they did not check and

10              (3) calls they did not place while they were traveling abroad;

11         c.   marketing, advertising and selling international wireless services and mobile

12              phones without disclosing to customers the true costs associated with such

13              international services and phone usage;

14         d.   failing to properly inform their customers how they can use abroad their mobile

15              phones without incurring charges for (1) calls that they did not answer, (2)

16              voicemail they did not check and (3) calls they did not place; and

17         e.   assessing undisclosed "data transfer" fees for sending text, picture and/or video

18              messages while traveling abroad.

19         f.   assessing Internet "pay per use" fees on phones that are not Internet-enabled and

20              that did not access the Internet.

21  Defendants also have engaged, and continue to engage, in unfair, unlawful and deceptive trade

22  practices against the members of the Compelled Arbitration Class and Class-Action Waiver Class

23  by without limitation inserting in their terms of service agreement mandatory arbitration

24  provisions containing non-severable class action waivers.  Defendants have further engaged, and

25  continue to engage, in unfair, unlawful and deceptive trade practices against the members of the

26  Compelled Arbitration Class by unlawfully enforcing, or seeking to enforce, the arbitration and

27  class action waiver provisions against the Plaintiff and those similarly situated, by filing

28  affirmative defenses and motions to compel arbitration and stay proceedings.

88.     Plaintiff and the members of the Roaming Charge Class relied to their detriment on Defendants' unfair, deceptive and unlawful business practices.   Had Plaintiff and the members of the Roaming Charge Class been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, (1) keeping their phones off, (2) forwarding all calls, and/or (3) informing friends, family and business associates not to call them while they were traveling abroad.  They would have also sent fewer (or not) text, video and picture message while they were traveling abroad.

89.     Defendants engage in these unfair practices to increase their profits.  Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, et seq. of the California Business and Professions Code.

90.     The aforementioned practices, which Defendants have used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

91.     Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiff, the general public, or those similarly situated by means of the unfair and/or deceptive trade practices complained of herein, plus interest thereon.

92.     Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the unfair trade practices complained of herein.  The acts complained of herein occurred, at least in part, within four (4) years preceding the filing of the original Complaint in this action.

93.     Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described trade practices are unfair, unlawful and/or fraudulent and injunctive relief restraining Defendants from engaging in any of such deceptive, unfair and/or unlawful trade practices in the future.   Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that the Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same.  This expectation of future

-23-

violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

94.     As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

95.     As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

    A.    On Causes of Action Number 1 against Defendants and in favor of Plaintiff and the other members of the Roaming Charge Class:

        1.  For the greater of actual or compensatory damages according to proof;

        2.  For restitution pursuant to, without limitation, the California Business & Professions Code §§ 17500, et seq;

        3.  For injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17500, et seq;

    B.    On Cause of Action Number 2 against Defendants and in favor of Plaintiff and the other members of the Roaming Charge Class and the Compelled Arbitration Class:

        1.  For restitution and injunctive relief pursuant to California Civil Code section 1780;

1            2    For actual damages, in sum not less than $1000;

2            3    For punitive damages; and

3            4.   For statutory damages in the amount of $5000 for each Class Mem-

4                 ber who is a disabled person or senior citizen;

5    C.    On Cause of Action Number 3 against Defendants and in favor of Plaintiff

6          and the other members of the Roaming Charge Class:

7            1.   An award of compensatory damages, the amount of which is to be

8                 determined at trial; and

9            2.   An award of punitive damages, the amount of which is to be deter-

10                mined at trial;

11   D.    On Causes of Action Number 4 against Defendants and in favor of Plaintiff

12         and the other members of each Class:

13           1.   For restitution of monies acquired by Defendants by means of the

14                unfair and/or deceptive trade practices pursuant to, without limita-

15                tion, the California Business & Professions Code §§ 17200, et seq.;

16           2.   For injunctive relief pursuant to, without limitation, the California

17                Business & Professions Code §§ 17200, et seq.; and

18   D.    On all causes of action against Defendants and in favor of Plaintiff, class

19         members and the general public:

20           1.   For reasonable attorneys' fees according to proof pursuant to, with-

21                out limitation, the California Legal Remedies Act and California

22                Code of Civil Procedure § 1021.5;

23           2.   For costs of suit incurred; and

24           3.   For such further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated:  September 30, 2009                    **GUTRIDE SAFIER LLP**

_____
Adam J. Gutride, Esq.
Seth A. Safier, Esq.
835 Douglass Street
San Francisco, California 94114

Attorneys for Plaintiff