ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
L. JAY KUO (State Bar No. 173293)
GUTRIDE SAFIER LLP
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 336-6545
Facsimile: (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNA

| | |
|---|---|
| STEVEN MCARDLE, an individual, on behalf of himself, the general public and those similarly situated<br><br>Plaintiff,<br><br>v.<br><br>AT&T MOBILITY LLC; NEW CINGULAR WIRELESS PCS LLC; NEW CINGULAR WIRELESS SERVICES, INC., AND DOES 1 THROUGH 50<br><br>Defendants | Case No. CV-09-01117 (CW)<br><br>**COVER PAGE TO JOINT LETTER RE DISCOVERY DISPUTE** |

  The undersigned hereby attest that, on February 16, 2010, they met in person to resolve their discovery dispute regarding the disclosure of contact information for putative class members. Despite the parties' good faith efforts, the parties were unable to resolve their differences. The parties according submit the attached jointly-signed letter.

///

1 | DATE: February 25, 2010

GUTRIDE SAFIER LLP

/s/ Seth A. Safier

---

Seth A. Safier
Attorneys for *Plaintiff*


MAYER BROWN LLP

/s/ Kevin Ranlett

---

Kevin Ranlett
Attorneys for *Defendants*

February 25, 2010

Honorable Maria-Elena James
United States District Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

  Re: *McArdle v. AT&T Mobility LLC*, No. 09-cv-01117-CW (MEJ) – Redactions Dispute

Dear Judge James:

  The parties submit this jointly signed letter pursuant to this Court's standing order.

**I. JOINT FACTUAL STATEMENT**

  Plaintiff is a California customer of AT&T Mobility ("ATTM") (formerly known as Cingular). He asserts that after he travelled outside the United States, he was billed international-roaming fees for several one-minute-long telephone calls, even though he had not placed or answered any calls. He claims that Defendants often charge one-minute international-roaming fees when an incoming call rings the customer's phone, even if the phone is not answered, and then again when the incoming call is automatically routed to voicemail, even if the voicemail is not checked. Seeking to represent a putative class of similarly situated California customers, Plaintiff alleges that Defendants failed adequately to disclose their practices, in violation of California law. Defendants contend that the disclosures are adequate.

  This dispute centers on two discovery requests, as limited during the meet-and-confer process. First, Plaintiff seeks customer complaints and inquiries regarding the assessment of international-roaming charges where the customer claims he or she did not place or answer the call. Second, Plaintiff seeks the contact information for all California customers who, during the class period, incurred international-roaming fees for one-minute incoming or outgoing calls.

  Defendants are producing responsive customer complaints and inquiries, but are redacting the customer names, phone numbers, and other personal information. Defendants have refused to provide the identities and contact information for customers charged for one-minute international calls.

**II. PLAINTIFF'S POSITION**

  No statutory or constitutional privacy interest is infringed by Plaintiff's requests; not only did Defendants warn customers in their Privacy Policy that their identities and contact information would *not* be kept confidential in this setting, but the contact information sought is not sensitive; it would be used to *help* class members; and it would be produced subject to protective order. Indeed, the thousands of redacted complaints show that the problem alleged in the Complaint affected many people, all of whom will have information regarding the challenged business practices. The requested information will also be relevant to class certification issues including commonality, typicality of the named Plaintiff's experiences, and superiority of the class action device.

1

Courts are obligated to permit discovery of information that may be necessary in determining whether to certify a class. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). The responding party bears a heavy burden of demonstrating why discovery should be denied. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

