IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN MCARDLE, an individual, on behalf of himself, the general public and those similarly situated,<br><br>　　Plaintiff,<br><br>　　v.<br><br>AT&T MOBILITY LLC; NEW CINGULAR WIRELESS PCS LLC; and NEW CINGULAR WIRELESS SERVICES, INC.,<br><br>　　Defendants.<br>_____/ | No. C 09-1117 CW<br><br>ORDER GRANTING DEFENDANTS' RENEWED MOTION TO COMPEL ARBITRATION AND STAY ACTION |

　　Defendants AT&T Mobility LLC, New Cingular Wireless PCS LLC, and New Cingular Wireless Services, Inc. (collectively, ATTM) have filed a renewed motion to compel arbitration of Plaintiff Steven McArdle's claims.[1]  Plaintiff opposes the motion.  Having considered the parties' papers and oral argument on the matter, the Court GRANTS Defendants' motion.

BACKGROUND

　　ATTM is a cellular telephone service provider.  It owns New Cingular Wireless PCS LLC and New Cingular Wireless Services, Inc.  McArdle is a customer of ATTM who asserts claims, on behalf of himself and all others similarly situated, under California law

---

[1] In a separately filed order, the Court granted Defendants' unopposed motion to compel arbitration of Kenneth Thelian's claims in the related case, Thelian v. AT&T Mobility LLC, No. 10-3440.

for false advertising, unfair business practices, fraud and violation of the Consumers Legal Remedies Act.

McArdle's service agreement with ATTM contains a provision that requires the parties to the agreement to arbitrate "all disputes and claims" between them. The provision prohibits ATTM's customers from pursuing claims in arbitration on behalf of a class of individuals. According to its express terms, the prohibition on class arbitration is not severable from the rest of the arbitration provision.

Relying upon Discover Bank v. Superior Court, 36 Cal. 4th 148 (2005), and Shroyer v. New Cingular Wireless Services, Inc., 498 F.3d 976 (9th Cir. 2007), the Court entered an order dated September 14, 2009, finding that the class arbitration waiver was unconscionable. Moreover, because the class arbitration provision was expressly not severable from the other portions of the arbitration provision, the Court found that the arbitration provision as a whole was not enforceable.

ATTM filed an interlocutory appeal of the Court's order and, when the United States Supreme Court granted certiorari in AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011), this Court stayed the case pending the Supreme Court's decision in that case.

Following the April 27, 2011 decision in Concepcion, in which the Supreme Court held that the Discover Bank rule was preempted by the Federal Arbitration Act, the Ninth Circuit reversed and remanded. See McArdle v. AT&T Mobility, 2012 U.S. App. LEXIS 18517 (9th Cir.). The purpose of the remand was for this Court "to consider in the first instance McArdle's arguments based on generally applicable contract defenses." Id. at *2.

2

On April 11, 2013, ATTM filed a renewed motion to compel arbitration and stay the action.

## LEGAL STANDARD

Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1, et seq., written agreements that controversies between the parties shall be settled by arbitration are valid, irrevocable and enforceable. 9 U.S.C. § 2. A party aggrieved by the refusal of another to arbitrate under a written arbitration agreement may petition the district court which would, save for the arbitration agreement, have jurisdiction over that action, for an order directing that arbitration proceed as provided for in the agreement. Id. § 4. See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1005 (9th Cir. 2010) (noting that the party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence). The FAA further provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3. If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id. § 4. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the

3

parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649 (1986) (citations omitted).

The FAA reflects a "liberal federal policy favoring arbitration agreements." Concepcion, 131 S. Ct. at 1745 (citations and internal quotation marks omitted). A district court must compel arbitration under the FAA if it determines that: (1) there is a valid agreement to arbitrate; and (2) the dispute falls within its terms. Stern v. Cingular Wireless Corp., 453 F. Supp. 2d 1138, 1143 (C.D. Cal. 2006) (citing Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000)).

The FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." Concepcion, 131 S. Ct. at 1746. The party opposing arbitration bears the burden of proving that the arbitration provision is unconscionable. Arguelles-Romero v. Superior Court, 184 Cal. App. 4th 825, 836 (2010).

