**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
KRISTEN G. SIMPLICIO (State Bar No. 263291)
100 Pine Street, Suite 1250
San Francisco, California 94114
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN MCARDLE, an individual, on behalf of himself, the general public and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AT&T MOBILITY LLC; NEW CINGULAR WIRELESS PCS LLC; NEW CINGULAR WIRELESS SERVICES, INC., AND DOES 1 THROUGH 50,<br><br>Defendants. | Case No. CV-09-01117 (CW)<br><br>**PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER COMPELLING ARBITRATION**<br><br>Date: July 25, 2017<br>Ctrm: 2, 4th Floor<br>Time: 2:30 pm<br>Judge: Hon. Claudia Wilken |

# **TABLE OF CONTENTS**

I.   BACKGROUND AND PROCEDURAL HISTORY ........................................................ 1

    A.   Summary of Plaintiff's Claims.............................................................................. 1

    B.   Procedural history................................................................................................. 2

II.  ARGUMENT .................................................................................................................. 4

    A.   The Arbitration Agreement is Unenforceable Pursuant to the California Supreme Court's Recent Decision in *McGill v. Citibank*. ...................................... 4

    B.   The Federal Arbitration Act Does Not Pre-empt *McGill*........................................ 5

        1.   The *McGill* Rule is a Generally Applicable Contract Defense.................... 7

        2.   The *McGill* Rule Does Not Conflict with the FAA's Objectives. ............... 7

            a.   The *McGill* Rule is Not Hostile to Arbitration.............................. 7

            b.   The *McGill* Rule Does Not Interfere With Any of the Fundamental Attributes of Arbitration. ......................................... 8

III. *McGill* Also Supports Plaintiff's motion to vacate the arbitral award .............................11

IV.  CONCLUSION .............................................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*AT&T Mobility LLC v. Concepcion,* 563 U.S. 333 (2011) ................................................... passim

*Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005) ............................................................ 2

*French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902 (9th Cir. 1986) ................ 11

*Hemmings v. Tidyman's Inc.*, 285 F.3d 1174 (9th Cir. 2002) ........................................................ 5

*Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014) ............................................. 6

*McArdle v. AT&T Mobility,* 657 F.Supp.2d 1140 (N.D. Cal. 2009) .............................................. 2

*McArdle v. AT&T Mobility, LLC,* 474 F. App'x 515 (9th Cir. 2012) ............................................ 2

*McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 2017 WL 1279700 (2017) .................................... passim

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) ........................................ 6

*Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015) ................................ passim

*Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976 (9th Cir. 2007) ...................................... 2

*Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243 (C.D. Cal. 2016) ........................... 5

*Victa v. Merle Norman Cosmetics, Inc.*, 19 Cal. App. 4th 454 (1993) ........................................ 10

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................. 10

**Statutes**

9 U.S.C. § 10(a)(4) ...................................................................................................................... 11

9 U.S.C. § 2 .................................................................................................................................... 6

Plaintiff Steven McArdle respectfully moves for reconsideration of the Court's order of September 25, 2013, compelling arbitration. (Dkt.# 257.) Since the time of the Court's order, the California Supreme Court issued a new rule that any agreement that waives an individual's right to seek public injunctive relief in any forum—judicial or arbitral—is unenforceable pursuant to California law. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 2017 WL 1279700 *7 (2017). This is a substantive change in the law that directly bears on the arbitrability of the claims at issue in this case. The arbitration agreement between Plaintiff and AT&T includes a waiver of the right to seek public injunctive relief. It also contains a "poison pill" provision that renders the entire agreement to arbitrate void should any provision be deemed unenforceable. Accordingly, none of Plaintiff's claims are subject to arbitration and this Court should reconsider its prior order and deny AT&T's motion to compel arbitration.