Because this case is in diversity jurisdiction, and the substantive claims are made under California law, this Court is required to look to California law to determine the scope of any privileges against production, such as privacy rights of customers. *See Hill v. Eddie Bauer*, 242 F.R.D. 556, 562 (C.D. Cal. 2007) *citing* Fed. R. Evid. 501. In California, "contact information regarding the identity of potential class members is discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case." *Pioneer Elecs. (USA), Inc. v. Superior Court,* 40 Cal. 4th 360 (2007). There is no requirement that the customers have previously complained. *See, e.g., Crab Addison, Inc. v. Superior Court*, 169 Cal. App. 4th 958 (2008) (ordering disclosure of all class members' names, addresses, and telephone numbers); *Bartold v. Glendale Fed. Bank,* 81 Cal. App. 4th 816, 820–821, 836 (2000); *Budget Fin. Plan v. Superior Ct.*, 34 Cal. App. 3d 794, 799–800 (1973); *see also Atari, Inc. v. Superior Court*, 166 Cal. App. 3d 867 (1985) ("no persuasive objection to use of this kind of precertification communication by class-action plaintiffs to potential class members"). Federal district courts have therefore repeatedly required Defendants to produce names and contact information for potential class members. *See, e.g., Sanbrook v. Office Depot*, 2009 U.S. Dist. LEXIS 30852 (N.D. Cal. Mar. 27, 2009); *Eddie Bauer*, 242 F.R.D. at 562; *Salazar v. Avis Budget Group, Inc.,* 2007 U.S. Dist. LEXIS 97310 (S.D. Cal. Oct. 10, 2007) (class member contact information to be disclosed per Rule 26(a)(1)).

Here, the customers had no reasonable expectation that their contact information would be kept private, because Defendants told them in the Privacy Policy that their names, addresses, telephone numbers and email addresses could be produced to third parties in response to "lawful discovery requests" and that customers were so consenting by using their cell phones.[1] Indeed, Defendants retained the right to divulge even more information than requested here—including social security numbers—and without Court supervision—unlike here, where disclosure will be subject to a protective order.

California Public Utilities Code § 2891, cited by Defendants, does not bar disclosure for at least three reasons. First, the statute has nothing to do with the situation here. It is designed to prevent disclosure of "calling patterns," "credit or other personal financial information," "services" purchased, and "demographic information." See Pub. Util. Code § 2891(a). It does not preclude disclosure of customer identities or contact information. Indeed, the statute goes on to make clear that customer identities and contact information are not among the types of

---

[1] Defendants' Privacy Policy notifies customers that "We may provide Personal Information to non-AT&T companies or other third parties (for example, to government agencies, credit bureaus and collection agencies) without your consent for certain purposes, such as: To comply with court orders, subpoenas, lawful discovery requests and other legal or regulatory requirements, and to enforce our legal rights or defend against legal claims." It broadly defines "Personal Information" as "information that directly identifies or reasonably can be used to identify an individual Customer or User," including "name, address, telephone number, email address, Social Security number, and financial account number." The Privacy Policy states that it becomes binding on customers in that "[a]ll use of AT&T's products and services, as well as visits to our Web sites, are subject to this Privacy Policy." *See* http://www.att.com/gen/general?pid=11561

information covered, as it states "This section does not apply to any of the following: (1) Information provided by residential subscribers for inclusion in the corporation's directory of subscribers; (2) Information customarily provided by the corporation through directory assistance services."[2]  *Id.* § 2891(d).  Nor does it say anything about disclosure, pursuant to a protective order, to lawyers serving as fiduciaries to the proposed class.  Second, the statutory protections have been either satisfied or waived by the Privacy Policy, which expressly provides that customer identities and contact information *may* be disclosed.  Defendants apparently themselves believe that the Privacy Policy allows them to disclose "Personal Information" in exactly these circumstances, and that customers have consented to the policy by using their cell phones.  Third, disclosure can be permitted under order of this Court, without first requiring customers to provide additional written consent, under section 2894 of the Public Utilities Code, which provides a further exemption to the statute for any "disclosure …in good faith compliance with the terms of a state or federal court warrant or order…."[3]

Defendants cite a single case regarding Public Utilties Code section 2891, which is inapposite.  In *In re Farsheedi*, 2009 WL 4572745, at *1 (N.D. Cal. Dec. 4, 2009), plaintiff subpoenaed defendant's cell phone records from a third party, without defendant's consent, and the bankruptcy court denied plaintiff's motion to compel.  But the case is distinguishable on numerous grounds, including: (1) Plaintiff does not seek any actual cell phone records, merely identities and contact information, (2) Plaintiff is not an adversary to the persons whose information being sought, but rather is their fiduciary, and (3) the information sought will not be used against the customers, but rather to advance their interests.

Defendants also cite section 1985.3(f) of the California Code of Civil Procedure, but that statute does not apply because, among other things, it merely incorporates by reference section 2891 of the Public Utilities Code.  *See* Code Civ. Proc. § 1985.3(f).