DISCUSSION

I. Broughton-Cruz Doctrine

McArdle first argues that arbitration is foreclosed by California's Broughton-Cruz rule which prohibits arbitration of public injunctive relief claims under the Consumer Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 et seq., and the Unfair Competition Law (UCL), Cal. Bus. and Prof. Code § 17200 et seq., because such claims are "designed to prevent further harm to the public at large rather than to redress or prevent injury to a

4

plaintiff." Cruz v. PacifiCare Health Systems, Inc., 30 Cal. 4th 303, 316 (2003); see also Broughton v. Cigna Healthplans of California, 21 Cal. 4th 1066 (1999).

ATTM argues that the Broughton-Cruz doctrine is not a generally applicable contract defense because it applies only to certain types of cases and only to arbitration. Accordingly, ATTM argues, the Court lacks authority to consider McArdle's Broughton-Cruz argument because that argument exceeds the scope of the Ninth Circuit's mandate. See Mendez-Guttierrez v. Gonzalez, 444 F.3d 1168, 1172 (9th Cir. 2006) ("[A] district court is limited by this court's remand in situations where the scope of the remand is clear.").

McArdle responds that the Court could find that the arbitration provision is unenforceable because it violates the public policy set out in the Broughton-Cruz doctrine. In support of this argument, McArdle cites Fisher v. DCH Temecula Imports LLC, 187 Cal. App. 4th 601, 617 (2010), which holds that there is a "generally available contract defense" in California that "private contracts that violate public policy are unenforceable."

The Broughton court relied on the United States Supreme Court's holding that "not . . . all controversies implicating statutory rights are suitable for arbitration." 21 Cal. 4th at 1075 (quoting Mitsubishi Motors v. Soler Chrysler-Plymouth, 473 U.S. 614, 627 (1985).[2] The Broughton court held that the issue of

---

[2] As discussed more fully below, both the majority and the dissent in American Express Co. v. Italian Colors Restaurant, 133 S. Ct. 2304 (2013), made clear that Mitsubishi Motors applies only to federal statutory claims. This further calls into question the continuing viability of the Broughton-Cruz rule.

5

suitability "turns on congressional intent, which can be discovered in the text of the statute in question, its legislative history or in an inherent conflict between arbitration and the statute's underlying purposes." 21 Cal. 4th at 1075 (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991)) (internal quotation marks omitted). The Broughton court went on to hold that "two factors taken in combination" evidenced an inherent conflict "between arbitration and the underlying purpose of the CLRA's injunctive relief remedy." 21 Cal. 4th at 1082. The two factors were that the relief sought was "for the benefit of the general public rather than the party bringing the action" and that "the judicial forum [had] significant institutional advantages over arbitration in administering a public injunctive remedy." Id. In Cruz, the California Supreme Court held that Broughton remained good law in the wake of intervening United States Supreme Court decisions and extended its holding to public injunctive relief claims under the UCL. 30 Cal. 4th at 311-16.

    The Broughton-Cruz doctrine applies only to arbitration agreements and only to certain claims brought pursuant to the CLRA and UCL. Although the Broughton-Cruz doctrine is based on public policy concerns, it is not a generally applicable contract defense as contemplated by the FAA. See Concepcion, 131 S. Ct. at 1746-47 (holding that, even though the Discover Bank rule finds "its origins in California's unconscionability doctrine and California's policy against exculpation," it is not a generally applicable contract defense). Because the Broughton-Cruz rule is not a generally applicable contract defense, it does not survive Concepcion.

6

McArdle argues that the Ninth Circuit's en banc opinion in Kilgore v. Key Bank, 718 F.3d 1052 (9th Cir. 2013) (Kilgore II), "preserved the viability of" the Broughton-Cruz doctrine. Opposition at 8. This argument is based on the fact that the panel opinion in Kilgore v. Key Bank, 673 F.3d 947 (9th Cir. 2010) (Kilgore I), held that the Broughton-Cruz doctrine was preempted by the FAA in light of Concepcion. McArdle notes that the en banc decision did not reach the preemption issue and contends that this indicates that the Broughton-Cruz rule survives Concepcion. In fact, the en banc court held, "Even assuming the continued viability of the Broughton-Cruz rule, Plaintiffs' claims do not fall within its purview." Kilgore II, 718 F.3d at 1060. Kilgore II expressly did not decide the continued viability of the Broughton-Cruz rule. For the reasons stated above, the Court finds that the Broughton-Cruz rule is preempted by the FAA in light of Concepcion.