## I.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Summary of Plaintiff's Claims

Since at least 2005, AT&T has made misleading and false representations to its customers regarding the exorbitant per-minute international roaming rates it would assess on mobile telephone calls the customers did not answer and voicemail messages they did not check when those customers travelled internationally. AT&T received thousands of complaints from California customers who were confused by the charges. Plaintiff was one such individual. He incurred per-minute international roaming charges while he travelled in Italy, for calls that were placed to him from the United States, even though he never answered the calls, checked voicemail, or otherwise used his mobile telephone service. He filed a complaint against AT&T in California state court, on behalf of himself and similarly situated California customers, for false advertising, violations of the Consumer Legal Remedies Act ("CLRA") and the Unfair Competition Law ("UCL"), and fraud or misrepresentation. The complaint seeks actual damages, punitive damages, restitution, public injunctive relief, and attorneys' fees. Among other things, he seeks to enjoin AT&T from collecting such fees in the future from millions of other California customers.

B.  **Procedural history**

AT&T first moved to compel arbitration shortly after removing this case to federal court in 2009. (Dkt #47). AT&T pointed to an arbitration provision that provided, in relevant part:

> (1) AT&T and you agree to arbitrate all disputes and claims between us.
>
> * * *
>
> (6) The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. If this specific provision is found unenforceable, the entirety of this arbitration provision shall be null and void.

Dkt.# 229, Declaration of Debra Figueroa in Support of Defendants' Renewed Motion to Compel Arbitration and Stay Action, Ex. 2, p. 6–8, § 2.2.

This Court initially denied the motion to compel arbitration, relying on the Ninth Circuit's decision in *Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976, 986 (9th Cir. 2007), which in turn was based on the California Supreme Court's decision in *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162-63 (2005). *McArdle v. AT&T Mobility,* 657 F.Supp.2d 1140, 1146 (N.D. Cal. 2009). This Court also noted that "Defendants have established a system whereby they can continue to keep the profits from their allegedly unlawful charges so long as they offer to refund the charges to the few customers who dispute them." *Id.* Discovery proceeded, and the parties completed briefing on the issue of class certification. (Dkt. #137).

AT&T appealed the denial of its motion to compel arbitration, and during the pendency of the appeal, the United States Supreme Court ruled in *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333 (2011), that the Federal Arbitration Act ("FAA") preempted the *Discover Bank* rule. *Id.* at 339. In his answering brief, Plaintiff argued that the Ninth Circuit should remand so that this Court could consider alternative basis for invalidating the arbitration agreement not addressed by *Concepcion*, including that the agreement's complete waiver of the right to seek public injunctive relief was unenforceable. The Ninth Circuit reversed only on the ground that the *Discover Bank* rule was preempted, and remanded with instructions that this Court "consider . . . arguments based on generally applicable contract defenses." *McArdle v. AT&T Mobility, LLC,* 474 F. App'x 515, 516 (9th Cir. 2012), as amended on denial of reh'g (Aug. 31, 2012).

On remand, AT&T filed a renewed motion to compel arbitration. (Dkt. #222.) In opposition to that motion, Plaintiff argued, *inter alia*, that the arbitration agreement's waiver of the right to seek public injunctive relief in any forum was unenforceable. (Dkt. #237 at 15–18.) The Court asked AT&T to state whether, the poison pill provision referred only to the immediately preceding clause of section 2.2(6) or if it would come into effect if the purported waiver of the right to seek public injunctive relief was unenforceable. AT&T answered that the poison pill provision "refers to all of Section 2.2(6)." (Dkt. # 245.)

This Court nevertheless granted the motion to compel arbitration, rejecting Plaintiff's argument about the unwaivability of public injunctive relief. (Dkt. # 257 at 7–8.) However, neither Plaintiff's argument nor the Court's ruling were based on a pronouncement from the California Supreme Court regarding the enforceability of such a clause under California law. (*Id.* at 7–10.) The Court compelled the parties to arbitration and stayed the action. (*Id.* at 10.)