If the Court believes it necessary, it may order Defendants to send (at their expense or joint expense) a letter providing customers the opportunity to opt out of having their contact information produced.  Plaintiff is not aware of any court ordering the letter to be opt-in.  *See Pioneer*, 40 Cal. 4th at 374 (finding that "requiring an affirmative waiver from persons whose personal identifying information is sought by others could have potentially adverse effects in cases brought to redress a variety of social ills, including consumer rights litigation.")  To the contrary, an opt-out letter is the norm.  *See, e.g., Crab Addision,* 169 Cal. App. 4th at 975; *Puerto,* 158 Cal.App.4th at p. 1256 (specifically rejecting "the opt-in system imposed by the trial court")**.**

---

[2] Plaintiffs acknowledge that cell phone numbers are not typically listed in directories.  But the exception shows that the purpose of the statute was not to prevent disclosure of names and contact information.

[3] The statute states, "notwithstanding subdivision (e) of Section 2891, the disclosure of any information by an interexchange telephone corporation…in good faith compliance with the terms of a state or federal court warrant *or* order *or* administrative subpoena issued at the request of a law enforcement official or other federal, state, or local governmental agency for law enforcement purposes is a complete defense against any civil action brought under this chapter or any other law…for the wrongful disclosure of that information." (emphasis supplied.)  Defendants argue that such an order must be issued at the "request of a law enforcement official or other federal, state, or local governmental agency for law enforcement purposes."  But that requirement only applies to an "administrative subpoena."

### III.   DEFENDANTS' POSITION

**1.  Customers must affirmatively opt into disclosure.**  A telephone company may not disclose its customers' information without their affirmative written consent: "a telephone * * * corporation" may not "make available to any other person" "personal calling patterns" or "[d]emographic information about individual residential subscribers, including aggregate information from which individual identities and characteristics have not been removed" "*without first obtaining the residential subscriber's consent, in writing*[.]"  Cal. Pub. Util. Code § 2891(a) (emphasis added).  The complaints and call logs at issue here would, if unredacted, reveal subscribers' "calling patterns" and "demographic information."  The list of customers charged for one-minute calls would reveal "aggregate information from which individual identities * * * have not been removed."  This would represent a massive invasion of customers' privacy.  Thus, in light of Section 2891, a bankruptcy judge in this District denied a motion to compel discovery of a T-Mobile customer's records and granted attorneys' fees to T-Mobile for opposing the request.  *See In re Farsheedi*, 2009 WL 4572745, at *1 (N.D. Cal. Dec. 4, 2009).

Plaintiff first suggests that disclosure of customer names and phone numbers is not regulated at all by the statute.  But the exceptions to the statute he relies upon—ones permitting disclosure to "directory assistance services" or to compile a subscriber "directory" (Cal. Pub. Util. Code § 2891(d)(1)-(2))—would be meaningless if customer names and phone numbers were not otherwise protected from disclosure.  Moreover, as Plaintiff concedes, wireless numbers generally are not available in phone directories or by directory assistance.

Plaintiff also asserts that Section 2891 is inapplicable because he says he is a "fiduciary" to the putative class.  That assertion is not only premature (no class has been certified), but also is besides the point.  True, *some* privacy statutes—*e.g.,* the one applicable to banks—authorize disclosure "to persons acting in a fiduciary or representative capacity on behalf of the consumer."  *Stone v. Advance Am.*, 2009 WL 4722924 (S.D. Cal. Dec. 4, 2009) (quoting Cal. Fin. Code § 4056(b)(2)(E)).  But there is no such exception in Section 2891.  Moreover, Plaintiffs seek information about customers who are not putative class members.

Plaintiff next contends that his request falls under an exception for disclosures "in good faith compliance with the terms of a state or federal court warrant or order or administrative subpoena issued at the request of a law enforcement official or other federal, state, or local governmental agency for law enforcement purposes."[4]  *Id.* § 2894(a).   Plaintiff seizes upon the word "order" and insists that any discovery "order" allows disclosure.  *See supra* n.4.  But it is apparent that the word "order"—like "warrant" or "administrative subpoena"—is limited to orders stemming from requests by government officials "for law enforcement purposes."   Plaintiff's approach also would nullify California's law barring subpoenas (which are court orders) "for personal records maintained by a telephone corporation * * * unless it includes a consent to release, signed by the consumer whose records are requested, as required by Section 2891 of the Public Utilities Code."  Cal. Code Civ. Proc. § 1985.3(f).