II. Bar to Public Injunctive Relief

McArdle next argues that the arbitration agreement is unenforceable because it "purports to bar customers from seeking public injunctive relief in any forum." Opposition at 15. The arbitration agreement provides, "The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." Figueroa Dec., Ex. 2, ¶ 2.2(6). McArdle argues that this waiver of the right to seek public injunctive relief under the CLRA and UCL is unconscionable because it undermines the purposes of the statutes,

7

which provide that individuals may seek public injunctive relief. See Cal. Bus. & Prof. Code § 17203; Cal. Civ. Code § 1780(a)(2).

In other words, McArdle argues, even if Concepcion permits ATTM to compel arbitration of his CLRA and UCL claims, ATTM cannot preclude the arbitrator from awarding public injunctive relief. However, this argument relies on the United States Supreme Court's decision in Mitsubishi Motors for the proposition that "by agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by statute; it only submits to their resolution in an arbitral, rather than a judicial forum." 473 U.S. at 628. Some courts have limited this "effective vindication" rule, applying it only to federal statutory rights, while others extended the rule to state statutory rights, such as the rights McArdle asserts in this case. However, in a recent Supreme Court case, American Express Co. v. Italian Colors Restaurant, the majority strongly suggested that the effective vindication rule applies only to federal statutory rights, repeatedly referring to federal rights or the pursuit of federal remedies. See, e.g., 133 S. Ct. at 2310 n.2 (discussing "potential deprivation of a claimant's right to pursue federal remedies"); id. at 2311 (discussing "'effective vindication' of a federal right"). The dissenting justices in American Express stated the point even more clearly in their effort to distinguish the case they were considering from Concepcion.

> And if that is not enough, [Concepcion] involved a state law, and therefore could not possibly implicate the effective-vindication rule. When a state rule allegedly conflicts with the FAA, we apply standard preemption principles, asking whether the state law frustrates the FAA's purposes and objectives. If the state rule does so—as the Court found in [Concepcion]—the Supremacy

8

> Clause requires its invalidation. We have no earthly interest (quite the contrary) in vindicating that law. Our effective-vindication rule comes into play only when the FAA is alleged to conflict with another federal law, like the Sherman Act here.

American Express, 133 S. Ct. at 2320 (Kagan, J. dissenting).

Moreover, the other cases McArdle cites are distinguishable. McArdle relies on Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996 (9th Cir. 2010), for the proposition that a waiver of a statutory right to injunctive relief is substantively unconscionable and accordingly unenforceable. In Bridge Fund, the Ninth Circuit affirmed the district court's finding that class action and injunctive relief waivers in the arbitration provision of a franchise contract were unconscionable and unenforceable. However, Bridge Fund relied in large part on a California Court of Appeal case which held that such waivers were unenforceable by applying the California Supreme Court's decision in Discover Bank to the California Franchise Investment Law. Bridge Fund, 622 F.3d at 1004 (citing Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court, 133 Cal. App. 4th 396 (2005)). As discussed above, the Discover Bank rule is preempted by the FAA.

McArdle also relies on a line of cases in which courts have found that representative action waivers cannot apply to California Private Attorney General Act (PAGA) claims. However, McArdle fails to address a key difference between, on the one hand, the CLRA and UCL, which permit an individual to seek public injunctive relief and, on the other, PAGA, which allows an individual to seek penalties under the Labor Code in an action brought "on behalf of himself or herself and other current or former employees." Cal. Lab. Code § 2699. The courts that have

9

found representative action waivers unconscionable in PAGA cases have specifically noted this limitation. See, e.g., Urbino v. Orkin Servs. of Cal, 882 F. Supp. 2d 1152, 1167 (C.D. Cal. 2011) (noting that a court that found such waivers enforceable under Concepcion "failed to take into account that there are no separate individual claims in a PAGA action"), rev'd on other grounds, 2013 U.S. App. LEXIS 16718 (9th Cir.); Brown v. Ralph's Grocery Co., 197 Cal. App. 4th 489, 503 (2011). The Court finds that these cases are not applicable here.

## CONCLUSION

For the reasons stated above, the Court GRANTS ATTM's motion to compel arbitration and stay the action. (Docket No. 222) The case is stayed pending arbitration, which must be diligently pursued.[3] Nothing contained in this order shall be considered a dismissal or disposition of this action, and, should further proceedings become necessary or desirable, any party may move to restore the case to the Court's calendar.

IT IS SO ORDERED.

Dated: 9/25/2013

CLAUDIA WILKEN
United States District Judge

---

[3] There appears to be no further reason at this time to maintain the file as open for statistical purposes, and the Clerk is instructed to submit a JS-6 Form to the Administrative Office.

10