While the arbitration was pending, the California Supreme Court granted a petition for review in *McGill v. Citibank* to assess the enforceability of public injunctive relief waivers under California law. Plaintiff asked the arbitrator to stay the arbitration pending the California Supreme Court's decision in *McGill*. Plaintiff argued that the California Supreme Court was likely to rule that claims for public injunctive cannot be waived and must remain in court, so the arbitrator would have no authority to hear the case, per the poison pill provision in the agreement. The arbitrator rejected these arguments. (Dkt. #263-1, Simplicio Decl., Ex. B.) Instead, the arbitrator sought and obtained approval from AT&T for additional compensation, eventually receiving total fees of $16,253.49. (Dkt. #263-1, Simplicio Decl., Ex. A.)

The arbitration proceeded on June 27–28, 2016, and the arbitrator issued a decision on September 16, 2016. (*Id.*) The arbitrator found for AT&T on the ground that "Plaintiff failed to prove that he was deceived about AT&T's international roaming charges, including those routed to voicemail, because of inadequate disclosures." (*Id.* at 4.) He then ruled that "In light of the above conclusions, it is not necessary to address the additional contentions of the parties (e.g.,… injunctive relief)." (*Id.* at 5.)

3

PLAINTIFF'S MOTION FOR RECONSIDERTION OF ORDER COMPELLING ARBITRATION

On December 16, 2016, Plaintiff timely moved this Court to vacate the arbitral award. Plaintiff moved on two grounds: (1) the Arbitrator should have postponed the arbitration due to the California Supreme Court's imminent decision in *McGill*; and (2) the arbitrator exceeded his authority because the "arbitration provision is void by its own terms in that it purports to waive an unwaivable right." (Dkt. #263 at 2–3, 6.) Plaintiff also informed the Court that the California Supreme Court had already held oral argument in *McGill* and that a decision was imminent and that the decision was likely to have a direct impact on the enforceability of the arbitration agreement. (*Id.* at 5.) Plaintiff further informed the Court that, should the California Supreme Court hold that public injunctive relief waivers were unenforceable under California law, Plaintiff would seek leave to file a motion for reconsideration of the Court's order compelling arbitration and that Plaintiff filed the Motion to Vacate within the time limits set forth by the FAA in order to preserve his right to seek reconsideration of the order compelling arbitration. (*Id.* at 2–3, 5.) This motion followed.

## II.     ARGUMENT

### A.     The Arbitration Agreement is Unenforceable Pursuant to the California Supreme Court's Recent Decision in *McGill v. Citibank*.

In *McGill v. Citibank, N.A.*, the California Supreme Court held that "the waiver in a predispute arbitration agreement of the right to seek public injunctive relief under [the UCL, FAL, and CLRA] . . . in any forum . . . is invalid and unenforceable under California law." 2 Cal. 5th 945, 2017 WL 1279700 at *7 (2017). As the Court explained, "Civil Code section 3513" provides that "a law established for a public reason cannot be contravened by a private agreement." *Id.* Because "the public injunctive relief available under the UCL, the CLRA, and the false advertising law . . . is primarily 'for the benefit of the general public'. . . any attempt to waive the right to bring public injunctive relief claims would violate" section 3513. *Id.* Accordingly, the Supreme Court determined that any such waiver is unenforceable. *Id.*[1]

---

[1] The California Supreme Court made clear that its holding was not based on the *Broughton-Cruz* rule that "Agreements to arbitrate claims for public injunctive relief under the CLRA, the UCL, or the false advertising law are not enforceable in California." 2 Cal. 5th 945, 2017 WL 1279700 at *2. Although the Court initially granted review to determine whether the Federal Arbitration Act preempts the *Broughton-Cruz* rule, it determined that "the *Broughton-Cruz* rule is not at issue in this case." *Id.* * 4. The *Broughton-Cruz* rule addresses only contract provisions that require an

"In interpreting state law, federal courts are bound by the pronouncements of the state's highest court." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002). This Court is therefore bound by the *McGill* rule. *See Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1266 (C.D. Cal. 2016) ("this Court is bound by the California Supreme Court's pronouncement that waiver of an employee's right to bring a PAGA action is against public policy and unenforceable.").

AT&T's arbitration agreement waives the right to seek public injunctive relief in any forum. It accomplishes this by requiring arbitration of "all disputes and claims" (Dkt.# 229, Ex. 2, p. 6, § 2.2.) while at the same time barring the arbitrator from awarding public injunctive relief:

> (6) The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim.