Plaintiff also asserts that ATTM's privacy policy on its web site constitutes the requisite

---

[4] Plaintiff's initial motion to compel discovery deliberately misquoted the statute by omitting the repeated limitations in the statute to requests by "law enforcement official[s]" for "law enforcement purposes."  Dkt. #87 at 9.

"consent." But a consumer's "consent to release" of information under "Section 2891" must be "signed by the consumer whose records are requested." Cal. Code Civ. Proc. § 1985.3(f).

Plaintiff cites cases that he says allow discovery of putative class members' identities without prior consent (or on an opt-out basis). But none of those cases involved phone companies or Section 2891, and so they balanced the need for discovery versus privacy rights without legislative direction. Thus, in *Sanbrook* the court ordered disclosure of Office Depot customer identities without prior consent, but only because "the California legislature did *not* include the kind of customer contact information at issue here when it imposed a statutory requirement of advance notice to consumers when certain kinds of private information is subpoenaed." 2009 WL 840019, at *1 (Trumbull, M.J.) (citing Cal. Code Civ. Proc. § 1985.3). Indeed, the California Supreme Court has directed use of an opt-in notice procedure when a plaintiff sought contact information for other insureds because a statute similar to Section 2891 applies to disclosures of an insurance company's customer information. *See Colonial Life & Accident Ins. Co. v. Super. Ct.*, 647 P.2d 86, 90 n.10 (Cal. 1982); *see also Pioneer Elecs.*, 150 P.3d at 203 (opt-in notice may be "mandated by the express provisions" of a statute); *Puerto v. Super. Ct.*, 70 Cal. Rptr. 3d 701, 713 n.6 (Ct. App. 2008) ("Exceptions to this general rule" dispensing with an opt-in notice "exist where the Legislature has accorded particular information a higher level of privacy protection."). Moreover, the balancing here tips decisively against disclosure. Plaintiff does not need to contact these customers at this early stage because Defendants already are producing the complaint files and call logs. Plaintiff certainly does not need to contact *every* customer. Courts routinely prohibit such fishing expeditions. *See Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 416 (9th Cir. 1985) (affirming denial of pre-certification motion to identify similarly situated investors); *Dziennik v. Sealift, Inc.*, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) (citing cases).

**2. Cost of notice.** Plaintiff should pay notice costs, including for a claims administrator. The longstanding rule in federal court is that "the plaintiff must pay for the cost of notice [to a class] as part of the ordinary burden of financing his own suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178-79 (1974). The accepted practice in California courts is that the plaintiff pays for pre-certification notices. *See, e.g.*, *Murphy v. Check 'N Go of Cal., Inc.*, 2008 WL 7425711 (Cal. Super. Ct. July 21, 2008) ("Plaintiff is to bear all costs associated with the mailing" of a *Pioneer* notice). And because Plaintiff has not shown that he is likely to prevail on class certification or the merits, it would violate due process to impose notice costs on Defendants.

**3. Only customers who complained or inquired about the charges Plaintiff challenges should be subject to disclosure**. Moreover, Plaintiff's discovery requests sweep far broader than potential class members—unlike in any case he cites. Plaintiff has limited his document request to complaints and inquiries about charges for the same roaming fees that he challenges.

His interrogatory, however, seeks the contact information for any California customer who incurred roaming charges for any one-minute call. That purported proxy for potential class members is massively overbroad. Indeed, Plaintiff does not even limit the request to outgoing calls to voicemail. In any event, customers abroad often keep calls very short to save money; thus many short calls are *not* unanswered calls that were then sent to voicemail. And because Plaintiff waited until after filing his initial motion to compel to suggest this one-minute charge criteria, Defendants have not had time to ascertain whether it could identify such customers. .

5

Sincerely,

/s/ Seth A. Safier  /s/ Kevin Ranlett

_____  _____

Seth A. Safier, Esq.,  Kevin Ranlett
Attorneys for Plaintiff  Attorneys for Defendants