(Id. § 2.2(6).) Because a customer could not ask any court or arbitrator to enjoin AT&T from continuing to engage in any false advertising or other deceptive or unlawful practices, this provision is unenforceable under *McGill*.

Moreover, because the provision waiving the right to seek public injunctive relief is unenforceable, the entire arbitration agreement is null and void under the contract's "poison pill" provision. The last line of section 6 of the agreement states that "If this specific provision [referring to all of section 6] is found unenforceable, the entirety of this arbitration provision shall be null and void." (*Id.*) When this Court considered AT&T's motion to compel arbitration, AT&T admitted that if McArdle's claims for public injunctive relief are not subject to arbitration, the arbitration agreement is void and his entire lawsuit must proceed in court. (Dkt. # 245.) Because *McGill* effectively renders the entire arbitration agreement null and void, this Court should reconsider its Order compelling arbitration.

### B.    The Federal Arbitration Act Does Not Pre-empt *McGill*.

The Federal Arbitration Act ("FAA") does not pre-empt the *McGill* rule. "'The FAA was

---

individual to pursue claims for public injunctive relief in arbitration, rather than in court. *Id*. The provision at issue in *McGill*, however, like the provision at issue here, was a more general waiver that prohibited an individual from bringing claims for public injunctive relief *in any forum at all*, judicial or arbitral. *Id.*

enacted in 1925 in response to widespread judicial hostility to arbitration agreements.'" *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 431 (9th Cir. 2015) (quoting *Concepcion*, 563 U.S. at 339). It provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The final clause of section 2, called the "saving clause" provides that agreements to arbitrate can "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Sakkab*, 803 F.3d at 431 (quoting *Concepcion*, 563 U.S. at 339). It was designed to "'make arbitration agreements as enforceable as other contracts, *but not more so*.'" *Id.* at 434 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12 (1967)) (emphasis added). Although "[t]he FAA contains no express pre-emptive provision" it pre-empts state law in two circumstances: (1) when a contract defense is not "generally applicable," *i.e.*, it "single[s] out arbitration agreements for special treatment;" or (2) when it "conflicts with the FAA's objectives" even if it is a "generally applicable" defense. *Id.* at 431–32 (citing *Concepcion*, 563 U.S. at 339).

In *Sakkab*, the Ninth Circuit recently evaluated FAA preemption and held that the FAA did not preempt a very similar California Supreme Court rule called the *Iskanian* rule. *Id.* at 432–440. The *Iskanian* rule declared that any waiver of an individual's right to bring PAGA claims in any forum was unenforceable. *Id.* at 429; *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 384 (2014). The *Iskanian* Court's rationale was based in part on the exact same California statute on which the *McGill* rule is based, Civil Code section 3513. *Sakkab* 803 F.3d at 431; *Iskanian*, 59 Cal. 4th at 383. Like the UCL action here for public injunctive relief, PAGA claims are brought by an individual civil plaintiff to benefit the public—in that case, other employees; here, other consumers. The Ninth Circuit held that the FAA did not preempt the *Iskanian* rule because *Iskanian* announced a rule that applied equally to arbitration and non-arbitration agreements and did not conflict with the objectives of the FAA. *Sakkab* 803 F.3d at 434–439. *Sakkab* is directly on point and, as discussed more fully below, requires this court to hold that the FAA does not pre-empt the *McGill* rule because it too, like *Iskanian*, is a generally applicable

contract defense that does not conflict with the objectives of the FAA.

### 1. The *McGill* Rule is a Generally Applicable Contract Defense.

The *McGill* rule falls within the ambit of the FAA's saving clause because it is a generally applicable state law contract defense. As the Ninth Circuit explains, a defense is "generally applicable" where it applies "equally to arbitration and non-arbitration agreements." *Id.* at 432. The *Sakkab* court held that the *Iskanian* rule was generally applicable because "[t]he rule bars *any waiver* of PAGA claims, regardless of whether the waiver appears in an arbitration agreement or a non-arbitration agreement." *Id.* (emphasis added). Similarly here, the *McGill* rule bars any waiver of the right to bring public injunctive relief claims, whether the waiver appears in an arbitration or a non-arbitration agreement. As the California Supreme Court explained:

> The contract defense at issue here—"a law established for a public reason cannot be contravened by a private agreement" (Civ. Code, § 3513)—is a generally applicable contract defense, i.e., it is a ground under California law for revoking any contract. It is not a defense that applies only to arbitration or that derives its meaning from the fact that an agreement to arbitrate is at issue. As explained above, a provision in any contract—even a contract that has no arbitration provision—that purports to waive, in all fora, the statutory right to seek public injunctive relief under the UCL, the CLRA, or the false advertising law is invalid and unenforceable under California law.

*McGill*, 2 Cal. 5th 945, 2017 WL 1279700 at *8.

### 2. The *McGill* Rule Does Not Conflict with the FAA's Objectives.

The *McGill* rule is not preempted by the FAA because it does not conflict with the FAA's objectives. In *Sakkab*, the Ninth Circuit identified two main objectives of the FAA: (1) to overcome judicial hostility to arbitration; and (2) to ensure "'private arbitration agreements are enforced according to their terms.'" 803 F.3d at 434 (quoting *Concepcion*, 563 U.S. at 344). Like the *Iskanian* rule, the *McGill* rule does not interfere with either of these objectives.

#### a. The *McGill* Rule is Not Hostile to Arbitration.

The *McGill* rules is not hostile to arbitration. A state rule is hostile to arbitration when it prohibits the arbitration of a particular type of claim. *Id.*; *see Concepcion*, 563 U.S. at 341 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."). In *Sakkab*, the Ninth Circuit held

that the *Iskanian* rule was not hostile to arbitration because it expressed "no preference regarding whether individual PAGA claims are litigated or arbitrated. It provides only that representative PAGA claims may not be waived outright." 803 F.3d at 434. Similarly here, the *McGill* rule does not single out or discriminate against arbitration because it expresses no preference regarding whether public injunctive relief claims are litigated or arbitrated. *See McGill*, 2 Cal. 5th 945, 2017 WL 1279700 at *4 (invalidating waiver clause because it "purport[ed] to preclude McGill from seeking public injunctive relief in arbitration, in court, or *in any forum*"). It holds only that public injunctive relief may not be waived outright and does not prohibit the arbitration of any type of claim. *Id.* at *7.

           b.        **The *McGill* Rule Does Not Interfere With Any of the Fundamental Attributes of Arbitration.**

The *McGill* rule does not prevent courts from enforcing arbitration agreements according to their terms, which *Concepcion* stated is "[t]he principal purpose of the FAA." 563 U.S. at 344 (internal quotations and alteration omitted). This does not, however, "require strict enforcement of all terms contained in an arbitration agreement, including terms that are unenforceable under generally applicable state law . . . because it would render § 2's saving clause wholly ineffectual." *Sakkab*, 803 F.3d at 434. Instead, ensuring that arbitration agreements are enforced according to their terms means only that the FAA preempts generally applicable state contract defenses when they "interfere with the fundamental attributes of arbitration," such as its informality, speed and cost-effectiveness. *Concepcion*, 563 U.S. at 344; *Sakkab*, 803 F.3d at 434.

In *Concepcion*, the Supreme Court evaluated the California Supreme Court's *Discover Bank* rule, which essentially provided that class-action waivers in arbitration agreements were unconscionable and unenforceable. 563 U.S. at 340. *Concepcion* held that the FAA preempted the *Discover Bank* rule, because *Discover Bank* required the parties to accept classwide arbitration and its attendant formal procedures, which the Court determined interfered with arbitration for three reasons: "First, the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment. . . . Second, class arbitration requires procedural formality. The AAA's rules governing class arbitrations mimic the Federal Rules of

Civil Procedure for class litigation. . . . [and] Third, class arbitration greatly increases risks to defendants," by increasing the stakes, which, in combination with the increased risk of errors that result from arbitration's less formal procedures, could "outweigh[] [the] savings from avoiding the courts." *Id.* at 348–50.

In *Sakkab*, the Ninth Circuit applied *Concepcion* to the *Iskanian* rule and determined *Iskanian* did not interfere with the fundamental attributes of arbitration. First, the Court determined that, unlike the class-waivers at issue in *Concepcion*, "prohibiting waiver of representative PAGA claims does not diminish the parties' freedom to select informal arbitration procedures." 803 F.3d at 435. As the Court explained, "Because a PAGA action is a statutory action for penalties brought as a proxy for the state, *rather than a procedure* for resolving the claims of other employees, there is no need to protect absent employees' due process rights . . . [and] PAGA arbitrations therefore do not require the formal procedures of class arbitrations." *Id.* at 436 (emphasis added). PAGA imposed no notice requirements for unnamed aggrieved employees, no procedure to evaluate a representative's ability to adequately represent similarly situated individuals, and no procedures to determine numerosity, commonality, or typicality akin to those of which the Supreme Court disapproved in *Concepcion*. *Id*. Because PAGA required no additional formal procedures, the Ninth Circuit also concluded that arbitration of PAGA actions would not make the arbitration process slower, more costly, or more likely to generate procedural morass. *Id.* at 438–39.

The *Sakkab* Court did note that, because of the amount of civil penalties that PAGA actions authorize, it could increase the stakes for Defendants, which was of concern to the *Concepcion* Court. *Id.* at 437. However, the *Sakkab* Court reasoned that "the FAA would not preempt a state statutory cause of action that imposed substantial liability merely because the action's high stakes would arguably make it poorly suited to arbitration." *Id.* "By their nature, some types of claims are better suited to arbitration than others . . . [and] the FAA contemplates that parties may simply agree ex ante to litigate high-stakes claims if they find arbitration's informal procedures unsuitable." *Id.* Accordingly, the Court held that "the FAA does not require courts to enforce agreements to waive the right to bring representative PAGA actions just because

9

PLAINTIFF'S MOTION FOR RECONSIDERTION OF ORDER COMPELLING ARBITRATION

the amount of penalties an aggrieved employee is authorized to recover for the state makes the formal procedures of litigation more attractive than arbitration's informal procedures." *Id*.

The *McGill* rule at issue here is like the *Iskanian* rule that the Ninth Circuit approved of in *Sakkab* and is distinguishable from the *Discover Bank* rule at issue in *Concepcion*. Like the *Iskanian* rule, the *McGill* rule deals with the *substantive relief* available on an individual's claim and is not a "procedural device for resolving the claims of absent parties on a representative basis"—as was the *Discover Bank* rule in *Concepcion*. *Sakkab*, 803 F.3d at 435. Further, because public injunctive relief is only a type of remedy awarded at the end an individual's case, it does not constitute res judicata for any similarly situated individual with a claim for retrospective relief. *See Victa v. Merle Norman Cosmetics, Inc.*, 19 Cal. App. 4th 454, 468 (1993) (holding that a prior case involving a public entity seeking public injunctive relief was not res judicata as to a later individual suit). Thus, just like in *Sakkab*, the *McGill* rule does not raise concerns about protecting the due process rights of absent non-parties and does "not require the formal procedures of class arbitrations" that drove the *Concepcion* Court's determination that the *Discover Bank* rule interfered with arbitration and was preempted. *Sakkab*, 803 F.3d at 436. Indeed, the California Supreme Court expressly held in *McGill* that public injunctive relief can be granted on an individual claim *without the need for class procedures*:

> [A] request for [public injunctive] relief does not constitute the pursuit of representative claims or relief on behalf of others . . . such that compliance with [the class action procedures of] Section 382 of the Code of Civil Procedure is required. . . . [W]e have held that the phrase comply with Section 382 of the Code of Civil Procedure (Bus. & Prof. Code, §§ 17203, 17535) imposes a requirement that the action be brought as a class action. *This requirement has never been imposed with regard to requests to enjoin future wrongful business practices that will injure the public*.

*McGill*, 2 Cal. 5th 945, 2017 WL 1279700 at *6–7 (emphasis added, internal citations andalterations omitted). Similarly, the U.S. Supreme Court has held that an individual seeking public injunctive relief under Federal Rule of Civil Procedure 23(b)(2) does not need to meet any of the formal procedural requirements at issue in *Concepcion*. *See. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362–63 (2011) ("The procedural protections attending the (b)(3) class—

predominance, superiority, mandatory notice, and the right to opt out—are missing from (b)(2) not because the Rule considers them unnecessary, but because it considers them unnecessary to a (b)(2) class.").

Because the *McGill* rule does not require parties in arbitration to adopt any formal procedures such as those at issue in *Concepcion*, arbitrating a claim for public injunctive relief preserves all of the "fundamental attributes of arbitration." That is, it will not make the arbitration process slower, more costly, or more likely to generate procedural morass. The claim would still be arbitrated or litigated exactly the same as any other bilateral arbitration or litigation—i.e., without the need for any additional procedures regarding class notice, class certification, or anything else that might be necessary to protect the rights of non-parties. The only difference would be in the form of relief available at the end of the case. Accordingly, just like the *Iskanian* rule, the *McGill* rule does not raise any of the same concerns about interfering with arbitration that drove the *Concepcion* decision, and therefore is not preempted by the FAA. The California Supreme Court reached the same conclusion in *McGill*. 2 Cal. 5th 945, 2017 WL 1279700 at *8–10.

AT&T may argue that allowing public injunctive relief will increase the stakes of arbitration, but the *Sakkab* court already considered that argument in the context of PAGA claims and rejected it as the sole basis on which to find preemption under the FAA. 803 F.3d at 437. The same rationale applies here.

### III. *MCGILL* ALSO SUPPORTS PLAINTIFF'S MOTION TO VACATE THE ARBITRAL AWARD

The same arguments and reasons set forth above that the Court should reconsider its order compelling arbitration equally support Plaintiff's motion to vacate the arbitral award. The FAA provides that a district court may vacate an arbitration award "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). An arbitrator necessarily exceeds its powers when rendering an award if the underlying agreement to arbitrate is invalid. *See French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 908 (9th Cir. 1986) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Thus, an arbitrator's powers are delimited by the agreement of the parties themselves. Any award not drawn from that agreement

is invalid.").

Because the waiver of public injunctive relief is unenforceable, the entire arbitration agreement is invalid by its own terms, as AT&T has admitted. (*See* Dkt. #245; *see also* Dkt. #229, Ex. 2, p. 6, § 2.2 ("If this specific provision [referring to section 6] is found unenforceable, the entirety of this arbitration provision shall be null and void.").) Thus, the parties never agreed to arbitrate their dispute and the arbitration award should be vacated. Further, the arbitrator's findings and conclusions are null and void and have no effect on the litigation proceeding in this Court, and no individual claim is subject to arbitration.[2]

## IV. CONCLUSION

For the foregoing reasons, McArdle respectfully requests that this Court grant his Motion for Leave to Seek Reconsideration and deem Plaintiff's motion for reconsideration filed as it appears above so that, upon reconsideration, the Court may deny AT&T's motion to compel arbitration.

Dated: May 9, 2017                    **GUTRIDE SAFIER LLP**

_____
Adam J. Gutride, Esq.
Seth A. Safier, Esq.
Kristen G. Simplicio, Esq.
100 Pine Street, Suite 1250
San Francisco, California 94114

Attorneys for Plaintiff

---

[2] Plaintiff already argued in his motion to vacate the arbitral award that the award was unenforceable because "the arbitrator exceeded his power in proceeding with the arbitration, when the arbitration agreement by its own terms was void due to the impermissible waiver of public injunctive relief." (Dkt. #263 at 2–3.) *McGill* provides further binding support to Plaintiff's previously-raised argument.

12

PLAINTIFF'S MOTION FOR RECONSIDERTION OF ORDER COMPELLING ARBITRATION